UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-20159-CR-MORENO/O'SULLIVAN

UNITED STATES OF AMERICA,

     Plaintiff,

v.

EDWIDGE JUNIOR DARBOUZE,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendant Edwidge Junior Darbouze's
Motion to Suppress Statements and Physical Evidence and Request for Evidentiary
Hearing (DE# 19, 4/24/14). This case was referred to the undersigned by the Honorable
Federico A. Moreno, United States District Court Judge for the Southern District of
Florida (DE# 24, 5/9/14). Having held an evidentiary hearing on May 29, 2014 and
having carefully considered the defendant's motion, the court file and applicable law,
the undersigned respectfully recommends that the Defendant Edwidge Junior
Darbouze's Motion to Suppress Statements and Physical Evidence and Request for
Evidentiary Hearing (DE# 19, 4/24/14) be **DENIED**.

## BACKGROUND

The defendant is charged by Indictment in the Southern District of Florida with
two counts of receipt of child pornography in violation of Title 18, United States Code,
Section 2252(a)(2) and (b)(1) and two counts of possession of child pornography in
violation of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2). See

Indictment (DE# 1, 3/14/14).

On April 24, 2014, the defendant filed the instant motion. See Defendant Edwidge Junior Darbouze's Motion to Suppress Statements and Physical Evidence and Request for Evidentiary Hearing (DE# 19, 4/24/14). The government filed its response on May 16, 2014. See United States' Response in Opposition to Defendant's Motion to Suppress (DE# 27, 5/16/14). No reply memorandum was filed.

An evidentiary hearing was held on May 29, 2014 before the undersigned. The government presented the testimony of Department of Homeland Security, Homeland Security Investigations ("HSI") Special Agent Deborah Trajkovic and HSI Special Agent Timothy Devine. The defendant presented the testimony of Edwidge Darbouze, Sr. (the defendant's father), Evans Darbouze (the defendant's brother) and HSI Special Agent Rodd Delmonte. The Court admitted into evidence the Government's Exhibits 1 through 17 and the Defendant's Exhibits 1 through 20.

## FINDINGS OF FACT

On September 13, 2013, federal law enforcement agents applied for and obtained a warrant to search a two-bedroom apartment in Palmetto Bay, Florida. See Government's Exhibit 1. This residence was later determined to be the defendant's home. Attachment "B" to the search warrant listed the items to be seized from the residence in 17 separate paragraphs. Most of these paragraphs related to child pornography. One of the paragraphs that did not specifically relate to child pornography, paragraph 12, allowed the agents to seize "[a]ny and all cameras, film, video cameras, videos, or other photographic equipment." Id.

On September 18, 2013 at approximately 6:08 AM or 6:10 AM, federal law

enforcement agents approached the front door of the defendant's residence. At the time, the agents believed that someone had been downloading child pornography using an IP address associated with the residence. However, the agents did not know who at the residence had downloaded the child pornography.

Approximately 11 agents participated in the execution of the search warrant. All of the agents were in "raid gear," meaning that they wore vests with police insignia prominently featured on their clothing. One of the agents knocked on the front door and announced that it was the police with a search warrant. The occupants of the residence were sleeping at the time.

The defendant's brother opened the front door and stepped back. Approximately eight agents entered the residence and three agents remained outside. For officer safety, the agents had their weapons drawn when they entered the residence. The defendant's brother either fell down or dropped to the floor and agents handcuffed him behind his back. The agents encountered the defendant coming out of his bedroom and placed him in handcuffs behind his back. The defendant's father was also handcuffed.[1] The defendant's father's wife and the defendant's brother's girlfriend were also in the residence.

---

[1] Special Agent Trajkovic testified that the agents placed handcuffs on the defendant and the defendant's brother because they were not completely compliant at the beginning. She testified that she did not see or recall seeing the defendant's father being handcuffed. Similarly, Special Agent Delmonte testified he did not see the defendant's father being handcuffed. The defendant's father testified at the evidentiary hearing that he was handcuffed. Because the agents had no clear recollection that the defendant's father was not handcuffed, the undersigned credits the more specific testimony of the defendant's father that the agents handcuffed him during the execution of the search warrant.

For officer safety, the agents secured the premises making sure that all of the occupants were accounted for and that they did not have access to weapons. The agents initially placed the family in the kitchen. Once the premises had been secured, the agents re-holstered their weapons. At approximately 6:20 AM, Special Agent Delmonte took a short video of the apartment before the search of the residence began. The video contains audio of a male with a creole accent saying "let me tell you" in response to a question. After the video had been shot, the family was moved to the livingroom. Special Agent Deborah Trajkovic showed the search warrant to the defendant's father and told him that she had a warrant to search the premises.[2] At approximately 6:35 AM, the defendant's father told Special Agent Trajkovic that the defendant had set up the wifi in the residence.[3]

At some point after the video was shot, the agents moved the family to the master bedroom. One of the agents remained with the family. At approximately 6:45

---

[2] Special Agent Trajkovic testified that she also asked the occupants of the residence if they needed to go to work or school and told them that they were free to go. The defendant's brother testified that Special Agent Trajkovic never asked that question or made that statement. Because the government is no longer arguing that the defendant was not in custody at the time of interview, the undersigned does not need to make a credibility finding as to whether Special Agent Trajkovic made these statements to the family.

[3] Special Agent Trajkovic testified on cross-examination that none of the occupants in the residence were questioned while the video was taken. She then clarified that the only person she spoke to was the defendant's father. She said she spoke to the defendant's father after the video was taken and she asked him one question, who set up the wifi. The defendant's father's testimony regarding who set up the wifi is unclear. During cross-examination, the defendant's father agreed that Special Agent Trajkovic had asked him the question of who set up the wifi. However, he answered "no" when he was asked if he had previously testified that the defendant's brother had set up the wifi. In any event, who set up the wifi is not pertinent to the legal issues in this Report and Recommendation.

AM, after the family was moved to the master bedroom, the agents removed the handcuffs from the defendant and the defendant's brother.[4]

Approximately half an hour after the video was shot, while the family was in the master bedroom, agents began an onsite forensic preview of the desktop computer that was maintained in the living room. The agents determined that child pornography had been downloaded on the desktop computer and may have been deleted. The agents also conducted an onsite forensic preview of a cellular telephone recovered from the night stand in the defendant's bedroom. The forensic preview revealed that a media card in the cellular telephone contained approximately 13 videos of child pornography. The forensic preview of the devices took approximately two to three hours.

At approximately 7:25 AM – after the forensic preview began, but before it was complete – the agents proceeded to interview the defendant's father. The agents took the defendant's father outside to a vehicle to conduct the interview.[5] The agents asked the defendant's father about his computer usage and whether he understood what a peer-to-peer file sharing network[6] was. The defendant's father told the agents that he

---

[4] Special Agent Trajkovic testified that the defendant was handcuffed for no more than 45 minutes. The defendant's brother testified that he (the defendant's brother) remained in handcuffs even while he was questioned by the agents.

[5] The defendant's father testified that he was first interviewed and asked questions about his children and his computer usage in the master bedroom and that the agents then took him outside to interview him inside a vehicle. The defendant's father further testified that after the interview, he was allowed to use the bathroom with the door open and then was taken outside to the open stairwell where he remained handcuffed for more than an hour.

[6] The child pornography that prompted the issuance of the search warrant for the residence had been downloaded using a peer-to-peer file sharing network.

had no knowledge of peer-to-peer file sharing. The agents did not read <u>Miranda</u>[7] rights to the defendant's father at any time during the execution of the search warrant.  At approximately 7:50 AM, the agents interviewed the defendant's brother. The interview took place in the defendant's bedroom. There were a total of three agents[8] present in the bedroom with the defendant's brother. The agents read the defendant's brother his <u>Miranda</u> rights before asking him any questions.[9] The agents questioned the defendant's brother about his computer usage, whether he used a peer-to-peer file sharing network and whether he downloaded pornography from the internet. The defendant's brother told the agents that the defendant had set up the network. The interview lasted approximately 50 minutes.[10]

At approximately 8:40 AM, the agents interviewed the defendant. The interview took place in the defendant's bedroom with the door almost completely closed, meaning that the door would have opened if pushed. The defendant was seated on the bed and there were a total of three agents in the room with the defendant. The agents did not

---

[7] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[8] The defendant's brother testified that there were two agents in the bedroom during his interview.

[9] The defendant's brother testified that he was read his <u>Miranda</u> rights in the middle of the interview and not at the beginning. The undersigned does not need to make a factual finding on this issue because when the defendant's brother was read his Miranda rights is not pertinent to the issue of when the defendant was read his Miranda rights.

[10] The defendant's brother testified that the interview lasted approximately ten to 15 minutes. Again, this discrepancy between the defendant's brother's testimony and Special Agent Trajkovic's testimony is not pertinent to the issue of whether the defendant's constitutional rights were violated.

have their weapons drawn and they did not yell at the defendant. The agents read the defendant his <u>Miranda</u> rights before asking him any questions.

Special Agent Trajkovic presented the defendant with a form entitled "Statement of Rights." <u>See</u> Government's Exhibit 15. The form advised the defendant that he had the right to remain silent, that anything he said could be used against him in court and other proceedings, that he had a right to consult with an attorney, a right to have an attorney present during questioning, a right to court-appointed counsel if he could not afford an attorney and that he could stop the questioning at any time. <u>Id.</u> The defendant read each right and wrote his initials next to each right. <u>Id.</u> The form also contained a section entitled "Waiver." <u>Id.</u> This section contained the following statement:

> I have had the above statement of my rights read and explained to me and I fully understand these rights.  I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity.  I was taken into custody at <u>6:00 AM</u> (time), on <u>9/18/2013</u> (date), and have signed this document at <u>8:40 AM</u> (time), on <u>9/18/2013</u> (date).

<u>Id.</u> Special Agent Trajkovic read the above waiver statement to the defendant. She also handwrote the times and dates on the statement and the defendant's name on the form. <u>Id.</u> The defendant signed underneath the waiver and the defendant's signature was witnessed by two agents. <u>Id.</u> After the defendant signed the form, the agents interviewed the defendant and the defendant made incriminating statements. The interview lasted approximately 45 minutes.[11] Throughout the interview, the defendant

---

[11] Towards the end of the interview, Special Agent Trajkovic left the room to obtain a consent to search form. <u>See</u> Government's Exhibit 16. The defendant executed the consent to search form at approximately 9:35 AM and agents searched the defendant's vehicle. No incriminating evidence was recovered from the vehicle.

was cooperative. He did not cry or yell.

The agents seized the following items from the defendant's residence: a desktop computer, a Samsung Galaxy cellular phone, a CD/DVD, a micro SD/adapter, two thumb drives and a Kyocera cellular telephone. See Defendant's Exhibit 17.

On December 26, 2013, agents applied for and obtained a search warrant to Dropbox, Inc. (hereinafter "Dropbox")[12] for an account under the defendant's name. See Government's Exhibit 17. Attachment "B" to the Dropbox search warrant contained a list of items to be seized. Section I of the Dropbox search warrant seeks documents and information that would identify the user of the account. The first paragraph of Section II requests "[a]ll information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A, relating to materials involving the sexual exploitation of minors and/or materials constituting or containing child pornography since July 2013 . . . ." Id.

## LEGAL ANALYSIS

The defendant seeks to suppress the statements he made to agents during the September 18, 2013 interview and the physical evidence seized pursuant to the search warrant for the residence and the search warrant to Dropbox. See Defendant Edwidge Junior Darbouze's Motion to Suppress Statements and Physical Evidence and Request for Evidentiary Hearing (DE# 19, 4/24/14). The defendant maintains that the statements he made on September 18, 2013 were obtained by agents in violation of Miranda and

---

[12] "Dropbox is an online service that allows users to upload, download, store, and access electronic files using an account with the service." Defendant Edwidge Junior Darbouze's Motion to Suppress Statements and Physical Evidence and Request for Evidentiary Hearing (DE# 19 at 3, 4/24/14).

that the search warrants were overbroad. The government maintains that the defendant's statements did not violate Miranda and that the search warrants were sufficiently particular and not overbroad. See United States' Response in Opposition to Defendant's Motion to Suppress (DE# 27, 5/16/14).

A.    **Miranda**

Miranda prohibits the government from using statements made by a defendant during a custodial interrogation, or the functional equivalent of a custodial interrogation, unless the defendant has first been advised of his constitutional rights. Miranda, 384 U.S. at 478-79. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980). In the instant case, the government does not dispute that the defendant was in custody at the time he made the September 18, 2013 statements.[13] The issue is whether the agents read the defendant his Miranda rights after the interview had already begun. See Missouri v. Seibert, 542 U.S. 600, 604, 617 (2004) (in a plurality opinion, holding that a conscious effort by law enforcement to employ the technique of interrogating a suspect until he or she has confessed, before administering Miranda warnings violates the Fifth Amendment).

The defendant maintains that he was initially questioned by agents without the benefit of Miranda and that the agents read the defendant his Miranda rights after they had begun their interrogation. The defendant presented no direct evidence of when he

---

[13] Initially, the government argued that the September 18, 2013 interview of the defendant was not a custodial interrogation. However, at the May 29, 2014 evidentiary hearing, the government stated that it was no longer making the argument that the defendant was not in custody during the September 18, 2013 interview.

was read his <u>Miranda</u> rights. Instead, the defendant argues that because the agents did not read the defendant's father his <u>Miranda</u> rights and because the defendant's brother testified that he was read his <u>Miranda</u> rights halfway through his interview,[14] it is reasonable for the Court to conclude that the agents did not read the defendant his <u>Miranda</u> rights until after they began their interrogation.

The unrefuted testimony at the May 29, 2014 evidentiary hearing was that the defendant was read his <u>Miranda</u> rights before the agents asked him any questions. The undersigned credits the consistent testimony of the agents that they read the defendant his <u>Miranda</u> rights before they asked him any questions over the defendant's speculative argument. The undersigned notes that the defendant was questioned after the agents had questioned both the defendant's father, who told the agents that he did not know what a peer-to-peer file sharing network was, and the defendant's brother, who told agents that the defendant had set up the network. Thus, at the time the agents began their interview of the defendant, they suspected the defendant was the person

---

[14] The undersigned notes that the agents testified that the defendant's brother was read his <u>Miranda</u> rights before they asked him any questions. The undersigned does not need to make a credibility finding on this issue because when the defendant's brother was read his <u>Miranda</u> rights is immaterial to the question of when the defendant was read his <u>Miranda</u> rights. To the extent that this discrepancy in the testimony is relevant to the credibility of the witnesses, the undersigned finds the agents' testimony more credible than the testimony of the defendant's brother, who has a clear interest in the outcome of these proceedings. The undersigned observed the demeanor of the witnesses and considered their testimony as a whole and finds the agents' testimony credible over the testimony of the defendant's brother. <u>See</u> <u>United States v. Boulette</u>, 265 Fed. Appx. 895, 898 (11th Cir. 2008)(citing <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 749 (11th Cir. 2002) (noting that "[c]redibility determinations are within the province of the fact finder 'because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.'").

responsible for downloading the child pornography.

Because the undersigned finds that the agents read the defendant his <u>Miranda</u> rights before they interviewed the defendant, the only remaining issue is whether the defendant's waiver of his <u>Miranda</u> rights was knowingly and voluntary. The undersigned finds that it was.

In order to establish a valid waiver of <u>Miranda</u> rights, the government must show, by a preponderance of the evidence, that the defendant voluntarily, knowingly, freely and intelligently waived those rights, with knowledge of the consequences of the waiver. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986). The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. <u>Edwards v. Arizona</u>, 451 U.S. 477, 482 (1981).

Here, the agents provided the defendant with a written <u>Miranda</u> waiver form before they questioned him and the defendant wrote his initials next to each right signifying that he understood the rights. At all times during the interview, the agents had their weapons holstered. The agents did not yell at the defendant and there is no evidence that the defendant was coerced or threatened into making statements to the agents. The defendant was not handcuffed during the interview and there were only three agents in the room. Based on the totality of the circumstances, the undersigned concludes that defendant knowingly and voluntarily waived his <u>Miranda</u> rights.

**B.    Particularity Requirement**

The defendant further argues that the items seized pursuant to the search warrants for the residence and for Dropbox should be suppressed because those

search warrants were overbroad. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id. "The manifest purpose of this particularity requirement [is] to prevent general searches." Maryland v. Garrison, 480 U.S. 79, 84 (1987).

"[A] description is considered sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Betancourt, 734 F.2d 750, 754-55 (11th Cir. 1984) (citation and internal quotation marks omitted). The undersigned has reviewed the search warrants at issue and finds that with the exception of paragraph 12 in Attachment "B" to the search warrant for the residence, the search warrants were not overbroad.[15] Paragraph 12, seeks "[a]ny and

---

[15] In addition to paragraph 12 of the search warrant for the residence, the defendant cites paragraphs 2, 10, 11, 15 and 17 as failing to meet the particularity requirement. Defendant Edwidge Junior Darbouze's Motion to Suppress Statements and Physical Evidence and Request for Evidentiary Hearing (DE# 19 at 8-9, 4/24/14). Paragraph 2 requests computer software. Paragraph 2 does not violate the particularity requirement because agents would need the software in order to search for images of child pornography or to determine whether images of child pornography had been deleted. Paragraph 10 seeks any and all records that concern any accounts with an Internet Service Provider. Paragraph 11 seeks any and all records that concern online storage or other remote computer storage. Paragraphs 10 and 11 are not overbroad because agents would need this information to find additional areas where child pornography could be located, for example, the Dropbox. Paragraph 15 seeks any and all documents pertaining to the occupancy or ownership of the residence. Paragraph 17 seeks any and all documents pertaining to the indicia of ownership of any and all computers and electronic media. Paragraphs 15 and 17 are not overbroad because agents would need this information in order to tie the defendant to the crime being investigated. "[T]he particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized" and "a description of property

all cameras, film, video cameras, videos, or other photographic equipment." <u>See</u>
Government's Exhibit 1. In <u>United States v. Rubinstein</u>, No. 09-20611-CR, 2010 WL
2723186, at *10 (S.D. Fla. Jun. 24, 2010), this Court previously found that language
authorizing "any and all cameras, film, videotapes or other photographic equipment"
was overbroad.[16]

    If the description of items to be seized pursuant to a search warrant is overly
broad, the remedy is to sever those portions of the warrant lacking probable cause, not
to invalidate the entire warrant. <u>United States v. Cook</u>, 657 F.2d 730, 734-35 (5th Cir.
1981) ("hold[ing] that in the usual case the district judge should sever the infirm portion
of the search warrant from so much of the warrant as passes constitutional muster.").[17]
Here, the agents did not recover any evidence responsive to paragraph 12 of
Attachment "B" to the search warrant for the residence. Thus, none of the evidence
obtained from the execution of the search warrant of the residence should be

_____

will be acceptable if it is as specific as the circumstances and nature of activity under
investigation permit." <u>United States v. Wuagneux</u>, 683 F.2d 1343, 1349 (11th Cir.
1982).

    With respect to the Dropbox search warrant, the defendant argues that it
"essentially calls for the wholesale seizure (and subsequent search) of nearly every
piece of data related to the account and the files contained therein." Defendant
Edwidge Junior Darbouze's Motion to Suppress Statements and Physical Evidence and
Request for Evidentiary Hearing (DE# 19 at 9, 4/24/14). The undersigned finds that the
Dropbox search warrant is sufficiently specific to comply with the particularity
requirement.

    [16] The Court in <u>Rubinstein</u> denied the motion to suppress based on <u>United States
v. Leon</u>, 468 U.S. 897, 919 (1984). <u>Rubinstein</u>, 2010 WL 2723186, at *10.

    [17] The Eleventh Circuit in <u>Bonner v. City of Prichard</u>, 661 F. 2d 1206, 1207 (11th
Cir. 1981) (<u>en banc</u>), adopted as precedent decisions of the former Fifth Circuit
rendered prior to October 1, 1981. <u>Cook</u> was decided on September 30, 1981.

suppressed. Moreover, the Dropbox search warrant does not violate the particularity requirement and none of the evidence obtained from Dropbox should be suppressed.

Even if, <u>arguendo</u>, the agents had recovered evidence responsive to paragraph 12, that evidence should still not be suppressed. In <u>United States v. Leon</u>, 468 U.S. 897, 919 (1984), the Supreme Court established a good faith exception to the exclusionary rule for searches conducted pursuant to a warrant issued by a neutral and detached magistrate. The Eleventh Circuit has noted that "courts generally should not render inadmissable evidence obtained by police officers acting in reliance upon a search warrant that is ultimately found to be unsupported by probable cause." <u>United States v. Martin</u>, 297 F.3d 1308, 1313 (11th Cir. 2002) (citing <u>United States v. Leon</u>, 468 U.S. 897, 919 (1984)). Officers do not act in objective good faith if the warrant is so overly broad on its face that the executing officers could not reasonably have presumed it to be valid. <u>United States v. Accardo</u>, 749 F.2d 1477, 1481 (11th Cir. 1985). The search warrants at issue in this case were not so facially deficient that a law enforcement agent would not be expected to reasonably rely on the warrant.

<b><u>RECOMMENDATION</u></b>

For the foregoing reasons, the undersigned recommends that the Defendant Edwidge Junior Darbouze's Motion to Suppress Statements and Physical Evidence and Request for Evidentiary Hearing (DE# 19, 4/24/14) be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Federico A. Moreno, United States District

14

Judge, no later than **Wednesday, June 4, 2014** at **noon**.[18] See <u>Nettles v. Wainwright</u>,

677 F.2d 404 (5th Cir. 1982).

      RESPECTFULLY SUBMITTED at Miami, Florida, this **30th** day of May, 2014.

                                                _____
                                                JOHN  J. O'SULLIVAN
                                                UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Moreno
All counsel of record

---

    [18] The deadline for filing objections has been shortened because this case is set for calendar call on June 10, 2014.

15