```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION

 3              CASE 14-20159-CR-MORENO.O'SULLIVAN

 4   THE UNITED STATES OF AMERICA,

 5           Plaintiff,

 6   vs.

 7   EDWIDGE DARBOUZE                    MIAMI, FLORIDA
                                        MAY 29, 2014
 8
             Defendant.                 [PAGES 1 - 140]
 9   _____
10              TRANSCRIPT OF EVIDENTIARY HEARING
              BEFORE THE HONORABLE JOHN O'SULLIVAN
11              UNITED STATES MAGISTRATE JUDGE
     _____
12   APPEARANCES:

13   FOR THE GOVERNMENT:
                         MAURICE A. JOHNSON, A.U.S.A.
14                       United States Attorney's Office
                         99 NE 4th Street
15                       Miami, FL 33132
16   FOR THE DEFENDANT:
                         CHRISTINE O'CONNOR, A.F.P.D.
17                       MANUAL ARTEAGA-GOMEZ, A.F.P.D.
                         Federal Public Defender's Office
18                       150 West Flagler Street
                         Miami, FL 33130 - 305/530-7000
19
     REPORTED BY:
20                       ROBIN MARIE DISPENZIERI, RPR
                         Official Federal Court Reporter
21                       Wilkie Ferguson Federal Courthouse
                         400 No. Miami Ave., Ste. O8S67
22                       Miami, FL  33128 - 305/523-5659
                         Email:  Rdispenzieri@gmail.com
23

24

25
```

TABLE OF CONTENTS

Page

DEBRA TRAJKOVIC .......................................... 5

    Direct Examination By Mr. Johnson ................... 5

    Cross-Examination By Mr. Gomez .................... 29

    Cross-Examination By Ms. O'Connor ................. 70

EDWIDGE DARBOUZE, SENIOR .............................. 78

    Direct Examination By Mr. Gomez ................... 78

    Cross-Examination By Mr. Johnson .................. 87

    Redirect Examination By Mr. Gomez ................. 91

EVANS DARBOUZE ........................................ 93

    Direct Examination By Ms. O'Connor ................ 93

    Redirect Examination By Ms. O'Connor ............. 111

RODD DELMONTE ........................................ 114

    Direct Examination By Ms. O'Connor ............... 114

    Cross-Examination By Mr. Johnson ................. 119

INDEX TO EXHIBITS

Exhibits                        Marked for          Received

                Identification    in Evidence

Description                    Page    Line    Page    Line

| | | |
|---|---|---|
| 09:35:50 | 1 | COURTROOM DEPUTY:  All rise. |
| 09:35:52 | 2 | THE COURT:  Good morning.  We are here today in the |
| 09:35:54 | 3 | case of United States of America versus Edwidge Junior |
| | 4 | Darbouze. |
| 09:36:16 | 5 | MR. JOHNSON:  Good morning, Your Honor.  Mauricio |
| 09:36:18 | 6 | Johnson. |
| 09:36:19 | 7 | THE COURT:  For the defendant? |
| 09:36:22 | 8 | MR. GOMEZ:  Good morning, Your Honor.  My |
| 09:36:24 | 9 | co-counsel, Christy O'Connor, just left this building to see |
| 09:36:32 | 10 | if our client, Edwidge Darbouze, is outside.  She's checking |
| 09:36:39 | 11 | to see if he is somewhere else. |
| 09:36:42 | 12 | MS. O'CONNOR:  He is here, Your Honor. |
| 09:36:44 | 13 | THE COURT:  Announce your presence. |
| 09:36:48 | 14 | MS. O'CONNOR:  Good morning, Your Honor.  Christy |
| 09:36:53 | 15 | O'Connor, Assistant Federal Public Defender.  My client is |
| 09:36:54 | 16 | here.  It is 9:36. |
| 09:36:58 | 17 | THE COURT:  Where were you at 9:30, Mr. Darbouze? |
| 09:37:07 | 18 | Get here half an hour early next time. |
| 09:37:11 | 19 | THE DEFENDANT:  Yes, sir. |
| 09:37:11 | 20 | THE COURT:  Does the defendant want to make an |
| 09:37:14 | 21 | opening statement? |
| 09:37:14 | 22 | No, Your Honor.  We can proceed with the |
| 09:37:18 | 23 | testimony. |
| 09:37:19 | 24 | THE COURT:  Government want to make any kind of |
| 09:37:21 | 25 | opening statement? |

09:37:23   1        MR. JOHNSON:  No, Your Honor.  I do want to address
09:37:26   2   some preliminary matters.

09:37:29   3        THE COURT:  Go ahead.

09:37:31   4        MR. JOHNSON:  Tomorrow and Monday I am out of the
09:37:35   5   office for some personal matters, but I have advised that to
09:37:41   6   defense counsel.  The reason that I bring that up right now
09:37:44   7   is because the Government is calling two agents in this
09:37:47   8   case.

09:37:47   9        However, I believe the Defense has subpoenaed the
09:37:50  10   rest of the entire team, which is approximately eight or
09:37:54  11   nine other agents.  I don't know how many people she is
09:37:59  12   going to call.  They haven't informed me who they intend to
09:38:03  13   call.  Obviously, our position is those officers aren't
09:38:07  14   relevant.

09:38:08  15        THE COURT:  Who do you intend to call?

09:38:12  16        MS. O'CONNOR:  We don't know yet.  It depends on
09:38:15  17   what comes out during the direct and crosses of the
09:38:18  18   witnesses the government calls.  It's our position all of
09:38:23  19   these people were present on scene.

09:38:27  20        THE COURT:  But they could be cumulative.  I don't
09:38:30  21   think there's any reason to call nine witnesses.

09:38:35  22        MS. O'CONNOR:  We won't if it's not necessary,
09:38:40  23   Judge.

09:38:41  24        THE COURT:  Who is the first witness?  Call your
09:38:49  25   first witness.

| | | |
|---|---|---|
| 09:38:50 | 1 | MR. JOHNSON:  The Government calls Special Agent |
| 09:38:55 | 2 | Deborah Trajkovic. |
| 09:38:56 | 3 | MS. O'CONNOR:  Your Honor, we would invoke the Rule |
| 09:38:58 | 4 | at this time. |
| 09:38:59 | 5 | THE COURT:  Okay.  The Rule is invoked. |
| 09:39:06 | 6 | COURTROOM DEPUTY:  Do you solemnly swear the |
| 09:39:07 | 7 | testimony you are about to give is the truth and nothing but |
| 09:39:11 | 8 | the truth so help you God? |
| 09:39:13 | 9 | THE WITNESS:  I do. |
| 09:39:15 | 10 | COURTROOM DEPUTY:  Please state and spell your name |
| | 11 | for the record. |
| 09:39:19 | 12 | THE WITNESS:  Debra Trajkovic, T-R-A-J-K-O-V-I-C. |
| 09:39:24 | 13 | THE COURT:  Thank you. |
| | 14 | DIRECT EXAMINATION |
| 09:39:26 | 15 | BY MR. JOHNSON: |
| 09:39:29 | 16 | Q.  Good morning. |
| 09:39:29 | 17 | A.  Good morning. |
| 09:39:30 | 18 | Q.  For whom are you employed? |
| 09:39:32 | 19 | A.  By the Department of Homeland Security. |
| 09:39:35 | 20 | Q.  Is that Homeland Security Investigations? |
| 09:39:37 | 21 | A.  Yes. |
| 09:39:38 | 22 | Q.  Is that commonly referred to as HSI? |
| 09:39:42 | 23 | A.  Yes. |
| 09:39:43 | 24 | Q.  How long have you been working with HSI? |
| 09:39:44 | 25 | A.  I started in 2003, going to twelve years.  2002, I'm |

Trajkovic - Direct

| | | |
|---|---|---|
| 09:39:49 | 1 | sorry. |
| 09:39:50 | 2 | Q.  2002? |
| 09:39:51 | 3 | A.  Correct. |
| 09:39:52 | 4 | Q.  Did you receive any training in becoming an agent? |
| 09:39:55 | 5 | A.  I received training at the Federal Law Enforcement |
| 09:39:59 | 6 | Training Center in Georgia for about four months back in |
| 09:40:02 | 7 | 2002. |
| 09:40:02 | 8 | Q.  What kind of training did you receive there? |
| 09:40:05 | 9 | A.  I received the criminal investigator training program |
| 09:40:08 | 10 | first, and then I went on to the Customs basic school. |
| 09:40:14 | 11 | Q.  Did you receive any training in regard to child |
| 09:40:18 | 12 | pornography? |
| 09:40:19 | 13 | A.  Yes, I did. |
| 09:40:20 | 14 | Q.  When you first started at the Department of Homeland |
| 09:40:23 | 15 | Security, was it called HSI or Department of Homeland |
| 09:40:26 | 16 | Security? |
| 09:40:28 | 17 | A.  When I first started with the department? |
| 09:40:30 | 18 | Q.  Yes. |
| 09:40:31 | 19 | A.  I was with the United States Customs Service.  When DHS |
| 09:40:38 | 20 | was formed, I was part of the merge. |
| 09:40:42 | 21 | Q.  Is it fair to say you were a Customs agent at one time? |
| 09:40:45 | 22 | A.  Yes. |
| 09:40:46 | 23 | Q.  What were your Customs responsibilities and duties? |
| 09:40:48 | 24 | A.  We investigated Title 18 violations.  I studied in a |
| 09:40:53 | 25 | group that basically did money laundering. |

Trajkovic - Direct

| | | |
|---|---|---|
| 09:40:55 | 1 | Q.   What are your responsibilities and duties now as an HSI |
| 09:40:59 | 2 | agent? |
| 09:41:00 | 3 | A.   Title 8, Immigration violations. |
| 09:41:02 | 4 | Q.   Do you also investigate child pornography cases? |
| 09:41:06 | 5 | A.   Yes, we do. |
| 09:41:07 | 6 | Q.   Agent Trajkovic, were you involved in the investigation |
| 09:41:10 | 7 | of an individual by the name of Edwidge or Edwidge Junior |
| | 8 | Darbouze? |
| 09:41:15 | 9 | A.   Yes, sir. |
| 09:41:16 | 10 | Q.   Do you see that person in the courtroom? |
| 09:41:19 | 11 | A.   Yes, sir. |
| 09:41:20 | 12 | Q.   Can you indicate an article of clothing that he is |
| 09:41:24 | 13 | wearing? |
| 09:41:24 | 14 | A.   He is wearing a gray suit. |
| 09:41:27 | 15 |         MR. JOHNSON:  May the record reflect the witness |
| | 16 | has identified Mr. Darbouze. |
| 09:41:29 | 17 |         THE COURT:  Any objection? |
| 09:41:31 | 18 |         MR. GOMEZ:  No objection, Your Honor. |
| 09:41:32 | 19 |         THE COURT:  The record will reflect that. |
| | 20 | |
| 09:41:34 | 21 | BY MR. JOHNSON: |
| 09:41:36 | 22 | Q.   Tell us how you became involved in the investigation of |
| 09:41:39 | 23 | this defendant. |
| 09:41:39 | 24 | A.   I was sitting with a partner of mine in my office.  I |
| 09:41:44 | 25 | wanted to kind of see what a child pornography investigation |

09:41:48  1  would be.  We started using a law enforcement developed

09:41:53  2  software that basically targets IP addresses that may be

09:41:58  3  transmitting child pornography through the Internet.

09:42:01  4  Q.  How is that possible?

09:42:02  5      The software, how is it able to track an IP address

09:42:09  6  that could be child pornography?

09:42:11  7  A.  They download softwares through a peer-to-peer network

09:42:17  8  used by peers to actually transmit images.  It could be

09:42:21  9  music, pictures, videos.  Basically they download the

09:42:27  10  software and --

09:42:29  11  Q.  Could you slow down a little bit.

09:42:31  12  A.  Sure.

09:42:32  13      The software basically works targeting IP addresses

09:42:37  14  that are transmitting basically a fingerprint.  That's

09:42:41  15  called a SHA-1 value.  Every video image has a SHA-1 value

09:42:49  16  to it.  When law enforcement identifies child pornography,

09:42:53  17  they basically start building a database of those SHA-1

09:42:58  18  values or fingerprints of those images.

09:43:01  19      Whenever those images or the fingerprints of it get

09:43:04  20  picked up by the software, they basically let us know.

09:43:07  21  Q.  You said a few things.  What is a peer-to-peer?

09:43:11  22  A.  Peer-to-peer is a network.  There's a couple of them,

09:43:16  23  one of the most used ones in this case is the telenetwork,

09:43:23  24  is people going through the Internet to trade information,

09:43:25  25  meaning pictures, videos, music.

Trajkovic - Direct

09:43:29   1   Q.  How is law enforcement able to access a persons

09:43:33   2   peer-to-peer?  Is it a folder?

09:43:35   3   A.  When users download the software that they are going to

09:43:39   4   be using to do the trading or the peer-to-peer, they

09:43:44   5   basically agree to have a folder called a Share Folder where

09:43:49   6   the information is going to be downloaded, or the

09:43:51   7   information they want to share gets placed into.

09:43:54   8   Q.  Is it fair to say that when they sign up for different

09:43:58   9   peer-to-peer folders or networks, is it like a waiver?

09:44:03  10   A.  They agree to do that, yes.  That's why it's called

09:44:07  11   peer-to-peer.  They basically share and trade information

09:44:11  12   from and to that folder.

09:44:13  13   Q.  Once law enforcement has identified a SHA-1 value as you

09:44:19  14   indicated for the record is a footprint that may be child

09:44:23  15   pornography, how are you able to determine if it is child

09:44:26  16   pornography?

09:44:27  17   A.  We have two ways of doing that.

09:44:29  18        First, we try to download from the shell folder of

09:44:33  19   the target user.  If we cannot, for many reasons, sometimes

09:44:38  20   a person doesn't want to share, sometimes the person

09:44:41  21   downloads and moves the information to another folder.  That

09:44:45  22   would be one way.

09:44:47  23        Other way, we build up a separate database in our

09:44:50  24   main office, in our Cyber Group that has a database of all

09:44:59  25   the videos that we have encountered.  So I have all the

| | | |
|---|---|---|
| 09:45:05 | 1 | SHA-1 values that was pictures of pornography.  I went back |
| 09:45:07 | 2 | to the office and looked through the database and confirmed |
| 09:45:10 | 3 | that those were, indeed, files that would contain child |
| 09:45:14 | 4 | pornography. |
| 09:45:15 | 5 | Q.  How is that process done?  Are you comparing it? |
| 09:45:19 | 6 | A.  We compare the SHA-1 values, and then I watched the |
| 09:45:24 | 7 | videos. |
| 09:45:24 | 8 | Q.  Are you comparing it with other SHA values which has |
| 09:45:29 | 9 | been previously determined to be child pornography? |
| 09:45:32 | 10 | THE COURT:  Why are we going through all of this? |
| 09:45:35 | 11 | Isn't the issue whether or not he was advised of Miranda, |
| 09:45:38 | 12 | and second of all, whether it was overly broad? |
| 09:45:43 | 13 | MR. JOHNSON:  Yes. |
| 09:45:44 | 14 | THE COURT:  I don't need to hear the whole history |
| 09:45:48 | 15 | of the case. |
| 09:45:49 | 16 | MR. JOHNSON:  I will move on. |
| | 17 | BY MR. JOHNSON: |
| 09:45:51 | 18 | Q.  You used a computer with an IP address.  What IP address |
| 09:45:55 | 19 | was that? |
| 09:45:56 | 20 | A.  Let me refer to my notes.  That was 66.22.9.248.239. |
| 09:46:06 | 21 | Q.  When you compared those files from that computer user IP |
| 09:46:11 | 22 | address with other previous child pornography, was it child |
| 09:46:15 | 23 | pornography? |
| 09:46:16 | 24 | A.  Yes, it was. |
| 09:46:17 | 25 | Q.  Once you learned that information, what did you do? |

09:46:19   1   A.  I basically went and saw who was the Internet service

09:46:25   2   provider for that IP address.  I learned it was Comcast, and

09:46:29   3   I served a subpoena to Comcast.

09:46:32   4   Q.  What were the results from Comcast?

09:46:35   5   A.  It showed that the service belonged to Darbouze, born in

09:46:41   6   1958, that lived in 9041 SW 156th Street, Apartment 127 in

09:46:54   7   Palmetto Bay, Florida, 33157.

09:46:57   8   Q.  Once you learned that information, what, if anything, do

           9   you?

09:47:00  10   A.  I basically wrote up an affidavit to request for a

09:47:04  11   search warrant to serve on the residence.

09:47:07  12   Q.  Before you served a search warrant, did you do any other

09:47:11  13   investigative techniques?

09:47:14  14   A.  I conducted drive-bys.  I saw what vehicles were

09:47:19  15   registered to the address and who the residents may be.

09:47:23  16   Q.  Did you learn who the residents were?

09:47:25  17   A.  Yes, the names coincided to the names that Comcast said

09:47:30  18   were subscribed to.

09:47:32  19   Q.  Did you learn about any other people in the apartment?

09:47:37  20   A.  It was him and two sons.

09:47:40  21   Q.  Did you do anything else in terms of investigating?

09:47:43  22   A.  I just did drive-bys and basically made sure that the

09:47:48  23   residence was occupied by who I thought was occupied.

09:47:52  24   Q.  When you say drive-bys, what do you mean?

09:47:55  25   A.  I drove by the place.

Trajkovic - Direct

| 09:47:58 | 1 | Q.  You applied for a search warrant affidavit? |
| 09:48:00 | 2 | A.  Yes, I did. |
| 09:48:01 | 3 | Q.  Did you draft that affidavit? |
| 09:48:03 | 4 | A.  Yes, I did. |
| 09:48:05 | 5 | Q.  Did that affidavit contain any different sections for |
| 09:48:09 | 6 | example? |
| 09:48:09 | 7 | A.  Yes. |
| 09:48:10 | 8 | Q.  What kind of sections did that include? |
| 09:48:13 | 9 | A.  Well, it has our authority to apply for the warrant.  It |
| 09:48:18 | 10 | has facts.  It has attachments. |
| 09:48:22 | 11 | Q.  Are there other sections regarding how computers are, |
|  | 12 | for example? |
| 09:48:26 | 13 | A.  Yes, the definition Section. |
| 09:48:30 | 14 | Q.  In that warrant, what were you seeking to search? |
| 09:48:34 | 15 | A.  We were seeking to search anything that may contain |
| 09:48:39 | 16 | digital files, meaning flash drives, floppy drives, |
| 09:48:44 | 17 | computers, anything that can access the Internet. |
| 09:48:48 | 18 | Q.  Did you also search the home? |
| 09:48:50 | 19 | A.  For those devices. |
| 09:48:53 | 20 | Q.  You testified that you had attachments to that search |
| 09:48:55 | 21 | warrant? |
| 09:48:56 | 22 | A.  Yes, I did. |
| 09:48:57 | 23 | Q.  What was in the information that was in the attachments? |
| 09:49:00 | 24 | A.  On the attachment A, I had basically pictures of the |
| 09:49:05 | 25 | complex, of the apartment door, of the building inside of |

| | | |
|---|---|---|
| 09:49:08 | 1 | the complex. |
| 09:49:09 | 2 | Under attachment B, I have basically listed what I |
| 09:49:14 | 3 | wanted to search, and basically why.  Why it could be used |
| 09:49:20 | 4 | in child pornography. |
| 09:49:22 | 5 | Q.  Did you come up with the idea to include those |
| 09:49:25 | 6 | paragraphs in the attachment B? |
| 09:49:27 | 7 | A.  No, basically it's that we go by and we tweak it to the |
| 09:49:33 | 8 | investigation that we are conducting. |
| 09:49:35 | 9 | Q.  Agent Trajkovic, did you have reason to believe that |
| 09:49:39 | 10 | there were electronic devices inside the defendant's home? |
| 09:49:42 | 11 | A.  Yes, I did. |
| 09:49:43 | 12 | Q.  When you drafted the attachment B to the search warrant, |
| 09:49:47 | 13 | did your list of items to be seized specifically refer to |
| 09:49:51 | 14 | child pornography? |
| 09:49:52 | 15 | A.  Correct. |
| 09:49:53 | 16 | Q.  Were all of the paragraphs specifically referring to |
| 09:49:57 | 17 | child pornography? |
| 09:49:58 | 18 | A.  To child pornography and also to electronic media. |
| 09:50:03 | 19 | Q.  Were there some paragraphs that did not refer to child |
| 09:50:07 | 20 | pornography? |
| 09:50:08 | 21 | A.  Sure. |
| 09:50:08 | 22 | THE COURT:  Are you talking about the attachment? |
| 09:50:12 | 23 | MR. JOHNSON:  The attachment B. |
| 09:50:15 | 24 | THE COURT:  Okay. |
| | 25 | |

| | | |
|---|---|---|
| 09:50:15 | 1 | BY MR. JOHNSON: |
| 09:50:18 | 2 | Q.  Did some of the paragraphs not include child |
| 09:50:21 | 3 | pornography? |
| 09:50:22 | 4 | A.  Correct.  They could be used for child pornography. |
| 09:50:25 | 5 | Q.  But did you list that in specific paragraphs in your |
| 09:50:29 | 6 | attachment? |
| 09:50:30 | 7 | A.  Yes, I did. |
| 09:50:31 | 8 | Q.  Were there some paragraphs that did not include a |
| 09:50:35 | 9 | reference to child pornography? |
| 09:50:37 | 10 | A.  No, not really.  My only interest was to actually search |
| 09:50:45 | 11 | for devices that may contain child pornography or evidence |
| 09:50:49 | 12 | that child pornography was in them. |
| 09:50:51 | 13 | Q.  Did your search warrant affidavit also include crimes |
| 09:50:56 | 14 | involving child pornography? |
| 09:50:58 | 15 | A.  Yes, it did. |
| 09:51:01 | 16 | THE COURT:  Paragraphs 10, 11, 12, 13, they don't |
| 09:51:05 | 17 | say anything about child pornography.  I'm sorry, 10, 13 |
| 09:51:11 | 18 | have images of children, I guess. |
| 09:51:13 | 19 | MR. JOHNSON:  Your Honor, I was going to show her |
| 09:51:16 | 20 | Government 1 - 17. |
| 09:51:18 | 21 | THE COURT:  Any objections to any of the |
| 09:51:20 | 22 | government's exhibits? |
| 09:51:22 | 23 | MR. GOMEZ:  No objection, Your Honor. |
| 09:51:23 | 24 | THE COURT:  1 through 17 are entered. |
| 09:51:26 | 25 | |

Trajkovic - Direct

15

| | | |
|---|---|---|
| 09:51:26 | 1 | (Received in evidence Government Exhibit(s) 1-17.) |
| 09:51:28 | 2 | MR. JOHNSON:  Thank you, Your Honor. |
| | 3 | |
| 09:51:29 | 4 | BY MR. JOHNSON: |
| 09:51:36 | 5 | Q.  I am now going to show you Government's Exhibit One. |
| 09:51:39 | 6 | Would you refer to attachment B and take a look at the |
| 09:51:43 | 7 | paragraphs. |
| 09:51:48 | 8 | MR. GOMEZ:  Your Honor, if we could see a copy of |
| 09:51:54 | 9 | the exhibit. |
| 09:51:55 | 10 | MR. JOHNSON:  This is the search warrant attached |
| 09:51:57 | 11 | to my response and also that I turned over in discovery. |
| 09:52:00 | 12 | THE COURT:  Do you have copies?  Explain to the |
| 10:04:15 | 13 | Court what Government's Exhibit 5 is. |
| 10:04:18 | 14 | THE WITNESS:  That would be the desk top computer |
| 10:04:20 | 15 | that was seized from the residence. |
| | 16 | BY MR. JOHNSON: |
| 10:04:21 | 17 | Q.  Tell us what Government's 6 is. |
| 10:04:22 | 18 | A.  It would be the serial number of that same desk top |
| 10:04:27 | 19 | computer. |
| 10:04:28 | 20 | Q.  Government's 7? |
| 10:04:30 | 21 | A.  A cell phone recovered from the defendant's bedroom. |
| 10:04:33 | 22 | Q.  Is that the Samsung? |
| 10:04:37 | 23 | A.  No, it's not. |
| 10:04:39 | 24 | Q.  What is Government's Exhibit 8? |
| 10:04:42 | 25 | A.  This is a media card that was seized from the residence. |

May 29, 2014

| 10:04:46 | 1 | Q. Government's Exhibit 10? |
| 10:04:48 | 2 | THE COURT: Ten, not nine? |
| 10:04:50 | 3 | MR. JOHNSON: |
| 10:04:51 | 4 | Q. Did I ask about Exhibit 9? |
| 10:04:54 | 5 | A. Number 9 is a couple of flash drives. |
| 10:04:58 | 6 | Q. Is that the flash drives that were recovered in this |
| 10:05:01 | 7 | case? |
| 10:05:02 | 8 | A. Correct. |
| 10:05:02 | 9 | Q. What about Government's Exhibit ten? |
| 10:05:05 | 10 | A. That's the box of the cell phone that was seized from |
| 10:05:08 | 11 | the defendant. |
| 10:05:08 | 12 | Q. Thank you. |
| 10:05:09 | 13 | In regards to the computer that was recovered in |
| 10:05:11 | 14 | this case, do you know if a preliminary examination was |
| 10:05:15 | 15 | conducted on that computer? |
| 10:05:17 | 16 | A. Yes, the forensic agents did a preview on site. They |
| 10:05:21 | 17 | saw evidence that child pornography had been downloaded to |
| 10:05:25 | 18 | that computer. |
| 10:05:29 | 19 | Q. Do you know if the residents or the defendant had |
| 10:05:36 | 20 | passwords to get into that? |
| 10:05:39 | 21 | A. It was only one per file with one general password that |
| 10:05:44 | 22 | everybody in the family used. |
| 10:05:46 | 23 | Q. How do you know that? |
| 10:05:47 | 24 | A. We interviewed mostly everybody in the residence. |
| 10:05:50 | 25 | Q. Were any of the other items recovered from that |

Trajkovic - Direct

| | | |
|---|---|---|
| 10:05:54 | 1 | location?  Was a preliminary search conducted on those |
| 10:05:57 | 2 | items? |
| 10:05:57 | 3 | A.  Yes. |
| 10:05:59 | 4 | Q.  Did you happen to recover a Samsung Galaxy cell phone? |
| 10:06:06 | 5 | A.  Yes. |
| 10:06:06 | 6 | Q.  Where was that Samsung Galaxy recovered? |
| 10:06:09 | 7 | A.  From the night table of the defendant. |
| 10:06:11 | 8 | Q.  From the defendant or the defendant's bedroom? |
| 10:06:14 | 9 | A.  The defendant's bedroom. |
| 10:06:15 | 10 | Q.  How did you know it was the defendant's bedroom? |
| 10:06:18 | 11 | A.  He told us that was his bedroom -- that's where he was |
| 10:06:22 | 12 | encountered when we went in.  All the family members said |
| 10:06:26 | 13 | that was his bedroom. |
| 10:06:27 | 14 | Q.  By the way, in Government's Exhibit 10, do you know |
| 10:06:30 | 15 | whether it was the box of the Samsung Galaxy? |
| 10:06:32 | 16 | Is that the same phone that you recovered that |
| 10:06:34 | 17 | particular day? |
| 10:06:35 | 18 | A.  The Samsung Galaxy was a phone that we recovered.  If |
| 10:06:40 | 19 | this was the box, I don't know. |
| 10:06:41 | 20 | Q.  I am going to show you what has been moved into evidence |
| 10:07:03 | 21 | as Government's Exhibit 11 and 12.  Could you explain to the |
| 10:07:08 | 22 | Court what Government's Exhibit 11 is. |
| 10:07:12 | 23 | A.  That's the defendant's bedroom. |
| 10:07:14 | 24 | Q.  Government's 12, what are we looking at? |
| 10:07:18 | 25 | A.  That's the defendant's wallet and car keys. |

| | | |
|---|---|---|
| 10:07:20 | 1 | Q. Do you know where that was located? |
| 10:07:22 | 2 | A. On his dresser. |
| 10:07:24 | 3 | Q. Now, you stated that the Samsung Galaxy cell phone was |
| 10:07:28 | 4 | searched? |
| 10:07:29 | 5 | A. Yes, it was, a preview. |
| 10:07:30 | 6 | Q. What, if anything did, you learn that those results |
| 10:07:34 | 7 | revealed? |
| 10:07:34 | 8 | A. The forensic agent encountered child pornography |
| 10:07:39 | 9 | contained in. |
| 10:07:41 | 10 | Q. Where was that contained on the phone? |
| 10:07:43 | 11 | A. On a media card. |
| 10:07:44 | 12 | Q. When you say "child pornography," was it photos? |
| 10:07:48 | 13 | A. Thirteen videos, I believe. |
| 10:07:52 | 14 | Q. Once you learn that there's child pornography on the |
| 10:07:56 | 15 | phone and also on the computer, what, if anything, did you |
| 10:07:59 | 16 | and your team members do next? |
| 10:08:01 | 17 | A. We basically conducted interviews. |
| 10:08:03 | 18 | Q. Who did you interview? |
| 10:08:08 | 19 | A. I participated in the interviews of Mr. Darbouze. |
| 10:08:11 | 20 | Q. Which Darbouze? |
| 10:08:12 | 21 | A. The Father and the two kids. |
| 10:08:15 | 22 | Q. Would that be Evans and the defendant? |
| 10:08:18 | 23 | A. Correct. |
| 10:08:19 | 24 | Q. Who did you interview first? |
| 10:08:21 | 25 | A. We interviewed Mr. Edwidge, the father. |

Trajkovic - Direct

| | | |
|---|---|---|
| 10:08:27 | 1 | Q.  Where was that? |
| 10:08:28 | 2 | A.  In the vehicle. |
| 10:08:28 | 3 | Q.  Did you have guns out at that time? |
| 10:08:31 | 4 | A.  No, sir. |
| 10:08:31 | 5 | Q.  Did you still have your raid gear on? |
| 10:08:34 | 6 | A.  Yes. |
| 10:08:35 | 7 | Q.  Did there come a point where you interviewed the |
| 10:08:38 | 8 | defendant's brother? |
| 10:08:39 | 9 | A.  Yes. |
| 10:08:39 | 10 | Q.  Where was that done? |
| 10:08:40 | 11 | A.  In the defendant's brother -- |
| 10:08:42 | 12 | MR. JOHNSON:  Your Honor, may the witness step |
| 10:08:45 | 13 | down? |
| 10:08:46 | 14 | THE COURT:  Sure. |
| 10:08:47 | 15 | MR. JOHNSON:  Can you approach the board here? |
| 10:08:51 | 16 | THE COURT:  What are we doing? |
| 10:08:55 | 17 | MR. JOHNSON:  I am just going to have her identify |
| 10:08:57 | 18 | where everything was in the bedroom. |
| 10:09:00 | 19 | BY MR. JOHNSON: |
| 10:09:01 | 20 | Q.  Could you show on Exhibit 2 where the defendant's bed |
| 10:09:04 | 21 | is? |
| 10:09:05 | 22 | A.  Is would be right here. |
| 10:09:08 | 23 | Q.  Were there agents in the room when you conducted that |
| 10:09:12 | 24 | interview? |
| 10:09:13 | 25 | A.  Yes, three. |

Trajkovic - Direct

| 10:09:15 | 1 | Q.  Where were the agents in the bedroom? |
| 10:09:18 | 2 | THE COURT:  Which interview? |
| 10:09:22 | 3 | MR. JOHNSON:  Evans. |
| 10:09:25 | 4 | THE WITNESS:  I was on my knees down here.  Evans |
| 10:09:28 | 5 | was over here.  My partner, Timothy Divine was leaning |
| 10:09:33 | 6 | against the dresser.  Ms. Emily Shoupe or Special Agent |
| 10:09:39 | 7 | Shoupe was over here. |
| 10:09:40 | 8 | MR. JOHNSON:  Thank you. |
| 10:09:41 | 9 | BY MR. JOHNSON: |
| 10:09:42 | 10 | Q.  When you interviewed the brother, did you happen to read |
| 10:09:45 | 11 | him his Miranda rights? |
| 10:09:46 | 12 | A.  Yes, I did. |
| 10:09:47 | 13 | Q.  That was before any questioning? |
| 10:09:49 | 14 | A.  Yes. |
| 10:09:49 | 15 | Q.  Approximately how long did that take? |
| 10:09:51 | 16 | A.  The interview? |
| 10:09:52 | 17 | Q.  Yes. |
| 10:09:53 | 18 | A.  Maybe 50 minutes. |
| 10:09:55 | 19 | Q.  Where were the rest of the occupants of the apartment |
| 10:10:00 | 20 | when you were interviewing the brother? |
| 10:10:02 | 21 | A.  In the other bedroom. |
| 10:10:03 | 22 | Q.  Was there anyone in the other bedroom with them? |
| 10:10:06 | 23 | A.  Yes, one agent. |
| 10:10:07 | 24 | Q.  Was the door opened in that other bedroom where the |
| 10:10:12 | 25 | occupants were? |

Trajkovic - Direct

21

| | | |
|---|---|---|
| 10:10:13 | 1 | A.  Yes, there was. |
| 10:10:14 | 2 | Q.  Did there come a time when you brought in the defendant |
| 10:10:17 | 3 | to interview him? |
| 10:10:18 | 4 | A.  Yes. |
| 10:10:18 | 5 | Q.  Where did you interview the defendant? |
| 10:10:20 | 6 | A.  In his bedroom. |
| 10:10:21 | 7 | Q.  Was he in approximately the same location that you |
| 10:10:25 | 8 | previously have drawn on Government's Exhibit 2? |
| 10:10:27 | 9 | A.  Yes, he was. |
| 10:10:28 | 10 | Q.  Were the agents that you wrote on the exhibit positioned |
| 10:10:32 | 11 | in the same place? |
| 10:10:33 | 12 | A.  Exactly the same. |
| 10:10:34 | 13 | Q.  At the time that you were interviewing the defendant, |
| 10:10:36 | 14 | did you have your guns out at that time? |
| 10:10:38 | 15 | A.  No, sir. |
| 10:10:39 | 16 | Q.  Was anyone yelling or screaming at that time? |
| 10:10:41 | 17 | A.  No. |
| 10:10:42 | 18 | Q.  Was the door opened or closed at that time, do you |
| 10:10:45 | 19 | recall? |
| 10:10:45 | 20 | A.  It was closed for privacy, but it wasn't into the frame, |
| 10:10:49 | 21 | meaning if you push it, it will open. |
| 10:10:52 | 22 | Q.  What was the reason for closing the door? |
| 10:10:55 | 23 | A.  Privacy. |
| 10:10:56 | 24 | Q.  Now, when the defendant entered the bedroom, did you ask |
| 10:11:03 | 25 | him any questions as soon as he came in the bedroom? |

May 29, 2014

Trajkovic - Direct

22

| 10:11:06 | 1 | A.  No.  I read the Miranda rights first. |
| 10:11:09 | 2 | THE COURT:  Was he handcuffed when he came into the |
| 10:11:11 | 3 | bedroom? |
| 10:11:13 | 4 | THE WITNESS:  No, sir. |
| 10:11:13 | 5 | THE COURT:  How long before the cuffs? |
| 10:11:16 | 6 | THE WITNESS:  We went in the apartment at 6:08 or |
| 10:11:20 | 7 | 6:10.  He was in cuffs no later than 6:45.  His interview |
| 10:11:25 | 8 | was conducted at 8:45. |
| 10:11:27 | 9 | BY MR. JOHNSON: |
| 10:11:28 | 10 | Q.  He wasn't handcuffed from 6:00 to 8:00? |
| 10:11:41 | 11 | THE WITNESS:  All the way until we left. |
| 10:11:43 | 12 | BY MR. JOHNSON: |
| 10:11:44 | 13 | Q.  You stated that you read him his rights first? |
| 10:11:47 | 14 | A.  Yes, sir. |
| 10:11:48 | 15 | Q.  Did you read that from memory? |
| 10:11:50 | 16 | A.  No.  I always read it from the rights form. |
| 10:11:53 | 17 | Q.  When you read the rights to them, is there a place on |
| 10:11:56 | 18 | the form for the defendant to sign? |
| 10:11:57 | 19 | A.  Correct. |
| 10:11:58 | 20 | Q.  Did he sign them? |
| 10:11:59 | 21 | A.  I make him initial next to each right just to make sure |
| 10:12:03 | 22 | that they understood it.  Then I make him sign if they want |
| 10:12:07 | 23 | to waive. |
| 10:12:08 | 24 | Q.  I am going to show you what has been moved into evidence |
| 10:12:11 | 25 | as Government's Exhibit 15.  Is that section signed by the |

Trajkovic - Direct

23

| | | |
|---|---|---|
| 10:12:32 | 1 | defendant? |
| 10:12:33 | 2 | A.   Yes. |
| 10:12:33 | 3 | Q.   Are there any witnesses to that signature? |
| 10:12:36 | 4 | A.   Myself and a partner of mine. |
| 10:12:38 | 5 | Q.   Once he read him his rights, no questions were asked of |
| 10:12:42 | 6 | the defendant before Mirandizing him? |
| 10:12:44 | 7 | A.   No, sir. |
| 10:12:45 | 8 | Q.   After you read him his Miranda rights, did you take a |
| 10:12:49 | 9 | statement from the defendant? |
| 10:12:50 | 10 | A.   Yes, I did. |
| 10:12:51 | 11 | THE COURT:  What portion of this form did you read |
| 10:12:54 | 12 | him? |
| 10:12:56 | 13 | THE WITNESS:  Each of the rights. |
| 10:12:57 | 14 | THE COURT:  What about the bottom where it says |
| 10:13:00 | 15 | "waiver"? |
| 10:13:00 | 16 | THE WITNESS:  I made sure he understood that he |
| 10:13:03 | 17 | could waive his rights, and if he wanted to change his mind |
| 10:13:08 | 18 | after I started the questioning, he could do that too. |
| 10:13:11 | 19 | THE COURT:  Did you read him the portion that says |
| 10:13:14 | 20 | "waiver"? |
| 10:13:15 | 21 | THE WITNESS:  Yes, I did. |
| 10:13:16 | 22 | THE COURT:  Did he read this whole thing? |
| 10:13:18 | 23 | THE DEFENDANT:  Yes, he did. |
| 10:13:20 | 24 | THE COURT:  How do you know? |
| 10:13:22 | 25 | THE WITNESS:  I made sure that, after I read it, he |

Trajkovic - Direct

| | | |
|---|---|---|
| 10:13:25 | 1 | would read the right and initial next to it. |
| 10:13:26 | 2 | BY MR. JOHNSON: |
| 10:13:27 | 3 | Q.  Does the defendant read English? |
| 10:13:29 | 4 | A.  Yes, he does. |
| 10:13:31 | 5 | Q.  Does he understand English? |
| 10:13:33 | 6 | A.  Yes, he does. |
| 10:13:34 | 7 | Q.  Was the interview conducted in English? |
| 10:13:37 | 8 | A.  Yes, it was. |
| 10:13:38 | 9 | Q.  Did the defendant make a statement? |
| 10:13:40 | 10 | A.  Yes, he did. |
| 10:13:41 | 11 | Q.  Tell us the statement, please. |
| 10:13:43 | 12 | A.  He basically said that he was the one who downloaded the |
| 10:13:49 | 13 | software used, the peer-to-peer software, to access the |
| 10:13:57 | 14 | network to basically download movies and pictures that could |
| 10:14:01 | 15 | be downloaded. |
| 10:14:02 | 16 | THE COURT:  I don't need his whole statement unless |
| 10:14:06 | 17 | it has some relevance.  Basically, he admitted to the |
| 10:14:09 | 18 | unlawful conduct? |
| 10:14:11 | 19 | THE WITNESS:  He admitted to basically downloading |
| 10:14:13 | 20 | the child pornography and then deleting it from the main |
| 10:14:18 | 21 | computer. |
| 10:14:19 | 22 | THE COURT:  All right. |
| 10:14:21 | 23 | BY MR. JOHNSON: |
| 10:14:21 | 24 | Q.  Did the defendant supply you with an e-mail address? |
| 10:14:24 | 25 | A.  Yes, he did. |

Trajkovic - Direct

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | Q.  What was that?                                           |
| 10:14:26 | 2  | A.   @yahoo.com.                                             |
| 10:14:29 | 3  | Q.  Were you in the interview the entire time?              |
| 10:14:33 | 4  | A.  I stepped out of the bedroom or the interview about five |
| 10:14:37 | 5  | minutes before it ended.                                     |
| 10:14:38 | 6  | Q.  Did someone else come in to take your place?            |
| 10:14:42 | 7  | A.  Yes, I didn't conduct the interview myself.  I was only |
| 10:14:46 | 8  | taking notes.                                                |
| 10:14:47 | 9  | Q.  Did someone come back in after you left the room?       |
| 10:14:50 | 10 | A.  Yes.                                                     |
| 10:14:50 | 11 | Q.  Who was that?                                           |
| 10:14:54 | 12 | Q.  Approximately how long was the interview?              |
| 10:14:56 | 13 | A.  45 minutes.                                             |
| 10:14:58 | 14 | Q.  After the interview was conducted, what, if anything,  |
| 10:15:04 | 15 | did you do?                                                  |
| 10:15:05 | 16 | A.  Towards the end, when I stepped in the bedroom again, I |
| 10:15:10 | 17 | asked him if I could search his vehicle and asked for his   |
| 10:15:14 | 18 | consent, made him sign a form consenting to the search of   |
| 10:15:18 | 19 | his vehicle, because that wasn't part of the search warrant. |
| 10:15:22 | 20 | Q.  Was the defendant compliant?                           |
| 10:15:23 | 21 | A.  Fully.                                                   |
| 10:15:24 | 22 | Q.  Did he sign the consent to search the vehicle?         |
| 10:15:27 | 23 | A.  Yes, he did.                                            |
| 10:15:29 | 24 | Q.  Really briefly, I want to show you what has been marked |
| 10:15:32 | 25 | as Government's Exhibit 16.                                  |

Trajkovic - Direct

| | | |
|---|---|---|
| 10:15:38 | 1 | What is Government's Exhibit 16? |
| 10:15:41 | 2 | A.  It's the consent to search the vehicle form that he |
| 10:15:43 | 3 | signed. |
| 10:15:44 | 4 | Q.  And it's signed at the bottom? |
| 10:15:46 | 5 | A.  Yes, it is. |
| 10:15:47 | 6 | Q.  During the interview, were you able to determine the |
| 10:15:51 | 7 | defendant's demeanor? |
| 10:15:53 | 8 | A.  He was cooperative. |
| 10:15:55 | 9 | Q.  Was he crying in any way, yelling, screaming? |
| 10:15:58 | 10 | A.  No, no. |
| 10:15:58 | 11 | Q.  After you conducted the search, is that when you left |
| 10:16:02 | 12 | the apartment? |
| 10:16:03 | 13 | A.  Conducted the search of what? |
| 10:16:06 | 14 | Q.  The vehicle. |
| 10:16:08 | 15 | A.  We conducted the search, and then I went back to the |
| 10:16:11 | 16 | apartment.  We wrapped up everything.  We made the inventory |
| 10:16:14 | 17 | of what we were seizing.  I showed the defendant's father |
| 10:16:19 | 18 | what we were taking.  I made him sign a form acknowledging |
| 10:16:24 | 19 | that we were taking some devices.  I dropped him a copy of |
| 10:16:29 | 20 | the search warrant and left the apartment. |
| 10:16:31 | 21 | Q.  Approximately how long did that take? |
| 10:16:33 | 22 | A.  We left the apartment a couple of minutes before 10:00. |
| 10:16:37 | 23 | Q.  Approximately four hours, would you say? |
| 10:16:40 | 24 | A.  Yes. |
| 10:16:41 | 25 | Q.  During the time of those four hours, approximately how |

Trajkovic - Direct

| | | |
|---|---|---|
| 10:16:44 | 1 | long was the defendant handcuffed? |
| 10:16:45 | 2 | A.   No more than 40 minutes. |
| 10:16:47 | 3 | Q.   Did you arrest anyone that day? |
| 10:16:49 | 4 | A.   No, we didn't. |
| 10:16:50 | 5 | Q.   What was the reason that you didn't? |
| 10:16:52 | 6 | A.   We wanted to further the investigation. |
| 10:16:54 | 7 | Q.   Did you do that? |
| 10:16:56 | 8 | A.   Yes, we did. |
| 10:16:56 | 9 | Q.   What did you do? |
| 10:16:57 | 10 | A.   We conducted a full forensic analysis on the devices |
| 10:17:03 | 11 | that we seized.  Then I served another search warrant on a |
| 10:17:05 | 12 | cloud service that we learned, through the search of the |
| 10:17:07 | 13 | devices, could also contain child pornography. |
| 10:17:09 | 14 | Q.   Did you search the computer? |
| 10:17:11 | 15 | A.   Yes, we did. |
| 10:17:12 | 16 | Q.   What was your result? |
| 10:17:13 | 17 | A.   We found child pornography on the computer. |
| 10:17:16 | 18 | Q.   Where did you find it? |
| 10:17:18 | 19 | A.   We found it in a folder called Sharisa [phonetic] |
| 10:17:21 | 20 | folder, which is basically the share folder of the software |
| 10:17:25 | 21 | used to download it. |
| 10:17:28 | 22 | MR. GOMEZ:  Objection, relevance. |
| 10:17:30 | 23 | MR. JOHNSON:  They are seeking to suppress the |
| 10:17:33 | 24 | physical evidence, not only for the search warrant of 186th |
| 10:17:38 | 25 | Street, but also the search warrant in the Dropbox.  We are |

May 29, 2014

Trajkovic - Direct

| | | |
|---|---|---|
| 10:17:42 | 1 | going to ask a few questions regarding the affidavit because |
| 10:17:47 | 2 | that's what they are attacking. |
| 10:17:50 | 3 | THE COURT:  What they're attacking is that that's a |
| 10:17:52 | 4 | general warrant.  What it says they can seize is in -- |
| 10:17:55 | 5 | MR. JOHNSON:  You are absolutely correct.  I am |
| 10:17:57 | 6 | going to bring out the points very briefly. |
| 10:18:01 | 7 | THE COURT:  All right, go ahead. |
| 10:18:03 | 8 | BY MR. JOHNSON: |
| 10:18:03 | 9 | Q.  Did you get a search warrant for a Dropbox? |
| 10:18:05 | 10 | A.  Yes, we did. |
| 10:18:07 | 11 | Q.  Did you draft that affidavit? |
| 10:18:09 | 12 | A.  Yes, I did. |
| 10:18:10 | 13 | Q.  Did you contact the Dropbox? |
| 10:18:11 | 14 | A.  Correct. |
| 10:18:12 | 15 | Q.  Did they tell you what information they could give you? |
| 10:18:15 | 16 | A.  Correct. |
| 10:18:16 | 17 | Q.  Did you include that in your Attachment B? |
| 10:18:18 | 18 | A.  Yes, everything that Dropbox could provide me with, I |
| 10:18:23 | 19 | asked for. |
| 10:18:24 | 20 | Q.  Did your affidavit specifically refer to child |
| 10:18:26 | 21 | pornography? |
| 10:18:27 | 22 | A.  Yes. |
| 10:18:28 | 23 | Q.  You had attachments, correct? |
| 10:18:29 | 24 | A.  Yes. |
| 10:18:30 | 25 | Q.  Attachments A and B? |

Trajkovic - Cross

29

| | | |
|---|---|---|
| 10:18:30 | 1 | A.   Yes. |
| 10:18:32 | 2 | Q.   Did those attachments refer to child pornography? |
| 10:18:34 | 3 | A.   Yes. |
| 10:18:38 | 4 | MR. JOHNSON:  No further questions. |
| 10:18:39 | 5 | THE COURT:  Any questions on cross-examination? |
| 10:18:45 | 6 | MR. GOMEZ:  Yes, Your Honor. |
| 10:18:47 | 7 | THE COURT:  Government, you didn't admit 13 on |
| 10:18:57 | 8 | purpose? |
| 10:18:58 | 9 | MR. JOHNSON:  Yes, Your Honor. |
| 10:19:01 | 10 | THE COURT:  You also didn't have her talk about 14, |
| 10:19:07 | 11 | which is the -- |
| 10:19:10 | 12 | MR. JOHNSON:  Statement of rights form. |
| 10:19:14 | 13 | THE COURT:  Any objection to defendant's exhibits? |
| 10:19:17 | 14 | MR. JOHNSON:  No, Your Honor. |
| 10:19:28 | 15 | THE COURT:  They're all admitted. |
| | 16 | CROSS EXAMINATION |
| 10:19:37 | 17 | BY MR. GOMEZ: |
| 10:19:38 | 18 | Q.   Good morning, Agent Trajkovic.  Did I get that right, |
| | 19 | "Trajkovic"? |
| 10:19:42 | 20 | A.   Trajkovic. |
| 10:19:43 | 21 | Q.   Did you go into the house on September 18th? |
| 10:19:45 | 22 | A.   Yes, I did. |
| 10:19:46 | 23 | Q.   Before you went into the house, you did an |
| 10:19:49 | 24 | investigation. |
| 10:19:49 | 25 | The investigation starts on July 25th, 2013? |

Trajkovic - Cross

30

10:19:53   1   A.   Correct.

10:19:54   2   Q.   It starts by studying this peer-to-peer file sharing

10:19:59   3   network, correct?

10:20:00   4   A.   Correct.

10:20:01   5   Q.   Now, what you get from that investigation of the

10:20:04   6   peer-to-peer is an IP address?

10:20:09   7   A.   Correct.

10:20:10   8   Q.   An IP address is just is series of numbers, right?

10:20:15   9   A.   Right.  I have the definition here if you want.

10:20:19  10   Q.   No, that's fine.

10:20:21  11        It doesn't give you a person's name?

10:20:22  12   A.   No.

10:20:25  13   Q.   It doesn't give you an address?

10:20:27  14   A.   No.

10:20:28  15   Q.   It just has a series of numbers?

10:20:30  16   A.   Correct.

10:20:31  17   Q.   You believe that, when you see that IP address, you

10:20:34  18   believe that somebody associated with that IP address is

10:20:38  19   downloading child pornography?

10:20:40  20   A.   The way I work it is I look to see who was the Internet

10:20:44  21   service provider of that IP address at the moment of which

10:20:48  22   one of the child pornography containing videos was

10:20:52  23   downloaded.

10:20:53  24   Q.   When you get that IP address, you believe that that IP

10:20:57  25   address is the address that is associated with downloading

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 10:21:00 | 1 | child pornography? |
| 10:21:01 | 2 | A.  Correct. |
| 10:21:02 | 3 | Q.  That's why you take the next step and you subpoena |
| 10:21:05 | 4 | Comcast? |
| 10:21:06 | 5 | A.  That's right. |
| 10:21:07 | 6 | Q.  From the subpoena to Comcast, you determine what is the |
| 10:21:12 | 7 | physical address that is associated with the IP address? |
| 10:21:15 | 8 | A.  Correct. |
| 10:21:16 | 9 | Q.  So we'll take a look at Defense Exhibit 1. |
| 10:21:29 | 10 | Defendant's Exhibit 1 is the subpoena that the |
| 10:21:35 | 11 | United States government sends to Comcast, correct? |
| 10:21:38 | 12 | A.  It's a fax copy, but yes, I believe it was. |
| 10:21:46 | 13 | Q.  The subpoena to Comcast doesn't say any human being's |
| 10:21:51 | 14 | name in terms of a suspect? |
| 10:21:52 | 15 | A.  No. |
| 10:21:53 | 16 | Q.  It just asks for the subscriber information for the IP |
| 10:21:57 | 17 | address? |
| 10:21:58 | 18 | A.  Correct. |
| 10:21:59 | 19 | Q.  Comcast responds with their response, which is Defense |
| 10:22:04 | 20 | Exhibit 2, correct? |
| 10:22:05 | 21 | A.  Yes. |
| 10:22:07 | 22 | Q.  That response, that gives you an actual human being's |
| 10:22:12 | 23 | name that is associated with the IP address? |
| 10:22:15 | 24 | A.  Correct. |
| 10:22:15 | 25 | Q.  The name is Edwidge Darbouze, and it has an address? |

May 29, 2014

Trajkovic - Cross

32

| | | |
|---|---|---|
| 10:22:23 | 1 | A.   Yes. |
| 10:22:25 | 2 | Q.   Comcast responds on August 6th, 2013? |
| 10:22:35 | 3 | A.   Where did you get that information from? |
| 10:22:53 | 4 | Q.   On the fax sheet. |
| 10:23:00 | 5 | So on August 6th, 2013, you have a person's name? |
| 10:23:14 | 6 | A.   Yes. |
| 10:23:14 | 7 | Q.   Throughout August of 2013, you conduct surveillance of |
| 10:23:19 | 8 | the physical address that Comcast provided you? |
| 10:23:22 | 9 | A.   Correct. |
| 10:23:22 | 10 | Q.   While conducting that physical surveillance in August of |
| 10:23:25 | 11 | 2013, you don't know who is living in that address.  You |
| 10:23:51 | 12 | don't know who is downloading the child pornography? |
| | 13 | A.   No, we don't. |
| 10:23:51 | 14 | Q.   It could be anyone visiting that address, somebody |
| 10:23:52 | 15 | living at that address, or a combination of those things? |
| 10:23:54 | 16 | A.   Correct. |
| 10:23:55 | 17 | Q.   On September 3rd, 2013, you conducted searches of |
| 10:24:01 | 18 | Florida's Division of Highway Safety and Motor Vehicle |
| 10:24:06 | 19 | records, correct? |
| 10:24:07 | 20 | A.   Correct. |
| 10:24:07 | 21 | Q.   You did that because you wanted to know who are the |
| 10:24:11 | 22 | human beings that are associated with that physical address. |
| 10:24:31 | 23 | A.   Again, where did you get that date? |
| 10:24:33 | 24 | Q.   Defense 3.  It is individual photographs for Edwidge |
| 10:24:38 | 25 | Darbouze, Evans Darbouze, and Edwidge Junior Darbouze. |

Trajkovic - Cross

| | | |
|---|---|---|
| 10:24:47 | 1 | A.  Yes. |
| 10:24:51 | 2 | Q.  For each one of those males, it has handwritten |
| 10:24:55 | 3 | notations, correct? |
| 10:24:57 | 4 | A.  Correct. |
| 10:24:57 | 5 | Q.  Those are your handwritten notes? |
| 10:24:59 | 6 | A.  Yes. |
| 10:25:01 | 7 | Q.  If you take a look at the bottom of each page in Exhibit |
| 10:25:05 | 8 | 3, do you see how there is faintly -- it appears that |
| 10:25:10 | 9 | there's a date stamp? |
| 10:25:12 | 10 | A.  Okay. |
| 10:25:13 | 11 | Q.  After looking at that, it appears to be September 3rd, |
| 10:25:19 | 12 | 2013, correct? |
| 10:25:20 | 13 | A.  Yes. |
| 10:25:22 | 14 | Q.  So seeing that, does that refresh your memory as to when |
| 10:25:27 | 15 | you did the searches of Florida Department of Highway Safety |
| | 16 | records? |
| 10:25:30 | 17 | A.  No, this is part of my operations plan.  I did that |
| 10:25:34 | 18 | search probably the day that I got the subpoena back. |
| 10:25:37 | 19 | Q.  Okay, okay. |
| 10:25:40 | 20 | A.  This is only to let my partners know who the occupants |
| 10:25:43 | 21 | are, how they may look, that's why there's a picture |
| 10:25:47 | 22 | attached, what the criminal background of each of them may |
| 10:25:51 | 23 | be, and the identifiers, DOV and alien numbers and so on. |
| 10:25:54 | 24 | Q.  So you reviewed the search of Florida Highway Safety |
| 10:25:58 | 25 | records around August of 2013? |

Trajkovic - Cross

| | | |
|---|---|---|
| 10:26:00 | 1 | A.  Before I started surveillance, yes. |
| 10:26:02 | 2 | Q.  Before you did the surveillance? |
| 10:26:03 | 3 | A.  Yes. |
| 10:26:04 | 4 | Q.  If you could just take a look at Defense Exhibits 4, 5, |
| 10:26:09 | 5 | and 6. |
| 10:26:10 | 6 | Defense 4, 5, and 6 are individual records from the |
| 10:26:25 | 7 | Florida Department of Highway Safety and Motor Vehicles? |
| 10:26:27 | 8 | A.  Correct. |
| 10:26:27 | 9 | Q.  You printed out those individual searches, correct? |
| 10:26:30 | 10 | A.  Yes. |
| 10:26:31 | 11 | Q.  You printed one for Edwidge Darbouze, for Edwidge Junior |
| 10:26:41 | 12 | Darbouze, and one for Evans Darbouze? |
| 10:26:44 | 13 | A.  I did. |
| 10:26:45 | 14 | Q.  When you printed out those records from the Department |
| 10:26:45 | 15 | of Highway Safety and Motor Vehicles, did you believe that |
| 10:26:47 | 16 | someone was downloading child pornography at that residence? |
| | 17 | A.  Yes, I did. |
| 10:26:51 | 18 | Q.  But you still don't know who it is? |
| 10:26:53 | 19 | A.  Right. |
| 10:26:53 | 20 | Q.  You believe it may be one of those three people? |
| | 21 | A.  Correct. |
| 10:26:57 | 22 | Q.  But you don't know which one it is? |
| 10:26:59 | 23 | A.  Correct. |
| 10:27:00 | 24 | Q.  At that moment, when you're downloading those printouts |
| 10:27:05 | 25 | in August of 2013, it could be one of those people, it could |

Trajkovic - Cross

35

10:27:08   1   be two of those people, it could be three of those people?

10:27:11   2   A.   Yes.

10:27:12   3   Q.   You don't have any reason to believe that it's one in

10:27:16   4   particular and not the other?

10:27:18   5   A.   Correct.

10:27:19   6   Q.   I'm showing you what are already admitted as Defense

10:27:31   7   Exhibits 7, 8, and 9.

10:27:36   8        Defendant's Exhibit 7, 8, and 9 are text searches,

10:27:42   9   correct, text messages?

10:27:45  10   A.   NCIC.

10:27:47  11   Q.   What is NCIC?

10:27:49  12   A.   International Criminal Database.

10:27:52  13   Q.   These are printouts of criminal histories?

10:27:57  14   A.   Correct.

10:27:58  15   Q.   Defendant's Exhibits 7, 8, and 9 are printouts of

10:28:03  16   criminal histories for Edwidge Darbouze, Edwidge Junior

          17   Darbouze, and Evans Darbouze, correct?

10:28:14  18   A.   Correct.

10:28:15  19   Q.   You printed out those criminal histories searches?

10:28:21  20   A.   Yes.

10:28:21  21   Q.   When did you print those out?

10:28:22  22   A.   I probably did more than one search from the beginning

10:28:25  23   of when I got the subpoena back.  I then checked it again

10:28:29  24   right before I did my search warrant.

10:28:32  25   Q.   You did those searches on NCIC before executing the

Trajkovic - Cross

10:28:37  1  search warrant?

10:28:37  2  A.  Yes, I did.

10:28:39  3  Q.  You did it for all three individuals?

10:28:41  4  A.  Yes.

10:28:42  5  Q.  At the time you did those searches and you printed out

10:28:45  6  those criminal histories for those three individuals, you

10:28:52  7  still didn't know which of the three could be downloading

10:28:55  8  child pornography?

10:28:56  9  A.  Correct.

10:28:57  10  Q.  You know somebody was downloading child pornography at

10:29:00  11  the home, but you don't who?

10:29:03  12  A.  Correct.

10:29:04  13  Q.  It could be any one of those people?

10:29:07  14  A.  It could be somebody else.

10:29:09  15  Q.  It could be somebody else?

10:29:15  16  A.  Correct.

10:29:18  17  Q.  On September 3rd, 2013, you apply for a search warrant?

10:29:42  18  A.  Okay.

10:29:43  19  Q.  Yes?

10:29:45  20  A.  Yes, I did.

10:29:46  21  Q.  In support of that application, you prepared a search

10:29:51  22  warrant affidavit?

23  A.  Yes, I did.

10:29:52  24  Q.  And you discussed that on direct examination?

10:29:54  25  A.  And it was September 13th.

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 10:29:57 | 1 | Q.   What did I say? |
| 10:30:02 | 2 | A.   You said 3. |
| 10:30:03 | 3 | Q.   September 13th.  I think it's Government's 1, but it's |
| 10:30:13 | 4 | also Defense Exhibit 12. |
| 10:30:18 | 5 | So we're on September 13th.  You submit that |
| 10:30:31 | 6 | affidavit on December 13th to Magistrate Judge Goodman? |
| 10:30:35 | 7 | A.   Correct. |
| 10:30:36 | 8 | Q.   When you submit that affidavit, you still don't know |
| 10:30:41 | 9 | who, at that residence, may be downloading child |
| 10:30:46 | 10 | pornography? |
| 10:30:47 | 11 | A.   That is correct. |
| 10:30:48 | 12 | Q.   In fact, in your search warrant affidavit, you don't |
| 10:30:53 | 13 | identify a particular individual who's a target of the |
| 10:30:56 | 14 | investigation? |
| 10:30:57 | 15 | A.   No.  We only say the subscriber of the Internet service |
| 10:31:03 | 16 | provider. |
| 10:31:03 | 17 | Q.   The affidavit doesn't identify a particular human that |
| 10:31:06 | 18 | is a target of your investigation? |
| 10:31:08 | 19 | A.   No. |
| 10:31:09 | 20 | Q.   The closest thing you have, on September 13th, is a |
| 10:31:12 | 21 | target premise. |
| 10:31:13 | 22 | A.   Correct. |
| 10:31:14 | 23 | Q.   Just take a look at paragraphs 39 through 44 of the |
| 10:31:27 | 24 | affidavit, which are at Bates Numbers 354 and 355. |
| 10:31:44 | 25 | Do you see it? |

Trajkovic - Cross

10:31:49   1   A.   Yes, I do.

10:31:50   2   Q.   In paragraph 39, you talk about how you did a motor

10:31:56   3   vehicle inquiry of Edwidge Darbouze, born in 1958, correct?

10:32:04   4   A.   Correct.

10:32:05   5   Q.   That's the defendant's father?

10:32:06   6   A.   Correct.

10:32:07   7   Q.   In paragraph 40, you say that further investigation

10:32:10   8   revealed that Edwidge Darbouze may be residing with two

10:32:16   9   other individuals, EJD and EV, at the target premise?

10:32:22   10   A.   That is correct.

10:32:23   11   Q.   You say that actual names and dates of birth have not

10:32:28   12   been provided to protect their identity?

10:32:30   13   A.   Correct.

10:32:31   14   Q.   At the time that you presented this to Magistrate

10:32:35   15   Goodman, you're trying to protect the identity of Edwidge

10:32:41   16   Junior Darbouze.

           17   A.   Yes.

10:32:42   18   Q.   You don't know whether he's involved in downloading

10:32:44   19   child pornography at all?

10:32:46   20   A.   At that point, I don't even know if he lives there.

10:32:49   21   Q.   The same thing is also true for his father, Edwidge

10:32:52   22   Darbouze?

           23   A.   Well, he was the subscriber.

           24   Q.   He was the subscriber, but you don't know if he was

           25   downloading child pornography.

May 29, 2014

Trajkovic - Cross

|          |    |                                                             |
|----------|----|-------------------------------------------------------------|
|          | 1  | A.   No.                                                    |
| 10:32:55 | 2  | Q.   Or if he's engaged in any criminal activity at all?    |
| 10:33:03 | 3  | A.   Correct.                                               |
| 10:33:05 | 4  | Q.   And the same thing for Evans Darbouze?                 |
| 10:33:09 | 5  | A.   Correct, I don't.                                      |
| 10:33:11 | 6  | Q.   Now, you're the case agent?                            |
| 10:33:14 | 7  | A.   Yes, I am.                                             |
| 10:33:15 | 8  | Q.   As part of the search, you prepared what are called    |
| 10:33:19 | 9  | enforcement operation plans, correct?                       |
| 10:33:21 | 10 | A.   Yes.                                                   |
| 10:33:23 | 11 | Q.   What is an enforcement operation plan?                 |
| 10:33:26 | 12 | A.   It is basically what we discuss in detail during the   |
| 10:33:32 | 13 | brief before we conduct any operation.                      |
| 10:33:34 | 14 | Q.   Showing you what has been admitted as Defendant's      |
| 10:33:37 | 15 | Exhibit 13.                                                 |
| 10:33:38 | 16 |       Is that a true and correct copy of the enforcement    |
| 10:33:41 | 17 | operation plan for this case?                               |
| 10:33:44 | 18 | A.   For the search warrant of the premises, yes, without the |
| 10:33:47 | 19 | attachments.                                                |
| 10:33:48 | 20 | Q.   Without the attachments?                               |
| 10:33:50 | 21 | A.   And without the signature page.                        |
| 10:33:53 | 22 | Q.   With those caveats, is that the enforcement operation  |
| 10:34:00 | 23 | plan that you prepared for the search of the residence in   |
| 10:34:04 | 24 | this case?                                                  |
| 10:34:05 | 25 | A.   Yes, it is.  It looks like it.                         |

May 29, 2014

10:34:09   1   Q.  You distributed a copy of that enforcement operation
10:34:13   2   plan to the other agents involved in the search of the home?
10:34:17   3   A.  With all the attachments and maps to the closest
10:34:20   4   hospitals and everything else, yes.
10:34:23   5   Q.  All the agents that are going into that home as part of
10:34:27   6   the search get a copy of Defense Exhibit 13?
10:34:32   7   A.  Yes, with the attachments, pictures, the floor plans
10:34:37   8   possible that we're going to encounter, everything else.
10:34:41   9   Q.  Got it.
10:34:45  10        When did you prepare this enforcement operation
10:34:47  11   plan?
10:34:48  12   A.  If you have the signature page, it will tell you the
10:34:51  13   last printout that I did.
10:34:53  14   Q.  When did you distribute it to the other agents involved
10:34:57  15   in the search?
10:34:57  16   A.  I would say I did the previous day because I usually
10:35:02  17   send it via email and they print it out and take it to the
10:35:07  18   briefing.
10:35:08  19   Q.  When you prepare -- so this is about two days before the
10:35:19  20   warrant was executed that you distribute the enforcement
10:35:23  21   operation plan?
10:35:24  22   A.  No, maybe the night before.  Maybe I took it to the
10:35:29  23   briefing with me.  In this case, I don't recall.
10:35:31  24   Q.  It was one or two days or maybe immediately before the
10:35:38  25   search of the home?

Trajkovic - Cross

41

| | | |
|---|---|---|
| 10:35:39 | 1 | A.  Correct. |
| 10:35:39 | 2 | Q.  At the time you distributed the enforcement operation |
| 10:35:47 | 3 | plan, you still don't know who, in the residence, is |
| 10:35:52 | 4 | downloading child pornography? |
| 10:35:54 | 5 | A.  No, I don't. |
| 10:35:56 | 6 | Q.  In fact, that's what you communicate to the other agents |
| 10:36:00 | 7 | involved in the search? |
| 10:36:01 | 8 | A.  Correct. |
| 10:36:02 | 9 | Q.  We know that because, on the page identified as Darbouze |
| 10:36:07 | 10 | 138, the Bates number, you list the operational objectives |
| 10:36:13 | 11 | of the warrant. |
| 10:36:15 | 12 | A.  Ah-ha. |
| 10:36:16 | 13 | Q.  You say that one of the operational objectives is to |
| 10:36:22 | 14 | execute a Federal search warrant on the residence? |
| 10:36:25 | 15 | A.  Correct. |
| 10:36:26 | 16 | Q.  But that's not the only objective. |
| 10:36:29 | 17 | A.  No, it's not. |
| 10:36:30 | 18 | Q.  Another objective is to interview the residents of the |
| 10:36:35 | 19 | apartment and try to determine who the violator is? |
| 10:36:39 | 20 | A.  Yes. |
| 10:36:39 | 21 | Q.  Another objective is the possible arrest of the |
| 10:36:42 | 22 | violator? |
| 10:36:43 | 23 | A.  Correct. |
| 10:36:44 | 24 | Q.  At that point, when you distribute the enforcement |
| 10:36:49 | 25 | operation plan to your colleagues, there are three potential |

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 10:36:54 | 1 | violators, correct, in your mind? |
| 10:36:56 | 2 | A.  Correct, at least. |
| 10:36:58 | 3 | Q.  At least three? |
| 10:36:59 | 4 | A.  Yes. |
| 10:37:00 | 5 | Q.  The three are Edwidge Darbouze, Edwidge Junior Darbouze, |
| 10:37:05 | 6 | and Evans Darbouze? |
| 10:37:06 | 7 | A.  Yes |
| 10:37:08 | 8 | Q.  Is there any other person that you have in mind at that |
| 10:37:12 | 9 | point? |
| 10:37:13 | 10 | A.  I couldn't determine from the surveillance that anybody |
| 10:37:15 | 11 | else lived there. |
| 10:37:16 | 12 | Q.  It's always possible that it's somebody else, but those |
| 10:37:21 | 13 | three are the people that you have in mind as the named |
| 10:37:24 | 14 | people who are potential violators? |
| 10:37:26 | 15 | A.  I had pretty much the idea that it was somebody that |
| 10:37:31 | 16 | lived in the house because the download times were very late |
| 10:37:35 | 17 | at night.  In my mind, it wasn't possible that it was just a |
| 10:37:42 | 18 | guest. |
| 10:37:43 | 19 | Q.  Okay.  There are ten agents involved in the execution of |
| 10:37:55 | 20 | the search warrant, correct? |
| 10:37:57 | 21 | A.  At least. |
| 10:37:58 | 22 | Q.  At least ten. |
| 10:38:00 | 23 | A.  I don't know how many. |
| 10:38:04 | 24 | Oh, I'm missing more pages. |
| 10:38:08 | 25 | Q.  What are you missing pages on? |

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 10:38:11 | 1 | A.  On the plan. |
| 10:38:17 | 2 | Q.  The pages that I provided you of the plan, are they true |
| 10:38:23 | 3 | and accurate copies of the operations plan? |
| 10:38:27 | 4 | A.  Yes, they are. |
| 10:38:28 | 5 | It was ten or 11 agents. |
| 10:38:30 | 6 | Q.  All the agents are armed when they're going into the |
| 10:38:34 | 7 | home? |
| 10:38:34 | 8 | A.  Yes. |
| 10:38:35 | 9 | Q.  Are the agents wearing what you called the raid gear? |
| 10:38:42 | 10 | A.  Yes, as per policy. |
| 10:38:44 | 11 | Q.  All the agents enter the home at 6:00 a.m.? |
| 10:38:49 | 12 | A.  No, I had at least three agents as perimeter. |
| 10:38:53 | 13 | Q.  So the majority of the agents enter at 6:08 a.m.? |
| 10:38:58 | 14 | A.  Correct. |
| 10:39:02 | 15 | Q.  At the time of the entry of the home, it's still dark |
| 10:39:06 | 16 | out? |
| 10:39:07 | 17 | A.  At that time of the year, yes. |
| 10:39:09 | 18 | Q.  It was the middle of the week? |
| 10:39:10 | 19 | A.  I believe it was a Wednesday, yes. |
| 10:39:12 | 20 | Q.  No one in the home had any forewarning that this was |
| 10:39:18 | 21 | going to happen? |
| 10:39:19 | 22 | A.  No, hopefully not. |
| 10:39:20 | 23 | Q.  Who banged on the door? |
| 10:39:23 | 24 | A.  Special Agent Colman.  He knocked and announced for the |
| 10:39:27 | 25 | group. |

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 10:39:28 | 1 | Q.  As Special Agent Colman knocked, he's knocking on that |
| 10:39:31 | 2 | door, you still don't know who is downloading child |
| 10:39:36 | 3 | pornography in that home? |
| 10:39:37 | 4 | A.  No, I don't. |
| 10:39:39 | 5 | Q.  The door is answered by Evans Darbouze? |
| 10:39:42 | 6 | A.  Correct. |
| 10:39:43 | 7 | Q.  You later learn that -- well, you already had an idea of |
| 10:39:49 | 8 | what Evans Darbouze looked liked. |
| 10:39:52 | 9 | A.  Yes, I did. |
| 10:39:53 | 10 | Q.  From your searches of his driving history? |
| 10:39:56 | 11 | A.  Correct. |
| 10:39:57 | 12 | Q.  All the agents walk into the foyer? |
| 10:40:21 | 13 | A.  Yes. |
| 10:40:21 | 14 | Q.  The apartment is about 845 square feet? |
| 10:40:26 | 15 | A.  Yes. |
| 10:40:28 | 16 | Q.  The foyer is like 12 feet wide? |
| 10:40:31 | 17 | A.  Yes. |
| 10:40:32 | 18 | Q.  You've got a four-foot wide pathway, and we have at |
| 10:40:40 | 19 | least seven armed Federal agents coming into the house at |
| 10:40:45 | 20 | 6:00 in the morning? |
| 10:40:46 | 21 | A.  6:08, 6:10. |
| 10:40:49 | 22 | Q.  You said that, throughout the execution of the warrant, |
| 10:40:56 | 23 | all the occupants of the home are compliant and cooperative? |
| 10:41:02 | 24 | A.  Correct.  They were basically scared at the beginning. |
| 10:41:05 | 25 | They put their hands up and screamed something.  That's why |

Trajkovic - Cross

45

| | | |
|---|---|---|
| 10:41:09 | 1 | Evans got in handcuffs, and I believe the defendant too. |
| 10:41:12 | 2 | Q.  Have you executed search warrants before on homes? |
| 10:41:16 | 3 | A.  Yes, I have. |
| 10:41:17 | 4 | Q.  Screaming is typical, right, given how frightening a |
| 10:41:25 | 5 | situation it is for them? |
| 10:41:26 | 6 | A.  Yes, it is, unexpected. |
| 10:41:30 | 7 | Q.  Unexpected? |
| 10:41:31 | 8 | A.  Correct. |
| 10:41:31 | 9 | Q.  Even though they may have screamed, no one posed a |
| 10:41:35 | 10 | threat or physical threat to any of the agents? |
| 10:41:37 | 11 | A.  No. |
| 10:41:39 | 12 | Q.  When Evans opens the door, he is cooperative with the |
| 10:41:43 | 13 | agents? |
| 10:41:43 | 14 | A.  Not at first.  He starts stepping back, which is a |
| 10:41:48 | 15 | normal reaction, I would say. |
| 10:41:51 | 16 | Q.  Aside from stepping back, what else does he do? |
| 10:41:55 | 17 | A.  I don't know.  I wasn't there. |
| 10:41:57 | 18 | Q.  You were in the doorway? |
| 10:42:00 | 19 | A.  I was like fourth or fifth in the stack, yeah. |
| 10:42:03 | 20 | Q.  Now, the house contains five people that are sleeping in |
| 10:42:08 | 21 | the house when the agents walk in.  I guess you don't know |
| 10:42:12 | 22 | if they're sleeping or not. |
| 10:42:14 | 23 | A.  Everybody was awake and up when we went in. |
| 10:42:18 | 24 | Q.  Yes, I would expect them to be up when everybody walks |
| 10:42:23 | 25 | in. |

Trajkovic - Cross

46

10:42:23   1   A.   Well, not everybody, but in this case they were up.

10:42:27   2   Q.   They were sufficiently woken up?

10:42:30   3   A.   Correct.

10:42:31   4   Q.   The five people are Evans Darbouze, Edwidge Darbouze,

10:42:38   5   the father, Edwidge Junior Darbouze, and Mr. Darbouze's wife

10:42:46   6   -- I will start over again.

10:42:48   7        There are five occupants in the home; Edwidge

10:42:52   8   Darbouze, Edwidge Junior Darbouze, Evans Darbouze, Tanisha

10:42:57   9   Brown, and the wife of Edwidge Darbouze Senior?

10:43:03  10   A.   Correct.

10:43:03  11   Q.   Everyone is brought out to the living room?

10:43:06  12   A.   Briefly, yes.

10:43:08  13   Q.   The adult males are handcuffed?

10:43:10  14   A.   Just two of them, Evans and Edwidge Junior.

10:43:15  15   Q.   You deny that Edwidge Senior was handcuffed at all?

10:43:20  16   A.   I never saw him handcuffed.  I don't recall.

10:43:22  17   Q.   Did any agents on the team tell you that Edwidge Senior

10:43:27  18   was handcuffed?

10:43:28  19   A.   I didn't ask that specific question.

10:43:30  20   Q.   Did any agents tell you, whether you asked or not, that

10:43:35  21   Edwidge Senior was handcuffed?

10:43:36  22   A.   No.

10:43:37  23   Q.   Edwidge Junior and Evans Darbouze are handcuffed behind

10:43:44  24   their back?

10:43:46  25   A.   Yes, they are.

Trajkovic - Cross

| 10:43:46 | 1 | Q. Evans Darbouze, before he's handcuffed, is ordered to |
| 10:43:50 | 2 | get face down on the ground? |
| 10:43:54 | 3 | A. Correct. |
| 10:43:55 | 4 | Q. He is sat in the living room? |
| 10:43:57 | 5 | A. Correct. |
| 10:43:58 | 6 | Q. What kind of clothes was Evans wearing? |
| 10:44:02 | 7 | A. I think he had boxer shorts, either a tank top or no |
| 10:44:06 | 8 | shirt. |
| 10:44:08 | 9 | Q. He wasn't wearing street clothes? |
| 10:44:10 | 10 | A. I don't recall. |
| 10:44:11 | 11 | Q. When he came to the door, he wasn't properly dressed to |
| 10:44:15 | 12 | go out in public? |
| 10:44:16 | 13 | A. I would say so. |
| 10:44:18 | 14 | Q. He wasn't wearing socks? |
| 10:44:19 | 15 | A. I don't think so. |
| 10:44:22 | 16 | Q. He wasn't wearing shoes? |
| 10:44:24 | 17 | A. I don't think so. |
| 10:44:25 | 18 | Q. His girlfriend -- take a moment with Government's |
| 10:44:31 | 19 | Exhibit 2. There are two bedrooms in the home? |
| 10:44:33 | 20 | A. Correct. |
| 10:44:34 | 21 | Q. And there's a living room? |
| 10:44:36 | 22 | A. Correct. |
| 10:44:37 | 23 | Q. There are two couples, correct? |
| 10:44:39 | 24 | A. Yes. |
| 10:44:40 | 25 | Q. And there's one male, who is single? |

Trajkovic - Cross

48

| | | |
|---|---|---|
| 10:44:42 | 1 | A.   Yes. |
| 10:44:44 | 2 | Q.   So Edwidge Junior Darbouze is himself in bedroom number |
| 10:44:50 | 3 | two? |
| 10:44:50 | 4 | A.   Yes. |
| 10:44:52 | 5 | Q.   And the parents are sleeping in bedroom one? |
| 10:44:54 | 6 | A.   Yes. |
| 10:44:55 | 7 | Q.   Evans Darbouze and Darbouze's girlfriend were sleeping |
| 10:45:01 | 8 | in the living room? |
| 10:45:02 | 9 | A.   Yes, on a futon, I believe. |
| 10:45:04 | 10 | Q.   Some kind of roll-out mattress? |
| 10:45:06 | 11 | A.   Correct. |
| 10:45:07 | 12 | Q.   When you come in, Tanisha Brown wasn't expecting you |
| 10:45:12 | 13 | either? |
| 10:45:12 | 14 | A.   No. |
| 10:45:13 | 15 | Q.   She was wearing the kind of clothes people would wear |
| 10:45:17 | 16 | when they're going to bed? |
| 10:45:19 | 17 | A.   Correct. |
| 10:45:19 | 18 | Q.   Not wearing socks, not wearing shoes? |
| 10:45:23 | 19 | A.   I don't recall. |
| 10:45:27 | 20 | THE COURT:  Where are we going with all of this? |
| 10:45:43 | 21 | There are two issues here.  One is a search warrant, because |
| 10:45:46 | 22 | I don't think we need a witness because it's a search |
| 10:45:49 | 23 | warrant. |
| 10:45:50 | 24 | The other one was whether your guy voluntarily |
| 10:45:54 | 25 | waived those rights and responded to questions.  We have |

May 29, 2014

10:45:58   1   been here for one hour and 15 minutes, and we are no nearer
10:46:03   2   to the answer.
10:46:05   3        Let's get to what the point is here.  We don't have
10:46:09   4   all day for this hearing.  We need to get focused.  I think
10:46:13   5   you have set the scene for everything.  If he is wearing a
10:46:18   6   shoe or a sock doesn't matter with whether he voluntarily
10:46:22   7   waived his Miranda rights.
10:46:25   8        MR. GOMEZ:  I think it's relevant if our client is
10:46:30   9   in custody.
10:46:30  10        THE COURT:  It doesn't matter because they read him
10:46:33  11   his rights.
10:46:38  12        MR. GOMEZ:  It's just a point that the government
10:46:43  13   raises.
10:46:44  14        THE COURT:  That's right, but it doesn't matter.
10:46:47  15   How does the fact that his brother doesn't have his shoes on
10:46:52  16   relate to whether or not your client is in custody?  I
10:46:55  17   understand that you're trying to set the scene.  I've got
10:46:58  18   the scene, and we've got to move along.
10:47:04  19        Does the government want to make an argument that
10:47:08  20   he wasn't in custody?  Are you relying on that fact or are
10:47:13  21   you --
10:47:13  22        MR. JOHNSON:  Our argument is he was never in
10:47:16  23   custody.  Even if he was, they still read him the Miranda.
10:47:24  24        THE COURT:  I still don't see how whether or not
10:47:28  25   his brother has his shoes on relates to whether the

Trajkovic - Cross

| | | |
|---|---|---|
| 10:47:32 | 1 | defendant was in custody.  Let's talk about what the |
| 10:47:35 | 2 | defendant was doing then. |
| 10:47:36 | 3 | MR. GOMEZ: |
| 10:47:38 | 4 | Q.  There were videos taken of the apartment, correct? |
| 10:47:41 | 5 | A.  Yes. |
| 10:47:42 | 6 | Q.  As part of the execution of the warrant? |
| 10:47:44 | 7 | A.  Correct. |
| 10:47:45 | 8 | Q.  According to you, all the video was taken at the very |
| 10:47:54 | 9 | beginning of the execution of the warrant? |
| 10:47:55 | 10 | A.  We usually do one before the warrant and one after.  I |
| 10:47:59 | 11 | delegated that to somebody else. |
| 10:48:01 | 12 | Q.  Did you see the video when -- did you see the other |
| 10:48:08 | 13 | agent video taping the apartment? |
| 10:48:10 | 14 | A.  Yes, I did. |
| 10:48:11 | 15 | Q.  You saw all the video that had taken place? |
| 10:48:14 | 16 | A.  I learned that there was two cameras involved.  I have |
| 10:48:18 | 17 | been on vacation this week.  I learned there's no video and |
| 10:48:23 | 18 | pictures from a second camera that was used.  I didn't know |
| 10:48:26 | 19 | that. |
| 10:48:27 | 20 | Q.  Have you had a chance to review those? |
| 10:48:29 | 21 | A.  No. |
| 10:48:31 | 22 | Q.  As far as you know, there was video taken at the very |
| 10:48:35 | 23 | beginning of the search and then at the very end? |
| 10:48:38 | 24 | A.  That's what I asked for.  I only saw the one before the |
| 10:48:42 | 25 | search. |

Trajkovic - Cross

| | | |
|---|---|---|
| 10:48:42 | 1 | Q.  As far as your understanding, there was only video taken |
| 10:48:47 | 2 | at the very beginning and then video at the very end? |
| 10:48:51 | 3 | A.  Again, that's what I asked for.  I delegated that |
| 10:48:54 | 4 | function.  I was given the copies of the pictures and video, |
| 10:48:58 | 5 | but I only got one video done before the warrant. |
| 10:49:02 | 6 | Q.  Before the warrant or right at the inception of you |
| 10:49:09 | 7 | entering the apartment? |
| 10:49:10 | 8 | A.  Right before the search. |
| 10:49:13 | 9 | Q.  Soon after you entered the apartment? |
| 10:49:16 | 10 | A.  Right. |
| 10:49:16 | 11 | Q.  After that initial video is taken of the apartment, |
| 10:49:22 | 12 | there's a forensic image and forensic preview of the |
| 10:49:28 | 13 | electronic devices? |
| 10:49:29 | 14 | A.  No, not before. |
| 10:49:30 | 15 | Q.  Maybe I misspoke. |
| 10:49:33 | 16 |         After that initial video of the inside of the |
| 10:49:36 | 17 | apartment, there's the forensic image and preview of the |
| 10:49:41 | 18 | devices in the home? |
| 10:49:42 | 19 | A.  Just preview, not image. |
| 10:49:45 | 20 | Q.  After the video, there's a preview of the devices? |
| 10:49:50 | 21 | A.  Yes. |
| 10:49:50 | 22 | Q.  How long does the preview take? |
| 10:49:53 | 23 | A.  Sometimes ten minutes.  Sometimes two days. |
| 10:49:55 | 24 | Q.  In this case, how long did the preview take? |
| 10:49:58 | 25 | A.  About two and a half to three hours. |

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 10:50:01 | 1 | Q.  While the videos are taken, is anyone in the house |
| 10:50:11 | 2 | questioned? |
| 10:50:11 | 3 | A.  No. |
| 10:50:13 | 4 | Q.  Do any of the occupants of the home give any kind of |
| 10:50:20 | 5 | statements to any agents? |
| 10:50:22 | 6 | A.  No.  The first person I spoke to was Mr. Edwidge |
| 10:50:27 | 7 | Darbouze, the defendant's father.  I explained to him, after |
| 10:50:29 | 8 | the video was conducted, that we were there with a search |
| 10:50:33 | 9 | warrant to search the premises. |
| 10:50:35 | 10 | I remember I asked him one question in regards to |
| 10:50:38 | 11 | who set up the Wi-Fi.  That's it. |
| 10:50:43 | 12 | Q.  Those questions you asked of Edwidge Senior, that was |
| 10:50:51 | 13 | after the video? |
| 10:50:53 | 14 | A.  Probably, so. |
| 10:50:55 | 15 | Yes, after the video, right by when we moved |
| 10:50:58 | 16 | everybody to the bedroom, yes. |
| 10:50:59 | 17 | Q.  Then, after the preview, the questioning of the |
| 10:51:14 | 18 | occupants of the home begins? |
| 10:51:15 | 19 | A.  While the preview was being done. |
| 10:51:18 | 20 | Q.  How soon after -- the preview took how long here? |
| 10:51:22 | 21 | A.  Everything happens basically towards -- everything is at |
| 10:51:28 | 22 | the same time.  Some people do the previews.  Those would be |
| 10:51:33 | 23 | the forensic agents.  Some others are searching. |
| 10:51:37 | 24 | Q.  I'm not asking in a general matter, Agent.  I'm asking |
| 10:51:41 | 25 | how long did the preview of the devices go on before the |

May 29, 2014

10:51:46   1   questioning of the occupants were going?

10:51:49   2   A.   It was still on going.

10:51:50   3   Q.   Maybe I need to need rephrase my question.

10:51:54   4   A.   Please.

10:51:55   5   Q.   There was a preview of the electronic devices?

10:51:57   6   A.   Yes.

10:51:59   7   Q.   There was questioning of the occupants?

10:52:02   8   A.   Interviews, yes.

10:52:03   9   Q.   The preview started at around what time?

10:52:06   10   A.   I don't know when the forensic agents set up a piece of

10:52:11   11   equipment to start the video.  Probably shortly after the

10:52:16   12   video.  Maybe half an hour after the video.

10:52:18   13   Q.   It took approximately two hours?

10:52:20   14   A.   Yes.

10:52:22   15   Q.   Then the questioning of the occupants, or the interviews

10:52:29   16   of the occupants, as far s you remember, did it start about

10:52:35   17   the same time as the preview or sometime after the preview

10:52:39   18   started?

10:52:40   19        MR. JOHNSON:  Objection, asked and answered.

10:52:42   20        THE COURT:  It hasn't been answered.  We

10:52:45   21   established that it was occurring at the same time.

10:52:48   22        Did the preview start before the questioning?  How

10:52:50   23   long before the questioning?

10:52:53   24        THE WITNESS:  The preview started before the

10:52:55   25   questioning.

Trajkovic - Cross

| | | |
|---|---|---|
| 10:52:55 | 1 | THE COURT:  How long before the questioning of the |
| 10:52:59 | 2 | first person? |
| 10:53:00 | 3 | THE WITNESS:  I couldn't say. |
| 10:53:02 | 4 | THE COURT:  There's your answer. |
| 10:53:06 | 5 | BY MR. GOMEZ: |
| 10:53:07 | 6 | Q.  You participated in all of the interviews of the |
| 10:53:09 | 7 | occupants? |
| 10:53:09 | 8 | A.  No. |
| 10:53:12 | 9 | Q.  No? |
| 10:53:13 | 10 | A.  No. |
| 10:53:14 | 11 | Q.  First to be questioned is Edwidge Senior, correct? |
| 10:53:18 | 12 | A.  Correct. |
| 10:53:20 | 13 | Q.  When did the questioning start of Edwidge Senior? |
| 10:53:54 | 14 | A.  Can I refer to my notes? |
| 10:53:57 | 15 | 7:25 in the morning. |
| 10:54:04 | 16 | Q.  Did Edwidge Senior Darbouze give any statements before |
| 10:54:06 | 17 | that? |
| 10:54:07 | 18 | A.  No, he had told me the Wi-Fi had been set up by the |
| 10:54:12 | 19 | defendant. |
| 10:54:13 | 20 | Q.  When did he say that? |
| 10:54:14 | 21 | A.  Maybe 6:35. |
| 10:54:17 | 22 | Q.  Now, you took the father outside to a car? |
| 10:54:23 | 23 | A.  Correct. |
| 10:54:23 | 24 | Q.  You questioned him there too? |
| 10:54:25 | 25 | A.  Yes. |

10:54:28  1  Q.  Now, you questioned Edwidge Senior about his use of the

10:54:36  2  computer, correct?

10:54:38  3  A.  Yes, I did.  Not myself.  It was a partner of mine

10:54:41  4  conducting the interview.  I was only taking notes.

10:54:44  5  Q.  Who is that partner?

10:54:46  6  A.  Special Agent Divine.

10:54:48  7  Q.  He asked Edwidge Senior about his use of the computer?

10:54:53  8  A.  Correct.

10:54:53  9  Q.  He asked Edwidge Senior about what he understands about

10:54:57  10 P-to-P filing sharing?

10:54:59  11 A.  Yes.

10:55:00  12 Q.  He asked him, "What do you use the computer for?"

10:55:02  13 A.  Yes.

10:55:03  14 Q.  He asked him, "What do you go on the Internet for?"

10:55:06  15 A.  Yes.

10:55:06  16 Q.  No law enforcement advised Edwidge Senior of his Miranda

10:55:13  17 rights?

10:55:14  18 A.  Correct.

10:55:14  19 Q.  Edwidge Senior never executed a Miranda waiver form?

10:55:21  20 A.  Correct.

10:55:21  21 Q.  He never executed a statement of rights form?

10:55:24  22 A.  Correct.

10:55:25  23 Q.  Evans Darbouze was interviewed?

10:55:34  24 A.  Yes.

10:55:34  25 Q.  By law enforcement?

Trajkovic - Cross

56

| 10:55:36 | 1 | A. Yes. |
| 10:55:36 | 2 | Q. He was present for Evans Darbouze's interview? |
| 10:55:39 | 3 | A. Yes. |
| 10:55:41 | 4 | Q. Edwidge Senior, Edwidge Junior, Tanisha Brown were |
| 10:55:47 | 5 | interviewed? |
| 10:55:48 | 6 | A. I think it was the same time I was with the father. |
| 10:55:55 | 7 | Q. Edwidge Darbouze was around the same time? |
| 10:56:14 | 8 | A. 7:50. |
| 10:56:33 | 9 | Q. A.m.? |
| 10:56:34 | 10 | A. Yes. |
| 10:56:34 | 11 | Q. You did not personally question Evans Darbouze? |
| 10:56:38 | 12 | A. I was there.  I was present throughout the whole |
| 10:56:41 | 13 | interview. |
| 10:56:42 | 14 | Q. You did not conduct the interviews? |
| 10:56:44 | 15 | A. I did not. |
| 10:56:45 | 16 | Q. Evans Darbouze was questioned by Special Agent Divine |
| 10:56:48 | 17 | also? |
| 10:56:48 | 18 | A. Yes. |
| 10:56:50 | 19 | Q. Special Agent Divine asked Evans Darbouze about his use |
| 10:56:54 | 20 | of the computer, correct? |
| 10:56:55 | 21 | A. Yes. |
| 10:56:55 | 22 | Q. Special Agent Divine asked Evans Darbouze about his use |
| 10:57:01 | 23 | of peer-to-peer file sharing networks? |
| 10:57:04 | 24 | A. Correct. |
| 10:57:04 | 25 | Q. Special Agent Divine asked Evans Darbouze about why he |

May 29, 2014

Trajkovic - Cross

10:57:09   1   goes online to download pornography?

10:57:12   2   A.   Yes.

10:57:14   3   Q.   Questioning of Edwidge Senior Darbouze about use of the

10:57:20   4   computer -- if I could go back for a second?

10:57:23   5   A.   Sure.

10:57:23   6   Q.   That was in furtherance of your operational plan?

10:57:29   7   A.   Yes.

10:57:30   8   Q.   To determine who the violator is?

10:57:32   9   A.   Yes.

10:57:33  10   Q.   Because you think that Edwidge Senior Darbouze may be

10:57:38  11   downloading child pornography?

10:57:40  12   A.   Any of the occupants.

10:57:41  13   Q.   And that includes Edwidge Senior?

10:57:44  14   A.   Yes.

10:57:45  15   Q.   And the same thing is true for Evans Darbouze?

10:57:48  16   A.   Yes.

10:57:49  17   Q.   Then the questioning of Edwidge Junior happened,

10:57:57  18   correct?

10:57:58  19   A.   Yes.

10:57:58  20   Q.   To save time, your report says 8:40 a.m.

10:58:03  21   A.   Yes.

10:58:08  22   Q.   Is that your testimony about when the questioning

10:58:12  23   started?

10:58:13  24   A.   Yes, it did.  My notes and also the waiver state

10:58:17  25   8:40 a.m.

Trajkovic - Cross

| | | |
|---|---|---|
| 10:58:20 | 1 | Q.  I didn't ask about when the waiver was signed.  I'm |
| 10:58:25 | 2 | asking when the questioning starts. |
| 10:58:26 | 3 | A.  After the waiver. |
| 10:58:27 | 4 | Q.  Your testimony is that the questioning starts at |
| 10:58:31 | 5 | 8:40 a.m., just so we have a clear record? |
| 10:58:33 | 6 | A.  After the waiver was signed, 8:41, 8:42. |
| 10:58:39 | 7 | Q.  Did I hear you correct on direct examination that |
| 10:58:43 | 8 | Edwidge Junior Darbouze gave a statement before questioning |
| 10:58:47 | 9 | started? |
| 10:58:49 | 10 | A.  Say it again. |
| 10:58:50 | 11 | Q.  Did Edwidge Junior Darbouze give a statement before |
| 10:58:55 | 12 | questioning started? |
| 10:58:55 | 13 | A.  No. |
| 10:58:56 | 14 | Q.  So you entered the home at 6:08 a.m.? |
| 10:59:06 | 15 | A.  Correct. |
| 10:59:07 | 16 | Q.  The questioning of Edwidge Junior Darbouze started at |
| 10:59:11 | 17 | 8:40 a.m.? |
| 10:59:12 | 18 | A.  Yes. |
| 10:59:13 | 19 | Q.  Almost two and a half hours after you've been in his |
| 10:59:17 | 20 | home you start questioning him? |
| 10:59:19 | 21 | A.  Correct. |
| 10:59:19 | 22 | Q.  You were armed during your questioning? |
| 10:59:23 | 23 | A.  Holstered, everybody. |
| 10:59:25 | 24 | Q.  So is Special Agent Divine armed? |
| 10:59:28 | 25 | A.  All of us are. |

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 10:59:30 | 1 | Q.   Other officers are conducting a search of the home while |
| 10:59:34 | 2 | the questioning is being done? |
| 10:59:35 | 3 | A.   Maybe that time the search had been completed.  I don't |
| 10:59:39 | 4 | recall. |
| 10:59:39 | 5 | Q.   There were other officers in the home besides you and |
| 10:59:43 | 6 | Special Agent Divine? |
| 10:59:43 | 7 | A.   Yes. |
| 10:59:45 | 8 | Q.   Was Edwidge Junior Darbouze handcuffed during the |
| 10:59:49 | 9 | questioning? |
| 10:59:49 | 10 | A.   No. |
| 10:59:51 | 11 | Q.   Special Agent Shoupe was also present for the initial |
| 10:59:58 | 12 | questioning of Edwidge Junior Darbouze? |
| 11:00:00 | 13 | A.   As I recall, yes. |
| 11:00:02 | 14 | Q.   At some point, you and Special Agent Shoupe leave the |
| 11:00:06 | 15 | interview and Special Agent Colman joins the interview and |
| 11:00:11 | 16 | replaces you, correct? |
| 11:00:14 | 17 | A.   Correct. |
| 11:00:15 | 18 | Q.   During the entirety of the interview of Edwidge Junior, |
| 11:00:19 | 19 | Darbouze, there are at least two Federal agents in the room |
| 11:00:23 | 20 | and the door is almost completely closed? |
| 11:00:26 | 21 | A.   Correct. |
| 11:00:26 | 22 | Q.   If somebody had to use the bathroom, what was the |
| 11:00:29 | 23 | procedure during the search? |
| 11:00:31 | 24 | A.   Basically, they would say they were going to use the |
| 11:00:36 | 25 | bathroom, and we would ask them not to lock the door. |

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 11:00:39 | 1 | Q.  Were they allowed to close the door? |
| 11:00:42 | 2 | A.  Not to lock it. |
| 11:00:43 | 3 | Q.  Were they allowed to close the door? |
| 11:00:46 | 4 | A.  Yes. |
| 11:00:47 | 5 | Q.  You said on direct that you left the interview of |
| 11:00:52 | 6 | Edwidge Junior Darbouze for five minutes? |
| 11:00:56 | 7 | A.  Yeah, five.  Maybe ten. |
| 11:00:59 | 8 | Q.  Maybe ten. |
| 11:01:02 | 9 | A.  The last five or ten minutes of the interview. |
| 11:01:04 | 10 | Q.  Is it five or is it ten? |
| 11:01:06 | 11 | A.  I don't recall. |
| 11:01:07 | 12 | Q.  You had him sign a consent to search form? |
| 11:01:25 | 13 | A.  After I joined the interview again. |
| 11:01:27 | 14 | Q.  It was a consent to search his vehicle? |
| 11:01:29 | 15 | A.  Correct. |
| 11:01:30 | 16 | Q.  You didn't find any contraband or illegal evidence in |
| 11:01:33 | 17 | the vehicle, correct? |
| 11:01:34 | 18 | A.  Nothing. |
| 11:01:35 | 19 | Q.  The consent to search form he signed at 9:35 a.m.? |
| 11:01:40 | 20 | A.  9:35, yes. |
| 11:01:43 | 21 | Q.  Around when does the questioning of Edwidge Junior |
| 11:01:49 | 22 | Darbouze terminate? |
| 11:01:51 | 23 | A.  Probably a couple of minutes before he signed a consent |
| 11:01:56 | 24 | to search. |
| 11:01:57 | 25 | Q.  When you left for five or ten minutes, it was pretty |

May 29, 2014

Trajkovic - Cross

61

| 11:02:00 | 1 | much the tail end of the interview? |
| 11:02:04 | 2 | A.   The last five or ten minutes of the interview. |
| 11:02:07 | 3 | Q.   You were there for the majority of the interview? |
| 11:02:09 | 4 | A.   95 percent of it. |
| 11:02:11 | 5 | Q.   You're saying that you don't ask any questions? |
| 11:02:15 | 6 | A.   Maybe follow-up questions to Mr. Divine's line of |
| 11:02:19 | 7 | questions. |
| 11:02:20 | 8 | Q.   What kind of follow-up questions did you ask? |
| 11:02:23 | 9 | A.   I don't recall. |
| 11:02:24 | 10 | Q.   I'm showing you the statement of rights and waiver by |
| 11:03:01 | 11 | Evans Darbouze. |
| 11:03:03 | 12 | A.   Yes. |
| 11:03:04 | 13 | Q.   Evans Darbouze signed a waiver of rights in your |
| 11:03:08 | 14 | presence? |
| 11:03:09 | 15 | A.   Yes, I read the rights. |
| 11:03:11 | 16 | Q.   You read it? |
| 11:03:14 | 17 | A.   Yes. |
| 11:03:14 | 18 | Q.   There's a section, in Defense Exhibit 15, the waiver |
| 11:03:21 | 19 | section, with a time of 6:00 a.m., a date of 9/18/13.  It |
| 11:03:32 | 20 | says, "I was taken into custody at 6:00 a.m. on 9/18/13 and |
| 11:03:39 | 21 | have signed this document at 7:50 a.m. on 9/18/13." |
| 11:03:44 | 22 | That's what it says, correct? |
| 11:03:45 | 23 | A.   Yes. |
| 11:03:46 | 24 | Q.   The form provides for filling in those dates and times, |
| 11:03:49 | 25 | correct? |

Trajkovic - Cross

62

11:03:49   1   A.   Yes.

11:03:50   2   Q.   You filled that in, correct?

11:03:52   3   A.   Yes.

11:03:53   4   Q.   There's also a space on the form for the person being

11:04:01   5   questioned to write their name, correct?

11:04:03   6   A.   Yes.

11:04:04   7   Q.   Because it says "print name"?

11:04:07   8   A.   Yes.

11:04:08   9   Q.   You wrote the name Evans Darbouze, correct?

11:04:13  10   A.   Yes, I did.

11:04:14  11   Q.   Then there's a mark for signature, correct?

11:04:16  12   A.   Yes.

11:04:18  13   Q.   Who signed that?

11:04:19  14   A.   Mr. Darbouze.

11:04:20  15   Q.   You filled out the arrest form?

11:04:23  16   A.   Yes, I did.

11:04:29  17   Q.   Mr. Evans Darbouze was questioned before he signed that

11:04:36  18   waiver form, correct?

11:04:37  19   A.   No, sir.

11:04:38  20   Q.   I'm showing you what is marked as Defense Exhibit 16.

11:04:46  21   That's the statement of rights and waiver form for Edwidge

11:04:49  22   Junior Darbouze, correct?

11:04:51  23   A.   Yes.

11:04:52  24   Q.   The form is the same as Defendant's Exhibit 15, correct?

11:04:56  25   A.   Correct.

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 11:04:57 | 1 | Q.  Just as you did with Evans Darbouze, for Edwidge Junior |
| 11:05:07 | 2 | Darbouze, in the section for waiver, you filled in the dates |
| 11:05:10 | 3 | and the times, correct? |
| 11:05:11 | 4 | A.  Yes, I did. |
| 11:05:11 | 5 | Q.  Just as you did for Evans Darbouze, you wrote the name |
| 11:05:16 | 6 | out, Edwidge Junior Darbouze in the waiver? |
| 11:05:20 | 7 | A.  Yes, I did. |
| 11:05:21 | 8 | Q.  Mr. Darbouze didn't his own name? |
| 11:05:24 | 9 | A.  No, he didn't.  He signed and put initials next to each |
| 11:05:28 | 10 | right. |
| 11:05:29 | 11 | Q.  There are sections for the witnesses, correct? |
| 11:05:32 | 12 | A.  Yes. |
| 11:05:32 | 13 | Q.  The waiver form, the part of the form on waiver, it's |
| 11:05:36 | 14 | written in the first person, correct? |
| 11:05:38 | 15 | A.  Yes. |
| 11:05:39 | 16 | Q.  It says, "I was taken into custody"? |
| 11:05:42 | 17 | A.  Yes. |
| 11:05:44 | 18 | Q.  But you filled those out? |
| 11:05:46 | 19 | A.  Yes, I did. |
| 11:05:47 | 20 | Q.  Why did you fill them out? |
| 11:05:50 | 21 | A.  I always do. |
| 11:05:51 | 22 | Q.  Always do? |
| 11:05:52 | 23 | A.  Yes. |
| 11:05:52 | 24 | Q.  Now I'm showing you what has been admitted as Exhibit |
| 11:06:05 | 25 | 13.  That's an inventory log, correct? |

May 29, 2014

Trajkovic - Cross

| | | |
|---|---|---|
| 11:06:08 | 1 | A.  Yes, it is. |
| 11:06:09 | 2 | Q.  It's a form that was filled out showing the items that |
| 11:06:12 | 3 | were seized from the home? |
| 11:06:14 | 4 | A.  Yes. |
| 11:06:15 | 5 | Q.  That's also signed by somebody, correct? |
| 11:06:17 | 6 | A.  Yes, it is. |
| 11:06:18 | 7 | Q.  It is signed by Edwidge Senior Darbouze? |
| 11:06:23 | 8 | A.  Yes, it is. |
| 11:06:24 | 9 | Q.  There's a section there to write the printed name, |
| 11:06:27 | 10 | correct? |
| 11:06:27 | 11 | A.  Correct. |
| 11:06:28 | 12 | Q.  Edwidge Senior, he wrote his own name, didn't he? |
| 11:06:32 | 13 | A.  I believe so. |
| 11:06:33 | 14 | Q.  On September 18th, 2013, that was the only form that |
| 11:06:43 | 15 | Edwidge Senior signed that day? |
| 11:06:46 | 16 | A.  Yes. |
| 11:06:47 | 17 | Q.  Just as a general matter, peer-to-peer file sharing |
| 11:07:09 | 18 | networks, they can be used for innocent conduct? |
| 11:07:14 | 19 | A.  Yes.  As a matter of fact, they downloaded a lot of |
| 11:07:19 | 20 | actions. |
| 11:07:20 | 21 | Q.  When you say "they", you mean the Darbouze family? |
| | 22 | A.  Yes. |
| 11:07:25 | 23 | MR. GOMEZ:  One moment, Your Honor. |
| 11:07:30 | 24 | THE COURT:  Sure. |
| 11:07:31 | 25 | MR. GOMEZ:  No further questions, Your Honor. |

May 29, 2014

| | | |
|---|---|---|
| 11:07:34 | 1 | THE COURT: All right. Any redirect? |
| 11:07:38 | 2 | THE COURT: Mr. Johnson, let me ask you something. |
| 11:07:43 | 3 | Why are you arguing -- explain to me how this fellow |
| 11:07:46 | 4 | Darbouze is not custody when the government gives him a form |
| 11:07:49 | 5 | saying, "I was taken into custody at such and such a time"? |
| 11:07:52 | 6 | The government there is telling him he is in |
| 11:07:55 | 7 | custody, isn't he? You're going to actually argue that the |
| 11:07:58 | 8 | government has him sign a form admitting he's in custody and |
| 11:08:02 | 9 | then he's supposed to think that he is not in custody? |
| 11:08:05 | 10 | MR. JOHNSON: They gave him the form to read his |
| 11:08:09 | 11 | rights. Something that they use all the times. It doesn't |
| 11:08:13 | 12 | show that he was in custody if you look at the facts. |
| 11:08:16 | 13 | THE COURT: So if an agent says, "You are in |
| 11:08:22 | 14 | custody," and here the agent says, "Read this form," and it |
| 11:08:25 | 15 | says, "I was taken into custody two hours ago," I don't |
| 11:08:28 | 16 | think anybody can objectively look at it and say he thought |
| 11:08:33 | 17 | he wasn't in custody. |
| 11:08:35 | 18 | MR. JOHNSON: I agree with you, Your Honor. |
| 11:08:38 | 19 | THE COURT: Do you still want to argue that? |
| 11:08:42 | 20 | MR. JOHNSON: No, Your Honor. |
| 11:08:44 | 21 | THE COURT: You no longer are relying on him not |
| 11:08:48 | 22 | being in custody? |
| 11:08:48 | 23 | MR. JOHNSON: I am no longer relying on that. |
| 11:08:52 | 24 | THE COURT: All right, good. Go ahead. |
| 11:09:00 | 25 | Thank you, Agent. You can step down. |

|         |    |                                                         |
|---------|----|---------------------------------------------------------|
|         | 1  | [Witness was excused].                                  |
| 11:09:03 | 2  | THE COURT:  She is the case agent, so she can stay      |
| 11:09:06 | 3  | in here anyway.                                          |
| 11:09:07 | 4  | MR. JOHNSON:  Yes.                                       |
| 11:09:09 | 5  | THE COURT:  Call your next witness.                     |
| 11:09:12 | 6  | MR. JOHNSON:  Your Honor.                               |
| 11:09:13 | 7  | THE COURT:  Robin, are you okay?                        |
| 11:09:29 | 8  | COURT REPORTER DISPENZIERI:  Yes, Sir, I'm fine,        |
| 11:09:30 | 9  | Judge.  Thank you.                                       |
| 11:10:11 | 10 | COURTROOM DEPUTY:  Do you solemnly swear that the       |
| 11:10:13 | 11 | testimony you are about to give will be the truth, the whole |
| 11:10:16 | 12 | truth and nothing but the truth so help you Gad?        |
| 11:10:17 | 13 | THE WITNESS:  I do.                                      |
| 11:10:19 | 14 | COURTROOM DEPUTY:  Please state your full name and      |
| 11:10:19 | 15 | spell it for the record.                                 |
| 11:10:23 | 16 | THE WITNESS:  Timothy Robert Divine, D-i-v-i-n-e.       |
| 11:10:25 | 17 | BY MR. JOHNSON:                                          |
| 11:10:27 | 18 | Q.  Where are you employed?                             |
| 11:10:29 | 19 | A.  I'm a special agent with Homeland Security          |
| 11:10:31 | 20 | Investigations assigned to the Miami Field Office.      |
| 11:10:34 | 21 | Q.  How long have you been assigned to HSI?             |
| 11:10:37 | 22 | A.  Approximately three years.                          |
| 11:10:38 | 23 | Q.  Do you have any training in becoming an agent?      |
| 11:10:41 | 24 | A.  Yes, I attended a special agent training program to |
| 11:10:46 | 25 | become a special agent with Homeland Security           |

| | | |
|---|---|---|
| 11:10:48 | 1 | Investigations.  That was conducted at the Federal Law |
| 11:10:51 | 2 | Enforcement Training Center in Quantico. |
| 11:10:55 | 3 | Q.  What are your assignments? |
| 11:10:57 | 4 | A.  I am currently assigned to the Cyber Crime Squad.  The |
| 11:11:01 | 5 | primary responsibility is Internet crime against children. |
| 11:11:04 | 6 | Q.  Before being an HSI agent, were you employed somewhere |
| 11:11:09 | 7 | else? |
| 11:11:10 | 8 | A.  Yes. |
| 11:11:11 | 9 | Q.  Where was that? |
| 11:11:12 | 10 | A.  Special Agent with the United States Secret Service for |
| 11:11:15 | 11 | 12 years. |
| 11:11:16 | 12 | Q.  Were you involved in an investigation with an individual |
| 11:11:18 | 13 | by the name of Edwidge Junior Darbouze? |
| 11:11:21 | 14 | A.  Yes, I was. |
| 11:11:22 | 15 | Q.  I would like to direct your attention to September 18, |
| 11:11:25 | 16 | 2013, in the vacinity of the 9041 Southwest 156th Street, |
| 11:11:30 | 17 | were you working that day? |
| 11:11:31 | 18 | A.  Yes, I was. |
| 11:11:32 | 19 | Q.  Were you working with yourself or with a team? |
| 11:11:35 | 20 | A.  I was working with the Homestead Division of Homeland |
| 11:11:38 | 21 | Security Investigations. |
| 11:11:39 | 22 | Q.  What was your assignments that day? |
| 11:11:41 | 23 | A.  I had multiple assignments. |
| 11:11:43 | 24 | I was part of the entry team for the execution of |
| 11:11:46 | 25 | the search warrant.  I was designated as the evidence |

Trajkovic - Cross

| | | |
|---|---|---|
| 11:11:48 | 1 | custodian. |
| 11:11:50 | 2 | Q. When the search warrant was executed in this case, did |
| 11:11:54 | 3 | you actually collect evidence? |
| 11:11:56 | 4 | A. No, I didn't. |
| 11:11:57 | 5 | Q. What did you do? |
| 11:11:58 | 6 | A. Eventually, I was asked to assist with the interviews of |
| 11:12:02 | 7 | the subjects and the residents. |
| 11:12:04 | 8 | Q. Did there come a time when there was an interview of the |
| 11:12:08 | 9 | defendant Edwidge Junior Darbouze? |
| 11:12:11 | 10 | A. Yes. |
| 11:12:11 | 11 | Q. Did you conduct that interview? |
| 11:12:13 | 12 | A. Yes. |
| 11:12:13 | 13 | Q. Where did you conduct that interview? |
| 11:12:15 | 14 | A. In his bedroom. |
| 11:12:16 | 15 | Q. Looking at Government's Exhibit 2, do you know which one |
| 11:12:20 | 16 | is the defendant's bedroom? |
| 11:12:21 | 17 | A. Yes, I do. |
| 11:12:22 | 18 | Q. Which one is that? |
| 11:12:24 | 19 | A. The room with the red markings on it. |
| 11:12:26 | 20 | Q. Were there any other agents inside of that bedroom when |
| 11:12:31 | 21 | you when to the interview? |
| 11:12:32 | 22 | A. Yes, there were. |
| 11:12:33 | 23 | Q. Who was that? |
| 11:12:34 | 24 | A. Special Agent Shoupe and Special Agent Trajkovic. |
| 11:12:38 | 25 | Q. Who was asking the questions? |

Trajkovic - Cross

| | | |
|---|---|---|
| 11:12:40 | 1 | A.  I was leading the interview. |
| 11:12:42 | 2 | Q.  Did there come a point when during the questioning of |
| 11:12:48 | 3 | the interview that Edwidge Darbouze stepped out of the room? |
| 11:12:52 | 4 | A.  Yes. |
| 11:12:52 | 5 | Q.  Did you continue the statement? |
| 11:12:54 | 6 | A.  Yes, I did with Agent Colman. |
| 11:12:57 | 7 | Q.  What was his statement? |
| 11:12:58 | 8 | A.  The statement when I was with Colman? |
| 11:13:02 | 9 | Q.  With the defendant? |
| 11:13:03 | 10 | A.  Well, I remember his statement that during the interview |
| 11:13:08 | 11 | he indicated that there was one computer in the residence. |
| 11:13:11 | 12 | He indicated that he had been using peer-to-peer software to |
| 11:13:15 | 13 | download pornography.  He had been using search terms |
| 11:13:19 | 14 | related to ethnicity and [inaudible].  He also indicated -- |
| 11:13:23 | 15 | THE COURT:  Is there any relevance to what he just |
| 11:13:26 | 16 | stated? |
| 11:13:28 | 17 | MR. JOHNSON:  No, Your Honor. |
| 11:13:30 | 18 | BY MR. JOHNSON: |
| 11:13:32 | 19 | Q.  Do you recall if the defendant was read his Miranda |
| 11:13:35 | 20 | rights in this case? |
| 11:13:35 | 21 | A.  Yes. |
| 11:13:36 | 22 | Q.  Was that prior to any statements being made? |
| 11:13:38 | 23 | A.  Yes. |
| 11:13:39 | 24 | Q.  Did any questioning occur prior to the defendant making |
| 11:13:42 | 25 | any of these statements? |

11:13:43  1  A.  None that I recall.

11:13:44  2        MR. JOHNSON:  I have no further questions.

11:13:54  3        THE COURT:  Cross-examination?

         4                  CROSS EXAMINATION

11:13:57  5  BY MS. O'CONNOR:

11:14:02  6  Q.  Good morning, Special Agent.

11:14:05  7  A.  Good morning.

11:14:06  8  Q.  You just testified, I think I heard you, did you read

11:14:12  9  Edwidge Junior his Miranda rights?

11:14:13  10  A.  No, ma'am.

11:14:14  11  Q.  But you were present?

11:14:15  12  A.  Yes, ma'am.

11:14:15  13  Q.  You made sure, of course, that happened before he was

11:14:19  14  interrogated, right?

11:14:20  15  A.  Yes, ma'am.

11:14:20  16  Q.  You did that because this might be the guy that's

11:14:23  17  responsible for downloading the child pornography, correct?

11:14:26  18  A.  Correct.

11:14:27  19  Q.  You thought because he is possibly the guy, so you want

11:14:31  20  to make sure he is read his rights before he is asked any

11:14:34  21  questions?

11:14:35  22  A.  Sure.

11:14:35  23  Q.  Because if you start to question somebody who is a

11:14:39  24  potentially the guy who is downloading child pornography and

11:14:43  25  he hasn't been read his rights, anything he says, it would

| | | |
|---|---|---|
| 11:14:48 | 1 | be bad? |
| 11:14:48 | 2 | A.  It depends on the situation. |
| 11:14:50 | 3 | Q.  What do you mean? |
| 11:14:52 | 4 | A.  If it's a custodial situation, he needs to be advised of |
| 11:14:56 | 5 | Miranda rights. |
| 11:14:58 | 6 | Q.  Sure.  We're not talking about custody.  The reason you |
| 11:15:01 | 7 | wanted to make sure Mr. Darbouze was read his Miranda rights |
| 11:15:05 | 8 | before he was questioned, that's what I am asking about. |
| 11:15:08 | 9 | Are you with me? |
| 11:15:09 | 10 | A.  Sure. |
| 11:15:10 | 11 | Q.  Assuming he's in custody, you wanted to read him his |
| 11:15:14 | 12 | rights before you asked him questions because you didn't |
| 11:15:17 | 13 | know he was the guy downloading child pornography? |
| 11:15:20 | 14 | A.  We asked prior to interviewing the defendant.  At that |
| 11:15:25 | 15 | time, it was a process of elimination.  The evidence that we |
| 11:15:28 | 16 | had at that time pointed to the defendant. |
| 11:15:31 | 17 | Q.  And it pointed to the defendant based on the information |
| 11:15:35 | 18 | you learned from the other people? |
| 11:15:36 | 19 | A.  Correct. |
| 11:15:37 | 20 | Q.  That wasn't the only interview that you participated in |
| 11:15:43 | 21 | that day, correct? |
| 11:15:44 | 22 | A.  Correct. |
| 11:15:45 | 23 | Q.  You participated in the interview with Edwidge Senior, |
| 11:15:50 | 24 | correct? |
| 11:15:50 | 25 | A.  Yes, ma'am. |

TRAJKOVIC - Cross

| 11:15:51 | 1 | Q. That was conducted in a car? |

11:15:51   1   Q.  That was conducted in a car?

11:15:53   2   A.  Yes, ma'am.

11:15:53   3   Q.  That car was in the parking lot?

11:15:55   4        MR. JOHNSON:  Objection, beyond the scope.

11:15:57   5        THE COURT:  Overruled.

11:16:02   6   BY MS. O'CONNOR:

11:16:02   7   Q.  Now, Agent Trajkovic, she took notes during your

11:16:13   8   interview of Edwidge Senior, correct?

11:16:15   9   A.  Yes, ma'am.

11:16:16   10  Q.  During that interview, you, of course, asked Edwidge

11:16:24   11  Senior questions, right?

11:16:26   12  A.  Yes, ma'am.

11:16:26   13  Q.  You asked him how long he has been living at the

11:16:29   14  apartment, correct?

11:16:30   15  A.  I believe so.

11:16:30   16  Q.  Whether there were any periods where he wasn't living at

11:16:33   17  the apartment?

11:16:34   18  A.  From what I recall in the interview, he indicated he had

11:16:37   19  no knowledge about peer-to-peer software.  I don't remember

11:16:41   20  the exact specifics of the interview.

11:16:42   21  Q.  I have the special agent's report to refresh your

           22  recollection.

11:16:47   23  A.  Sure, I can take a look at it.

11:16:50   24  Q.  I am marking this just for identification --

11:16:57   25        THE COURT:  How is this relevant to whether or not

May 29, 2014

| 11:17:00 | 1 | there has been a waiver to the general search? |
| 11:17:04 | 2 | MS. O'CONNOR:  To show that what the agents were |
| 11:17:06 | 3 | doing was they were questioning people to find out if they |
| 11:17:10 | 4 | were responsible without having read them their rights. |
| 11:17:13 | 5 | THE COURT:  Because they questioned the father? |
| 11:17:18 | 6 | MS. O'CONNOR:  Correct, Your Honor. |
| 11:17:19 | 7 | THE COURT:  I see what you are saying.  You can |
| 11:17:21 | 8 | briefly go into it. |
| 11:17:24 | 9 | MS. O'CONNOR:  I am marking this for identification |
| 11:17:26 | 10 | as 19. |
| 11:17:33 | 11 | COURTROOM DEPUTY:  The name of the document real |
| 11:17:35 | 12 | briefly? |
| 11:17:38 | 13 | MS. O'CONNOR:  Special Agent Trajkovic's notes from |
| 11:17:41 | 14 | the interview of Edwidge Darbouze, Senior. |
| 11:18:00 | 15 | BY MS. O'CONNOR: |
| 11:18:00 | 16 | Q.  I asked you this, you never read Edwidge Senior his |
| 11:18:04 | 17 | Miranda rights? |
| 11:18:05 | 18 | A.  That's correct. |
| 11:18:05 | 19 | Q.  He never signed any Miranda waiver? |
| 11:18:08 | 20 | A.  I don't remember him signing a waiver. |
| 11:18:10 | 21 | Q.  He was the first interview that was conducted? |
| 11:18:13 | 22 | A.  Yes, ma'am. |
| 11:18:13 | 23 | Q.  At that point, you didn't know who was downloading child |
| 11:18:17 | 24 | pornography? |
| 11:18:18 | 25 | A.  Correct. |

| 11:18:19 | 1 | Q. You asked him questions about the use of a computer in |
| 11:18:21 | 2 | that home? |
| 11:18:22 | 3 | A. That's correct. |
| 11:18:22 | 4 | Q. You asked him how long he had been living at the home? |
| 11:18:25 | 5 | A. I don't remember specifically asking him. Again, the |
| 11:18:30 | 6 | interview is foggy. I remember that he had no indication as |
| 11:18:34 | 7 | to what peer-to-peer software was. |
| 11:18:37 | 8 | Q. That wasn't my question. |
| 11:18:39 | 9 | You asked him questions. In response, he told you |
| 11:18:42 | 10 | about his computers? |
| 11:18:43 | 11 | A. I don't remember what he responded. |
| 11:18:44 | 12 | Q. You have the report right in front of you. |
| 11:18:47 | 13 | A. I know, but I reviewed the report, and it doesn't |
| 11:18:51 | 14 | refresh my recollection. I can tell you what I remember, |
| 11:18:57 | 15 | which was he had no indication of what peer-to-peer software |
| 11:19:01 | 16 | was. |
| 11:19:01 | 17 | Q. That report doesn't refresh your recollection? |
| 11:19:04 | 18 | A. You're asking me specifically what he said. I don't |
| 11:19:07 | 19 | know specifically. I know Edwidge Senior indicated that he |
| 11:19:10 | 20 | had no involvement or didn't appear to know what |
| 11:19:13 | 21 | peer-to-peer software was. |
| 11:19:15 | 22 | Q. He would have said that because you asked him questions |
| 11:19:19 | 23 | about peer-to-peer software use? |
| 11:19:22 | 24 | A. Yes. |
| 11:19:22 | 25 | Q. And his computer usage generally, generally because, at |

11:19:26    1  this point, you were trying to figure out if he was the guy

11:19:30    2  downloading child pornography.

11:19:32    3  A.  At that point, based on my training and experience and

11:19:35    4  the totality of the circumstances and looking at the

11:19:38    5  individuals in the residence, to me, Edwidge Senior was not

11:19:42    6  a suspect.

11:19:43    7  Q.  To you, Edwidge Senior was not a suspect?

11:19:47    8  A.  Yes.

11:19:48    9  Q.  Why was that?

11:19:49   10  A.  He's an older gentleman and had two younger gentleman

11:19:55   11  living in the residence.  I would consider peer-to-peer a

11:19:58   12  new generation technology.  Edwidge Senior wasn't considered

11:20:02   13  a suspect.

11:20:03   14      The reason I wanted to interview Edwidge Senior,

11:20:07   15  Darbouze is because I wanted to narrow it down to somebody

11:20:11   16  else in the residence.

11:20:12   17  Q.  For all you know, Edwidge Senior said to you, "I do all

11:20:17   18  the downloading in the house"?

11:20:18   19  A.  He could have.  At that point, it didn't appear to me,

11:20:22   20  based on my training and experience in peer-to-peer software

11:20:26   21  and the totality of the circumstances, that he wasn't the

11:20:28   22  person that we are looking for.

11:20:30   23  Q.  Let's not talk about his appearance.

11:20:35   24      Special Agent Trajkovic is in charge of this,

11:20:38   25  right?

TRAJKOVIC - Cross

| | | |
|---|---|---|
| 11:20:39 | 1 | A.  She was the case agent. |
| 11:20:40 | 2 | Q.  Right, she was the case agent. |
| 11:20:42 | 3 | The two of you talked about your strategy going |
| 11:20:46 | 4 | into this before you got there? |
| 11:20:49 | 5 | A.  We may have.  I don't recall the conversation. |
| 11:20:51 | 6 | Q.  She sent you and all the members of the team a kind of |
| 11:20:55 | 7 | plan? |
| 11:20:57 | 8 | A.  A briefing package, yes, ma'am. |
| 11:21:00 | 9 | Q.  That briefing package, do you remember seeing that |
| 11:21:03 | 10 | before you went in? |
| 11:21:04 | 11 | A.  Yes. |
| 11:21:04 | 12 | Q.  You reviewed that before you went in? |
| 11:21:07 | 13 | A.  Yes, I did. |
| 11:21:07 | 14 | Q.  I'm going to refer you to Exhibit 13, Defense Exhibit |
| 11:21:18 | 15 | 13.  I can help you find it. |
| 11:21:21 | 16 | Are you looking at Defendant's Exhibit 13? |
| 11:21:32 | 17 | A.  Yes, ma'am. |
| 11:21:32 | 18 | Q.  Does that ring a bell to you? |
| 11:21:34 | 19 | A.  Yes. |
| 11:21:34 | 20 | Q.  What is it? |
| 11:21:35 | 21 | A.  It's the operation plan for this particular |
| 11:21:38 | 22 | investigation. |
| 11:21:39 | 23 | Q.  You received that before you went in, correct? |
| 11:21:42 | 24 | A.  Yes, ma'am. |
| 11:21:43 | 25 | Q.  Special Agent Trajkovic had done some background |

| | | |
|---|---|---|
| 11:21:47 | 1 | research that was contained in here, correct? |
| 11:21:49 | 2 | A.   Correct. |
| 11:21:50 | 3 | Q.   In this plan, what you received -- and I'm going to |
| 11:21:55 | 4 | point you to Bates 138 -- Special Agent Trajkovic instructs |
| 11:22:03 | 5 | the team to interview residents of the apartment and try to |
| 11:22:06 | 6 | determine who the violator is? |
| 11:22:09 | 7 | A.   Yes. |
| 11:22:09 | 8 | Q.   She didn't say "only the young guys are suspects," |
| 11:22:17 | 9 | correct? |
| 11:22:17 | 10 | A.   Not in this plan. |
| 11:22:19 | 11 | Q.   And before you went into the house, she had done |
| 11:22:23 | 12 | background checks on the men in the house, correct? |
| 11:22:25 | 13 | A.   I believe she did.  I don't know for sure. |
| 11:22:28 | 14 | Q.   She never told you the ages of the men in the house? |
| 11:22:31 | 15 | A.   Directly?  The ages of the people in the house are |
| 11:22:37 | 16 | listed here in the operations plan. |
| 11:22:40 | 17 | Q.   Okay. |
| 11:22:52 | 18 | MS. O'CONNOR:  Nothing further, Judge. |
| 11:22:54 | 19 | THE COURT:  Any redirect? |
| 11:22:57 | 20 | MR. JOHNSON:  No redirect. |
| | 21 | [Witness excused]. |
| 11:22:59 | 22 | THE COURT:  Any further witnesses? |
| 11:23:01 | 23 | MR. JOHNSON:  No further witnesses, Your Honor. |
| 11:23:03 | 24 | THE COURT:  Does the defendant have any witnesses? |
| 11:23:06 | 25 | MS. O'CONNOR:  Yes, Your Honor.  On behalf of |

| | | |
|---|---|---|
| 11:23:08 | 1 | Mr. Darbouze, we call Edwidge Darbouze, Senior as our first |
| 11:23:15 | 2 | witness. |
| 11:23:15 | 3 | THE COURT:  Okay, have him come in. |
| 11:24:02 | 4 | COURTROOM DEPUTY:  Sir, can you please raise your |
| 11:24:04 | 5 | right hand.  Do you solemnly swear that the testimony you |
| 11:24:07 | 6 | are about to give is the truth and nothing but the truth so |
| | 7 | help you God? |
| 11:24:11 | 8 | THE WITNESS:  Yes. |
| 11:24:13 | 9 | COURTROOM DEPUTY:  Please state your name and spell |
| 11:24:15 | 10 | it. |
| | 11 | THE WITNESS:  My name is Edwidge Darbouze, Senior, |
| | 12 | D-A-R-B-O-U-Z-E. |
| 11:24:36 | 13 | THE COURT:  Thank you.  You may proceed. |
| | 14 | DIRECT EXAMINATION |
| | 15 | BY MR. GOMEZ: |
| 11:24:41 | 16 | Q.  Good morning, Mr. Darbouze. |
| 11:24:43 | 17 | A.  Good morning. |
| 11:24:48 | 18 | Q.  Where do you live? |
| 11:24:50 | 19 | A.  9041 Southwest 156th Street, Building B127, Palmetto |
| 11:25:00 | 20 | Bay, Florida, 33157. |
| 11:25:03 | 21 | Q.  I am going to take you to September 18th, 2013, okay? |
| 11:25:09 | 22 | A.  Okay. |
| 11:25:10 | 23 | Q.  Do you remember what day of the week that was? |
| 11:25:12 | 24 | A.  It was a Wednesday. |
| 11:25:15 | 25 | Q.  At about 5:00 a.m., what were you doing? |

EDWIDGE DARBOUZE SENIOR - Direct

79

| | | |
|---|---|---|
| 11:25:24 | 1 | A.  I was sleeping. |
| 11:25:25 | 2 | Q.  And 6:00 a.m., what were you doing? |
| 11:25:31 | 3 | A.  I was sleeping and suddenly I heard a noise. |
| 11:25:36 | 4 | Q.  Where were you sleeping? |
| 11:25:38 | 5 | A.  In my bedroom, the master bedroom in my house. |
| 11:25:44 | 6 | Q.  When you were sleeping, your son Edwidge Junior was in |
| 11:25:53 | 7 | his room? |
| 11:25:55 | 8 | A.  Yes, in his room. |
| 11:25:57 | 9 | Q.  Our other son Evans was in the apartment? |
| 11:26:00 | 10 | A.  Yes. |
| 11:26:00 | 11 | Q.  You were sleeping with your wife? |
| 11:26:03 | 12 | A.  Yes. |
| 11:26:03 | 13 | Q.  She is present here? |
| 11:26:06 | 14 | A.  Yes. |
| 11:26:06 | 15 | Q.  I am going to point to Government's Exhibit 2, which is |
| 11:26:09 | 16 | already in evidence in the case. |
| 11:26:12 | 17 | Can you see it? |
| 11:26:13 | 18 | A.  Yes, I can. |
| 11:26:14 | 19 | Q.  You see it says bedroom number one and bedroom number |
| 11:26:18 | 20 | two? |
| 11:26:18 | 21 | A.  All right. |
| 11:26:19 | 22 | Q.  Which one is yours? |
| 11:26:21 | 23 | A.  The one on the top. |
| 11:26:23 | 24 | Q.  Bedroom number one? |
| 11:26:25 | 25 | A.  Yes. |

May 29, 2014

EDWIDGE DARBOUZE SENIOR - Direct

| 11:26:26 | 1 | Q.  Edwidge Junior was sleeping in bedroom number two? |
| 11:26:30 | 2 | A.  Yes. |
| 11:26:31 | 3 | Q.  Evans and his girlfriend Tanisha Brown were sleeping |
| 11:26:37 | 4 | here? |
| 11:26:39 | 5 | A.  In the living room, yes. |
| 11:26:41 | 6 | Q.  You were sleeping in your room with your wife? |
| 11:26:45 | 7 | A.  My wife. |
| 11:26:46 | 8 | Q.  How did you wake up? |
| 11:26:48 | 9 | A.  I heard a noise.  That's why I woke up. |
| 11:26:57 | 10 | Q.  What did you do when you heard the noise? |
| 11:27:00 | 11 | A.  I run to where I heard the noise.  As soon as I get, you |
| 11:27:08 | 12 | know, to the door, and then I saw a hand stop me and said |
| 11:27:15 | 13 | don't move, put your hands up, with a gun. |
| 11:27:19 | 14 | Q.  I see that you're making a motion with your hand towards |
| 11:27:24 | 15 | your head. |
| 11:27:25 | 16 | A.  Yes, that's when I saw the gun. |
| 11:27:30 | 17 | Q.  Could you see very clearly? |
| 11:27:33 | 18 | A.  No, it was in the dark.  The only thing I could see was |
| 11:27:37 | 19 | the gun. |
| 11:27:38 | 20 | Q.  When you say "the door", what door are you talking |
| 11:27:43 | 21 | about? |
| 11:27:44 | 22 | A.  The door in my bedroom. |
| 11:27:46 | 23 | Q.  When that person put a gun to your head, what did you |
| 11:27:51 | 24 | do? |
| 11:27:51 | 25 | A.  He said put your hands up, and I put my hands up. |

EDWIDGE DARBOUZE SENIOR - Direct

81

| | | |
|---|---|---|
| 11:27:57 | 1 | Q.  Then what did you do after you put your hands up?  Where |
| 11:28:02 | 2 | did you go? |
| 11:28:03 | 3 | A.  They handcuffed me and then directed me to the living |
| 11:28:08 | 4 | room. |
| 11:28:08 | 5 | Q.  Were you handcuffed in the front or in the back? |
| 11:28:12 | 6 | A.  I don't remember exactly. |
| 11:28:14 | 7 | Q.  When you came out into the living room, what did you |
| 11:28:21 | 8 | see? |
| 11:28:23 | 9 | A.  I saw my son Evans face-down and handcuffed in the back. |
| 11:28:27 | 10 | Q.  Did there come a time when other people living in the |
| 11:28:32 | 11 | home or sleeping in the home that night also came out to the |
| 11:28:36 | 12 | living room? |
| 11:28:38 | 13 | A.  Yeah, after that was my son Junior. |
| 11:28:43 | 14 | Q.  Did you ever see Junior get handcuffed? |
| 11:28:48 | 15 | A.  Yes. |
| 11:28:50 | 16 | Q.  The front or in the back? |
| 11:28:52 | 17 | A.  I don't remember. |
| 11:28:54 | 18 | Q.  When you came out the living room, did you see any law |
| 11:28:59 | 19 | enforcement agents or police officers? |
| 11:29:01 | 20 | A.  Yes, several of them. |
| 11:29:03 | 21 | Q.  How many do you think you saw? |
| 11:29:06 | 22 | A.  Maybe four, five. |
| 11:29:08 | 23 | Q.  What were those agents doing when you came out to the |
| 11:29:13 | 24 | living room? |
| 11:29:14 | 25 | A.  They were searching everywhere in the living room, |

11:29:22   1   especially, you know, on my computer.  They were searching

11:29:27   2   there.

11:29:27   3   Q.  Did they search other parts of the apartment besides the

11:29:31   4   living room?

11:29:32   5   A.  Everywhere, yeah.

11:29:34   6   Q.  That includes both bedrooms?

11:29:37   7   A.  Yes.

11:29:37   8   Q.  Were they searching in the kitchen?

11:29:39   9   A.  Yes.

11:29:41  10   Q.  Where is the computer located in the home?

11:29:45  11   A.  In the living room by the window, yes.

11:29:50  12   Q.  Now, after you, Evans, and Edwidge Junior are

11:30:05  13   handcuffed, where were you put in the home?

11:30:09  14   A.  I was in the living room after they went back in my room

11:30:14  15   with me.

11:30:15  16   Q.  Who went back to your room with you?

11:30:19  17   A.  First of all, the lady go with me in my room and then

11:30:29  18   asked me some questions.

11:30:30  19   Q.  Did anyone else come with the lady?

11:30:33  20   A.  Yes, there was another officer in my back.

11:30:37  21   Q.  Do you see the lady that went into your bedroom with you

11:30:42  22   in court?

11:30:42  23   A.  Yes, she is here.

11:30:44  24   Q.  Is it Special Agent Trajkovic?

11:30:45  25   A.  Yes.

EDWIDGE DARBOUZE SENIOR - Direct

| | | |
|---|---|---|
| 11:30:47 | 1 | Q.  The other gentleman that went into your room, did you |
| 11:30:51 | 2 | see him outside? |
| 11:30:52 | 3 | A.  He is outside, but I don't remember his face, exactly |
| 11:30:58 | 4 | who it was. |
| 11:30:58 | 5 | Q.  When you went into your bedroom, who else was in the |
| 11:31:03 | 6 | bedroom with you besides Agent Trajkovic and the other |
| 11:31:07 | 7 | gentleman? |
| 11:31:08 | 8 | A.  It was like three of us. |
| 11:31:10 | 9 | Q.  Did they ask you any questions? |
| 11:31:12 | 10 | A.  Yes. |
| 11:31:13 | 11 | Q.  What kinds of questions did they ask you? |
| 11:31:15 | 12 | A.  If I am the father, I said yes.  Then they asked me my |
| 11:31:23 | 13 | status.  Then they asked me how many children do I have.  I |
| 11:31:29 | 14 | told her I have four.  Then I think she asked me for their |
| 11:31:34 | 15 | names.  Then I tell her their names. |
| 11:31:37 | 16 | She asked me for my son.  I said he is in Haiti |
| 11:31:46 | 17 | now.  For my daughter, my daughter lives with my ex-wife in |
| 11:31:52 | 18 | Orlando. |
| 11:31:53 | 19 | Then I believe she asked me some question about my |
| 11:32:04 | 20 | computer.  Who else uses my computer.  I said only us in the |
| 11:32:10 | 21 | house.  If I don't have any friends use my computer, I said |
| 11:32:16 | 22 | no. |
| 11:32:17 | 23 | Q.  Did she ask you questions about what you use the |
| 11:32:20 | 24 | computer for? |
| 11:32:21 | 25 | A.  Yes, exactly what I use my computer for.  I said I use |

EDWIDGE DARBOUZE SENIOR - Direct

84

| | | |
|---|---|---|
| 11:32:26 | 1 | it for my church because we have a website that they put the |
| 11:32:30 | 2 | songs that they are to use for worship.  So we have to learn |
| 11:32:35 | 3 | them for the worship of the weekend. |
| 11:32:37 | 4 | Q.  Did she ask you any other questions about how you use |
| 11:32:42 | 5 | the Internet? |
| 11:32:43 | 6 | A.  Yes, what I use it for.  I said that's the only way I |
| 11:32:48 | 7 | use my computer. |
| 11:32:49 | 8 | Q.  For how long were you questioned in that room? |
| 11:33:01 | 9 | A.  About two minutes, two or three minutes. |
| 11:33:07 | 10 | Q.  Did you see if the agents were armed during that |
| 11:33:12 | 11 | questioning, had guns? |
| 11:33:13 | 12 | A.  Yeah, they had guns. |
| 11:33:15 | 13 | Q.  Was the door opened or closed? |
| 11:33:19 | 14 | A.  The door was to my back, so I don't remember exactly |
| 11:33:23 | 15 | whether it was closed or open. |
| 11:33:24 | 16 | Q.  Did there ever come a time when you left the apartment |
| 11:33:29 | 17 | with the agents? |
| 11:33:29 | 18 | A.  Yes. |
| 11:33:31 | 19 | Q.  Where did you go? |
| 11:33:33 | 20 | A.  They drug me outside to their car and asked me |
| 11:33:38 | 21 | questions. |
| 11:33:39 | 22 | Q.  Where was that car parked? |
| 11:33:42 | 23 | A.  In the front of the building apartment. |
| 11:33:45 | 24 | Q.  Did any family members go out with you? |
| 11:33:50 | 25 | A.  No, only me. |

EDWIDGE DARBOUZE SENIOR - Direct

| | | |
|---|---|---|
| 11:33:51 | 1 | Q.  Were you still handcuffed when you went out to that car? |
| 11:33:56 | 2 | A.  Yes, sir. |
| 11:33:57 | 3 | Q.  Were you handcuffed in the bedroom? |
| 11:34:01 | 4 | A.  Yes, sir. |
| 11:34:02 | 5 | Q.  Where did you sit in the car?  Who went out there with |
| 11:34:10 | 6 | you? |
| 11:34:10 | 7 | A.  Agent Trajkovic. |
| 11:34:11 | 8 | Q.  And the same gentleman that was in the bedroom with you? |
| 11:34:15 | 9 | A.  I don't remember if it's the same one. |
| 11:34:19 | 10 | Q.  Where were they when they were asking you when you got |
| 11:34:23 | 11 | into the car? |
| 11:34:24 | 12 | A.  So the agent was in the back, and the other one in the |
| 11:34:29 | 13 | front. |
| 11:34:29 | 14 | Q.  Did they ask you any questions while you were in the |
| 11:34:32 | 15 | car? |
| 11:34:33 | 16 | A.  Yes, they asked me questions about what kind of cell |
| 11:34:36 | 17 | phone that I use, the model, whatever, and again, what I use |
| 11:34:47 | 18 | my computer for. |
| 11:34:48 | 19 | Q.  What did you tell them? |
| 11:34:50 | 20 | A.  So I told them the same thing. |
| 11:34:52 | 21 | Q.  Who was asking the questions? |
| 11:34:54 | 22 | A.  The agent. |
| 11:34:55 | 23 | Q.  Are you certain of that? |
| 11:34:56 | 24 | A.  Excuse me? |
| 11:34:57 | 25 | Q.  You're sure? |

| 11:34:59 | 1 | A. Yeah. |
| 11:35:00 | 2 | Q. When you say "the agent", you mean Special Agent |
| 11:35:03 | 3 | Trajkovic was asking the questions? |
| 11:35:04 | 4 | A. Correct, yes, sir. |
| 11:35:06 | 5 | Q. About how long were you in that car being questioned by |
| 11:35:11 | 6 | Agent Trajkovic? |
| 11:35:13 | 7 | A. Three or four minutes. |
| 11:35:17 | 8 | Q. After that, did they drive you anywhere? |
| 11:35:24 | 9 | A. No, they bring me back in the hallway, sit down on the |
| 11:35:29 | 10 | stairs. |
| 11:35:29 | 11 | Q. Is it sort of like an outdoor kind of a hallway? |
| 11:35:35 | 12 | A. What I remember, before I go to the car, she asked me if |
| 11:35:44 | 13 | I need to pee or something like that.  I said no. |
| 11:35:47 | 14 | Q. After the questioning in the car, you go to an outdoor |
| 11:35:55 | 15 | hallway stairwell area; is that correct? |
| 11:35:57 | 16 | A. Yes, they bring me back because, after that, I said I |
| 11:36:01 | 17 | need to pee.  So they bring me back to go to the bathroom. |
| 11:36:06 | 18 | Q. Which bathroom did you use? |
| 11:36:08 | 19 | A. The same bathroom. |
| 11:36:10 | 20 | Q. In your home? |
| 11:36:11 | 21 | A. Yes. |
| 11:36:11 | 22 | Q. Did you close the door when you went to the bathroom? |
| 11:36:15 | 23 | A. Yes, I was going to close the door.  They said no, you |
| 11:36:19 | 24 | could not close the door.  I had to leave the door open. |
| 11:36:22 | 25 | Q. So you weren't able to close the door? |

EDWIDGE DARBOUZE SENIOR - Cross

87

11:36:25   1   A.  I was trying to close the door, and they were pulling it

11:36:30   2   back.

11:36:30   3   Q.  After you went to the bathroom, where did you go?

11:36:34   4   A.  They told me to sit down on the stairs.

11:36:37   5   Q.  Were you by yourself on the stairs?

11:36:39   6   A.  No, another officer was watching over me.

11:36:42   7   Q.  How long were you in the stairwell?

11:36:45   8   A.  More than an hour.

11:36:47   9   Q.  Were you handcuffed?

11:36:49   10   A.  Yes.

11:36:50   11   Q.  Mr. Darbouze, showing you what is already in evidence in

11:37:36   12   this case as Defendant's Exhibit 17.

11:37:39   13        Do you recognize that document?  Did you sign that

11:37:43   14   document?

11:37:44   15   A.  Yes.

11:37:44   16   Q.  Did you sign anything else that day besides that

11:37:50   17   document?

11:37:50   18   A.  No, I don't remember signing anything else.

11:38:01   19        MR. GOMEZ:  No further questions, Your Honor.

11:38:25   20        THE COURT:  Does the government have any cross?

11:38:28   21        MR. JOHNSON:  Very, very briefly.

22                  CROSS EXAMINATION

11:38:34   23   BY MR. JOHNSON:

11:38:36   24   Q.  Sir, how are you?

11:38:38   25   A.  Fine.

| | | |
|---|---|---|
| 11:38:38 | 1 | Q.  On the morning of September 18th, you were home with |
| 11:38:42 | 2 | your family members, correct? |
| 11:38:43 | 3 | A.  Yes, sir. |
| 11:38:44 | 4 | Q.  When the agents went into the location, you were there |
| 11:38:47 | 5 | with your wife; is that correct? |
| 11:38:49 | 6 | A.  Yes, sir. |
| 11:38:49 | 7 | Q.  Your son Evans has a girlfriend, right? |
| 11:38:57 | 8 | A.  Yes. |
| 11:38:57 | 9 | Q.  That is Tanisha? |
| 11:38:59 | 10 | A.  Yes, sir. |
| 11:38:59 | 11 | Q.  Obviously, when they came, you were surprised? |
| 11:39:03 | 12 | A.  Yes. |
| 11:39:03 | 13 | Q.  There came a point when Agent Trajkovic came and asked |
| 11:39:07 | 14 | you who set up the Wi-Fi in your house? |
| 11:39:10 | 15 | A.  Yes, they talk about the computer, yes. |
| 11:39:12 | 16 | Q.  You told them that your son Evans sets up the Wi-Fi; |
| 11:39:18 | 17 | isn't that correct? |
| 11:39:18 | 18 | A.  No. |
| 11:39:20 | 19 | Q.  They asked you who set up the computer system? |
| 11:39:23 | 20 | A.  Yes, and I said me. |
| 11:39:26 | 21 | Q.  You said you set it up or your son set it up? |
| 11:39:30 | 22 | A.  No, I said it's my computer. |
| 11:39:32 | 23 | Q.  Who set up the program on the computer?  Did you say |
| 11:39:37 | 24 | your son set that up? |
| 11:39:39 | 25 | A.  No, sir, I said this is my computer. |

EDWIDGE DARBOUZE SENIOR - Cross

89

| 11:39:42 | 1 | Q. Agent Trajkovic spoke to you about downloading movies; |
| 11:39:53 | 2 | isn't that correct? |
| 11:39:54 | 3 | A. Downloading movies? |
| 11:39:56 | 4 | Q. Yes. |
| 11:39:57 | 5 | A. I don't remember. |
| 11:39:59 | 6 | Q. So it's your testimony today that they handcuffed you in |
| 11:40:02 | 7 | the apartment; is that correct? |
| 11:40:04 | 8 | A. Yes, sir. |
| 11:40:05 | 9 | Q. Did you say they dragged you out to the car? |
| 11:40:08 | 10 | A. Yes, dragged me out, yes. They went with me in the car |
| 11:40:13 | 11 | to ask me questions, yes. |
| 11:40:15 | 12 | Q. Did you get asked questions in the apartment first or |
| 11:40:19 | 13 | outside first? |
| 11:40:19 | 14 | A. First in my room. |
| 11:40:21 | 15 | Q. First in your room? |
| 11:40:24 | 16 | A. Yeah, and then after in my car. In the car I mean. |
| 11:40:30 | 17 | Q. Let me show you Government's Exhibit 13. |
| 11:41:00 | 18 | That's a picture of your bedroom, correct? |
| 11:41:02 | 19 | A. Yes. |
| 11:41:02 | 20 | Q. Also inside that bedroom is a couple of chairs? |
| 11:41:05 | 21 | A. Yes. |
| 11:41:06 | 22 | Q. That's where your family members were seated when the |
| 11:41:09 | 23 | agents were searching the residence, correct? |
| 11:41:11 | 24 | A. Yes. Sometimes, you know, they move them, you know. |
| 11:41:16 | 25 | But sometimes we were in that room. |

May 29, 2014

EDWIDGE DARBOUZE SENIOR - Cross

90

| 11:41:20 | 1 | Q. Because they were searching the house, right? |
| 11:41:24 | 2 | A. Yes, sir. |
| 11:41:25 | 3 | Q. And then they were also videotaping your house, right? |
| 11:41:29 | 4 | A. I don't know if they did that. |
| 11:41:31 | 5 | Q. You didn't see that part? |
| 11:41:33 | 6 | A. I didn't see that part. |
| 11:41:35 | 7 | Q. There was a point when they were asking questions of all |
| 11:41:43 | 8 | of you; isn't that correct? |
| 11:41:44 | 9 | A. Together? |
| 11:41:45 | 10 | Q. Not together, separately. |
| 11:41:48 | 11 | A. They asked me questions separately. |
| 11:41:50 | 12 | Q. You weren't in the room with your son when he was being |
| 11:41:54 | 13 | questioned? |
| 11:41:54 | 14 | A. No. |
| 11:41:56 | 15 | Q. You don't know what questions they asked of him? |
| 11:41:58 | 16 | A. No. |
| 11:41:59 | 17 | Q. You don't know what questions were asked of Tanisha, |
| 11:42:04 | 18 | correct? |
| 11:42:04 | 19 | A. No. |
| 11:42:05 | 20 | Q. I don't think they spoke to your wife. |
| 11:42:08 | 21 | A. I don't know if they spoke to my wife.  Certain times, |
| 11:42:11 | 22 | my wife just asked me, she want to pee, and I said she |
| 11:42:18 | 23 | doesn't speak English.  So I don't know. |
| 11:42:21 | 24 | Q. You had to use the restroom, correct? |
| 11:42:23 | 25 | A. Excuse me? |

EDWIDGE DARBOUZ SENIOR - Redirect

| | | |
|---|---|---|
| 11:42:24 | 1 | Q.  You had to use the bathroom, and they let you use the |
| 11:42:30 | 2 | bathroom, right? |
| 11:42:31 | 3 | A.  Yes, after going outside to the car, yes. |
| 11:42:33 | 4 | Q.  Tanisha had to use the bathroom, correct? |
| 11:42:38 | 5 | A.  I don't remember. |
| 11:42:38 | 6 | Q.  You don't recall that? |
| 11:42:40 | 7 | A.  I don't remember seeing Tanisha using the bathroom. |
| 11:42:47 | 8 | Q.  Just a couple more questions, Mr. Darbouze. |
| 11:43:00 | 9 | Agent Trajkovic questioned you, and you told her |
| 11:43:04 | 10 | you don't know what peer-to-peer is? |
| 11:43:06 | 11 | A.  What is it? |
| 11:43:07 | 12 | Q.  Peer-to-peer, you don't remember her speaking to you |
| 11:43:11 | 13 | about it? |
| 11:43:11 | 14 | A.  I don't know what it means, what you're talking about. |
| 11:43:15 | 15 | Q.  You don't remember that conversation? |
| 11:43:18 | 16 | A.  I don't remember that word, what you said. |
| 11:43:23 | 17 | MR. JOHNSON:  No further questions. |
| | 18 | REDIRECT EXAMINATION |
| | 19 | BY MR. GOMEZ: |
| 11:43:27 | 20 | Q.  Mr. Darbouze, when Agent Trajkovic took you to your |
| 11:43:33 | 21 | bedroom, was that soon after the agents entered the home? |
| 11:43:38 | 22 | When did they take you into the bedroom to do the |
| 11:43:41 | 23 | questioning?  How close to when they first came into house |
| 11:43:45 | 24 | was it? |
| 11:43:46 | 25 | A.  How close? |

| | | |
|---|---|---|
| 11:43:47 | 1 | Q.  They came into the house at 6:00 in the morning? |
| 11:43:50 | 2 | A.  Yeah. |
| 11:43:51 | 3 | Q.  You said that you came out to the living room |
| 11:43:54 | 4 | handcuffed? |
| 11:43:55 | 5 | A.  Yeah, okay. |
| 11:43:56 | 6 | Q.  When did you get taken to your bedroom to get |
| 11:44:00 | 7 | questioned? |
| 11:44:01 | 8 | A.  It was like ten, 15 minutes afterward. |
| 11:44:05 | 9 | MR. GOMEZ:  Thank you. |
| 11:44:07 | 10 | THE COURT:  Thank you, sir.  You are excused. |
| | 11 | [Witness excused]. |
| 11:44:10 | 12 | THE COURT:  What other witnesses are the defendants |
| 11:44:13 | 13 | calling? |
| 11:44:18 | 14 | MS. O'CONNOR:  Evans Darbouze and definitely Agent |
| 11:44:22 | 15 | Delmonte. |
| 11:44:22 | 16 | THE COURT:  Do you think you're going to be into |
| 11:44:33 | 17 | the next hour?  I will wait until then.  How long do you |
| 11:44:37 | 18 | think you are going to take? |
| 11:44:40 | 19 | MS. O'CONNOR:  We might as well take a break. |
| 11:44:42 | 20 | THE COURT:  Why don't we take -- we will come back |
| 11:44:47 | 21 | at 12:25.  It's 11:45 now.  Be ready to go at 12:25.  See |
| 11:44:54 | 22 | you then. |
| 11:44:55 | 23 | [There was a recess for the noon hour]. |
| 12:31:10 | 24 | COURTROOM DEPUTY:  All rise.  The Court is again in |
| 12:31:12 | 25 | session. |

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:31:13 | 1 | THE COURT:  All right, please be seated. |
| 12:31:18 | 2 | MS. O'CONNOR:  On behalf of Mr. Darbouze, we call |
| 12:31:22 | 3 | Evans Darbouze. |
| 12:31:23 | 4 | THE COURT:  Okay.  Come on up, Mr. Darbouze. |
| 12:31:35 | 5 | COURTROOM DEPUTY:  Do you solemnly swear the |
| | 6 | testimony you shall give with be the truth, the whole truth |
| | 7 | and nothing but the truth so help you God? |
| 12:31:39 | 8 | THE WITNESS:  Yes. |
| 12:31:40 | 9 | COURTROOM DEPUTY:  State and spell your name for |
| | 10 | the record. |
| 12:31:44 | 11 | THE WITNESS:  Evans Darbouze, D-A-R-B-O-U-Z-E. |
| | 12 | DIRECT EXAMINATION |
| 12:31:51 | 13 | BY MS. O'CONNOR: |
| 12:31:51 | 14 | Q.  Hello, Mr. Darbouze. |
| 12:31:54 | 15 | A.  Hey. |
| 12:31:55 | 16 | Q.  Do you know Edwidge Darbouze? |
| 12:32:00 | 17 | A.  Yes. |
| 12:32:00 | 18 | Q.  How do you know him? |
| 12:32:02 | 19 | A.  He is my brother. |
| 12:32:03 | 20 | Q.  What is your address? |
| 12:32:05 | 21 | A.  9041 Southwest 156th Street, Apartment B127. |
| 12:32:09 | 22 | Q.  I want to talk to you a little bit about when the agents |
| 12:32:13 | 23 | came to search your house. |
| 12:32:14 | 24 | A.  Yes. |
| 12:32:15 | 25 | Q.  Do you remember that morning? |

May 29, 2014

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:32:15 | 1 | A.  Yes. |
| 12:32:16 | 2 | Q.  You were home on September 18th, 2013? |
| 12:32:19 | 3 | A.  Yes. |
| 12:32:20 | 4 | Q.  What were you doing when you first became aware that |
| 12:32:24 | 5 | there were agents at your house? |
| 12:32:26 | 6 | A.  I was sleeping. |
| 12:32:27 | 7 | Q.  What happened? |
| 12:32:27 | 8 | A.  I heard a loud knock on the door, screaming loud |
| 12:32:32 | 9 | "police".  Then I went to the door and opened the door. |
| 12:32:37 | 10 | Everybody had guns in their hands. |
| 12:32:38 | 11 | THE COURT:  Everybody had what? |
| 12:32:41 | 12 | THE WITNESS:  A gun in their hand. |
| 12:32:43 | 13 | THE COURT:  Okay. |
| 12:32:45 | 14 | THE WITNESS:  Before they even said get on the |
| 12:32:48 | 15 | floor, I already dropped.  Then they handcuffed me. |
| 12:32:52 | 16 | BY MS. O'CONNOR: |
| 12:32:53 | 17 | Q.  Where were you? |
| 12:32:54 | 18 | A.  In the hallway. |
| 12:32:55 | 19 | Q.  Were you on your stomach or your back? |
| 12:32:59 | 20 | A.  On my stomach. |
| 12:32:59 | 21 | Q.  Were the agents already telling you to get on the floor? |
| 12:33:03 | 22 | A.  Yes, but before they were finished, I was already on the |
| 12:33:07 | 23 | floor. |
| 12:33:07 | 24 | Q.  You said you were sleeping when you first heard the |
| 12:33:10 | 25 | agents there? |

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:33:11 | 1 | A.  Yes. |
| 12:33:11 | 2 | Q.  Where were you sleeping? |
| 12:33:12 | 3 | A.  On the living room on the mattress. |
| 12:33:15 | 4 | Q.  Was anyone in the living room with you? |
| 12:33:18 | 5 | A.  Yes, my fiance. |
| 12:33:20 | 6 | Q.  Who? |
| 12:33:21 | 7 | A.  Tanisha Brown. |
| 12:33:22 | 8 | Q.  Who else was in the house? |
| 12:33:25 | 9 | A.  My brother and my mom. |
| 12:33:26 | 10 | Q.  Where were they each? |
| 12:33:28 | 11 | A.  My brother was in his room.  My father and mother were |
| 12:33:33 | 12 | in my father's room, and my brother was in his room. |
| 12:33:38 | 13 | Q.  When you woke up, do you know what everybody else was |
| 12:33:41 | 14 | doing? |
| 12:33:41 | 15 | A.  Sleeping. |
| 12:33:42 | 16 | Q.  You're down on the floor.  What happened then? |
| 12:33:45 | 17 | A.  Then they put the handcuffs on me.  I stayed on the |
| 12:33:51 | 18 | ground for a little bit.  When they got everybody else, they |
| 12:33:56 | 19 | put us together in the room. |
| 12:33:57 | 20 | Q.  Which room? |
| 12:33:58 | 21 | A.  In the living room. |
| 12:34:00 | 22 | Q.  If you remember, was anybody else handcuffed? |
| 12:34:02 | 23 | A.  Yes. |
| 12:34:03 | 24 | Q.  Who? |
| 12:34:04 | 25 | A.  My mom, my dad, and my brother.  Also my fiance. |

May 29, 2014

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:34:09 | 1 | Q.  Everybody was handcuffed? |
| 12:34:09 | 2 | A.  Yes. |
| 12:34:11 | 3 | Q.  Do you remember if, at that point or at any time, if the |
| 12:34:20 | 4 | agents told you that you were free to go? |
| 12:34:23 | 5 | A.  No. |
| 12:34:24 | 6 | Q.  Did they ask you whether you had to be at work or at |
| 12:34:28 | 7 | school? |
| 12:34:28 | 8 | A.  No. |
| 12:34:29 | 9 | Q.  How did you feel at that time? |
| 12:34:32 | 10 | A.  At that time, I didn't know what was going on.  I was |
| 12:34:35 | 11 | just in the handcuffs just waiting for them to tell us what |
| 12:34:38 | 12 | was going on.  We didn't know what was going on. |
| 12:34:42 | 13 | Q.  Did you say anything to the agents? |
| 12:34:43 | 14 | A.  No. |
| 12:34:45 | 15 | Q.  Did they say anything to you when you were all in the |
| 12:34:48 | 16 | living room? |
| 12:34:48 | 17 | A.  No. |
| 12:34:50 | 18 | Q.  So after everybody is in the living room, everyone is |
| 12:34:57 | 19 | handcuffs, what happens then? |
| 12:34:59 | 20 | A.  Everybody in the handcuffs, they put us then just |
| 12:35:04 | 21 | started asking us questions in the bedroom.  They had me in |
| 12:35:07 | 22 | the room asking me questions. |
| 12:35:09 | 23 | Q.  What room? |
| 12:35:10 | 24 | A.  My brother's room. |
| 12:35:12 | 25 | Q.  About -- so you're in the living room with everybody in |

May 29, 2014

```
12:35:17   1   the handcuffs?
12:35:18   2   A.  Yes.
12:35:19   3   Q.  How much time passed before they took you back to your
12:35:23   4   brother's room?
12:35:24   5   A.  I sat about an hour and a half, two hours.
12:35:28   6   Q.  You are in handcuffs that time?
12:35:30   7   A.  Yes.
12:35:31   8   Q.  Did you see whether other people were in handcuffs
12:35:33   9   during that whole time?
12:35:35  10   A.  Yeah, everybody was still in handcuffs.
12:35:37  11   Q.  What happened when they took you back to your brother's
12:35:42  12   room?
12:35:43  13        First of all, who took you back to your brother's
12:35:46  14   room?
12:35:46  15   A.  It was two agents.  It was a male and a female.
12:35:49  16   Q.  Do you see any of those agents in the courtroom?
12:35:52  17   A.  Yes, she was one of them.
12:35:55  18   Q.  Special Agent Trajkovic?
12:35:56  19   A.  Yes.
12:35:57  20   Q.  So when the two agents took you back to your brother's
12:36:08  21   room and you were still in handcuffs, what happened then?
12:36:11  22   A.  Then they started asking the questions.
12:36:13  23   Q.  What type of questions?  What was the first question
12:36:17  24   they asked you?
12:36:17  25   A.  The first questions, they said, "Evans, we know about
```

Evans Darbouze - Direct

98

12:36:24   1   your status.  Your work permit is expired.  We are not going

12:36:28   2   to get too much into it."

12:36:30   3        They started asking me about my brother's computer,

12:36:33   4   all type of websites.  From there --

12:36:36   5   Q.  Hold on.  Let me ask you more about that.

12:36:39   6        Did they ask you about the computer use in the

12:36:41   7   house?

12:36:41   8   A.  Yes.

12:36:42   9   Q.  Did they ask you about what you do with the computer?

12:36:45   10  A.  Yes.

12:36:46   11  Q.  Did they ask you about whether you download pornography?

12:36:50   12  A.  Yes.

12:36:52   13  Q.  What kind of questions did they ask about that?

12:36:54   14  A.  They say, "Do you be watching porn?  Do you download

12:36:59   15  porn in there?  Do you know of any website like Limewire,"

12:37:03   16  or a whole bunch of websites that I don't know about.

12:37:07   17  Q.  During this questioning, were you handcuffed?

12:37:12   18  A.  Yes.

12:37:13   19  Q.  I want to rewind just a couple of minutes.

12:37:19   20       Before they asked you questions about your

12:37:21   21  Immigration status, about your computer use, about

12:37:24   22  pornography, did any agents ever tell you, "Mr. Evans, you

12:37:29   23  don't have to answer our questions if you don't want to"?

12:37:33   24  A.  No.

12:37:33   25  Q.  Did any agents tell you if you want an attorney right

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:37:38 | 1 | now you can have one? |
| 12:37:38 | 2 | A.  No. |
| 12:37:39 | 3 | Q.  Did any agent tell you that if you can't afford an |
| 12:37:43 | 4 | attorney one will be appointed to represent you? |
| 12:37:48 | 5 | A.  No. |
| 12:37:49 | 6 | Q.  Did any agent tell you that if you want to stop this |
| 12:37:53 | 7 | questioning at any time you are free to do that? |
| 12:37:55 | 8 | A.  No. |
| 12:37:55 | 9 | Q.  They asked you questions about computer use, |
| 12:37:59 | 10 | pornography, without having told you those things? |
| 12:38:01 | 11 | A.  Yes. |
| 12:38:02 | 12 | Q.  At a certain point, did you sign anything? |
| 12:38:06 | 13 | A.  Yes. |
| 12:38:08 | 14 | Q.  I am approaching you with what has been admitted as |
| 12:38:13 | 15 | Defendant's Exhibit 15. |
| 12:38:15 | 16 | Do you recognize that? |
| 12:38:24 | 17 | A.  Yes. |
| 12:38:24 | 18 | Q.  What is it? |
| 12:38:25 | 19 | A.  It's my signature and my handwriting. |
| 12:38:28 | 20 | Q.  Which part of it is your handwriting? |
| 12:38:31 | 21 | A.  The initials and my name.  The name is not mine.  The |
| 12:38:39 | 22 | signature is. |
| 12:38:40 | 23 | Q.  The signature is yours, but the written name, that's not |
| 12:38:44 | 24 | your handwriting? |
| 12:38:44 | 25 | A.  No. |

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:38:45 | 1 | Q.  At what point did you sign this? |
| 12:38:49 | 2 | A.  In the middle of it.  They just said we are going to |
| 12:38:53 | 3 | sign those, and then I would just sign.  After that, they |
| 12:38:58 | 4 | continued asking me questions. |
| 12:38:59 | 5 | Q.  When you signed it, was that before or after -- |
| 12:39:03 | 6 | A.  It was in the middle of it. |
| 12:39:05 | 7 | Q.  But the questions we had just talked about, |
| 12:39:08 | 8 | pornography -- |
| 12:39:10 | 9 | A.  Yes, that was way before that. |
| 12:39:12 | 10 | Q.  The questions were before the signature? |
| 12:39:13 | 11 | A.  Yes. |
| 12:39:14 | 12 | Q.  When you signed that, did somebody read it to you first? |
| 12:39:18 | 13 | A.  No. |
| 12:39:20 | 14 | Q.  Did you read it yourself? |
| 12:39:22 | 15 | A.  No, I would just put my initial.  She said put your |
| 12:39:26 | 16 | initial here and here, and I was going along with it. |
| 12:39:30 | 17 | Q.  Somebody instructed you to do that? |
| 12:39:32 | 18 | A.  Yes. |
| 12:39:32 | 19 | Q.  Who? |
| 12:39:33 | 20 | A.  The agent did. |
| 12:39:34 | 21 | Q.  The female agent? |
| 12:39:35 | 22 | A.  Yes. |
| 12:39:36 | 23 | Q.  She didn't read that outloud to you? |
| 12:39:38 | 24 | A.  No. |
| 12:39:39 | 25 | Q.  What happened after you signed it? |

May 29, 2014

Evans Darbouze - Direct

101

| | | |
|---|---|---|
| 12:39:41 | 1 | A.  After I signed it, I just gave it back to her. |
| 12:39:45 | 2 | Q.  Were there more questions after that? |
| 12:39:48 | 3 | A.  Yes. |
| 12:39:48 | 4 | Q.  What type of questions? |
| 12:39:52 | 5 | A.  Where does your brother be going at this time of night? |
| 12:39:56 | 6 | Does he bring girls in the house?  Mostly just about my |
| 12:40:01 | 7 | brother.  Do you have any type of movies in here?  Just a |
| 12:40:06 | 8 | whole lot of different questions. |
| 12:40:08 | 9 | Q.  You told me a minute ago that you were handcuffed during |
| 12:40:12 | 10 | these questions. |
| 12:40:13 | 11 | A.  Yes. |
| 12:40:14 | 12 | Q.  If you were handcuffed, how did you sign that? |
| 12:40:18 | 13 | A.  They had my handcuffs in front of me. |
| 12:40:20 | 14 | Q.  They had moved it in front you? |
| 12:40:23 | 15 | A.  Yeah. |
| 12:40:23 | 16 | Q.  Did they ever take the handcuffs off during the |
| 12:40:26 | 17 | questioning? |
| 12:40:26 | 18 | A.  No. |
| 12:40:27 | 19 | Q.  About how long did they question you for? |
| 12:40:30 | 20 | A.  About ten, 15 minutes. |
| 12:40:32 | 21 | Q.  Then what happened? |
| 12:40:34 | 22 | A.  Then after that, they put me back in the living room. |
| 12:40:39 | 23 | Q.  Who was in the living room? |
| 12:40:41 | 24 | A.  My parents, my dad and my mom. |
| 12:40:44 | 25 | Q.  Do you remember if they were handcuffed? |

Evans Darbouze - Direct

102

| | | |
|---|---|---|
| 12:40:46 | 1 | A.  Yes. |
| 12:40:48 | 2 | Q.  Then what happened? |
| 12:40:51 | 3 | A.  Then after that, they brought me outside and made me sit |
| 12:40:57 | 4 | on the steps. |
| 12:40:57 | 5 | Q.  Was anybody else there on the steps? |
| 12:41:00 | 6 | A.  Yes. |
| 12:41:01 | 7 | Q.  Who? |
| 12:41:02 | 8 | A.  My dad. |
| 12:41:03 | 9 | Q.  How long were you outside on the steps? |
| 12:41:07 | 10 | A.  I would say two, two and a half hours. |
| 12:41:10 | 11 | Q.  Were you still handcuffed? |
| 12:41:11 | 12 | A.  Yes. |
| 12:41:13 | 13 | Q.  Was your father still handcuffed? |
| 12:41:14 | 14 | A.  Yes. |
| 12:41:16 | 15 | Q.  When did they take the handcuffs off of you? |
| 12:41:19 | 16 | A.  When everything was done, they had got a call.  They |
| 12:41:23 | 17 | told us we're good to go back in the house. |
| 12:41:27 | 18 | Q.  Do you remember what time it was? |
| 12:41:31 | 19 | A.  I think it was 1:11. |
| 12:41:33 | 20 | Q.  Were you sleeping with a watch on? |
| 12:41:35 | 21 | A.  No. |
| 12:41:36 | 22 | Q.  You were sleeping with a watch? |
| 12:41:38 | 23 | A.  No, when we went back to the house, we looked at the |
| 12:41:42 | 24 | time. |
| 12:41:45 | 25 | MS. O'CONNOR:  That's all for this witness. |

May 29, 2014

Evans Darbouze - Direct

103

| 12:41:46 | 1 | THE COURT:  Okay, thanks. |
| 12:41:48 | 2 | Any cross-examination? |
| 12:41:50 | 3 | MR. JOHNSON:  Yes, Your Honor. |
| 12:41:51 | 4 | CROSS EXAMINATION: |
| 12:42:07 | 5 | BY MR. JOHNSON: |
| 12:42:09 | 6 | Q.  You were testifying on direct that you are not a United |
| 12:42:15 | 7 | States citizen; is that correct? |
| 12:42:16 | 8 | A.  No. |
| 12:42:17 | 9 | Q.  You're living in the country illegally; is that correct? |
| 12:42:19 | 10 | MR. GOMEZ:  Objection, Your Honor.  He is living |
| 12:42:24 | 11 | here legally. |
| 12:42:24 | 12 | THE COURT:  He can answer. |
| 12:42:29 | 13 | It should be only Ms. O'Connor's objections because |
| 12:42:33 | 14 | it's her witness.  The objection is overruled.  You can |
| 12:42:36 | 15 | answer the question. |
| 12:42:39 | 16 | THE WITNESS:  I don't want to say illegally.  My |
| 12:42:43 | 17 | work permit expired.  I have to renew the other one.  It's a |
| 12:42:47 | 18 | process. |
| 12:42:48 | 19 | BY MR. JOHNSON: |
| 12:42:48 | 20 | Q.  At the time that the agents entered your home on |
| 12:42:51 | 21 | September 18th, you had not renewed that application, had |
| 12:42:55 | 22 | you? |
| 12:42:55 | 23 | A.  No. |
| 12:42:56 | 24 | Q.  At that point, you are not a U.S. citizen at that point, |
| 12:43:00 | 25 | correct? |

May 29, 2014

Evans Darbouze - Direct

| 12:43:00 | 1 | A.  Correct. |
| 12:43:01 | 2 | Q.  You were not a United States citizen on September 18th, |
| 12:43:06 | 3 | were you? |
| 12:43:06 | 4 | A.  No, I wasn't. |
| 12:43:07 | 5 | Q.  At that point, when the agents entered your apartment on |
| 12:43:11 | 6 | September 18, you were in the country illegally, correct? |
| 12:43:16 | 7 | MS. O'CONNOR:  Objection, asked and answered.  He |
| 12:43:17 | 8 | is a legal permanent resident. |
| 12:43:20 | 9 | THE COURT:  He can answer the question.  Overruled. |
| 12:43:23 | 10 | THE WITNESS:  I was not here illegally.  I had to |
| 12:43:27 | 11 | take in my work permit.  I had to pay with $1,000.  Right |
| 12:43:32 | 12 | now, my work permit takes a long time. |
| 12:43:35 | 13 | BY MR. JOHNSON: |
| 12:43:35 | 14 | Q.  But you had not applied for it back then in September, |
| 12:43:39 | 15 | correct? |
| 12:43:39 | 16 | A.  I had applied before that, sir. |
| 12:43:42 | 17 | Q.  It's your testimony today that you are a legal resident |
| 12:43:48 | 18 | here; is that your testimony? |
| 12:43:50 | 19 | A.  Excuse me? |
| 12:43:51 | 20 | Q.  You are a legal permanent resident? |
| 12:43:56 | 21 | A.  I won't say that.  My work permit is in the process.  I |
| 12:44:00 | 22 | just have to get money to get another work permit. |
| 12:44:04 | 23 | Q.  Since it hasn't been approved, then you're not a legal |
| 12:44:08 | 24 | permit resident? |
| 12:44:10 | 25 | A.  Correct. |

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:44:10 | 1 | Q.  Have you been convicted of crimes in the past? |
| 12:44:13 | 2 | A.  Yes. |
| 12:44:14 | 3 | Q.  Explain to the Court what crimes you were convicted of. |
| 12:44:16 | 4 | A.  As a juvenile, possession of cocaine and marijuana and a |
| 12:44:22 | 5 | strong armed robbery. |
| 12:44:23 | 6 | Q.  Was that the strong armed robbery in 2007? |
| 12:44:26 | 7 | A.  Yes. |
| 12:44:28 | 8 | Q.  In fact, you were at home on the day of September 18th, |
| 12:44:33 | 9 | correct? |
| 12:44:33 | 10 | A.  Yes. |
| 12:44:34 | 11 | Q.  You were there with your fiance? |
| 12:44:35 | 12 | A.  Yes. |
| 12:44:37 | 13 | Q.  And your brother as well? |
| 12:44:38 | 14 | A.  Yes. |
| 12:44:39 | 15 | Q.  You love your brother, of course? |
| 12:44:40 | 16 | A.  Of course. |
| 12:44:41 | 17 | Q.  You would do anything to protect him; isn't that true? |
| 12:44:44 | 18 | A.  Yeah, in a right way. |
| 12:44:46 | 19 | Q.  Even coming in and testifying on what happened on the |
| 12:44:50 | 20 | day of the 18th, correct? |
| 12:44:52 | 21 | A.  Yes. |
| 12:44:53 | 22 | Q.  Now, there was a time -- let me rephrase that. |
| 12:44:57 | 23 | There was a time when you were encountered by the |
| 12:45:00 | 24 | agents when they came in your home, right? |
| 12:45:02 | 25 | A.  Yes. |

May 29, 2014

Evans Darbouze - Direct

106

| | | |
|---|---|---|
| 12:45:03 | 1 | Q.  And they handcuffed you, right? |
| 12:45:05 | 2 | A.  Yes. |
| 12:45:05 | 3 | Q.  There was a point when they went through your entire |
| 12:45:08 | 4 | apartment to see whether any other people were there, |
| 12:45:11 | 5 | correct? |
| 12:45:12 | 6 | A.  Correct. |
| 12:45:12 | 7 | Q.  Then there was another point where they actually had a |
| 12:45:17 | 8 | video camera and they took videos of the apartment; isn't |
| 12:45:21 | 9 | that correct? |
| 12:45:21 | 10 | A.  Yes. |
| 12:45:22 | 11 | Q.  During the time that they were taking videos of your |
| 12:45:25 | 12 | apartment, you were with your family members at that time, |
| 12:45:28 | 13 | correct? |
| 12:45:28 | 14 | A.  Yes. |
| 12:45:31 | 15 | Q.  There did come a time when Agent Trajkovic asked you if |
| 12:45:36 | 16 | you had to go to school, right? |
| 12:45:38 | 17 | A.  No. |
| 12:45:39 | 18 | Q.  There was a time when she asked you if you had to go to |
| 12:45:42 | 19 | work, right? |
| 12:45:43 | 20 | A.  No. |
| 12:45:44 | 21 | Q.  Agent Trajkovic knew where you worked, right? |
| 12:45:49 | 22 | A.  Yes, she asked me where I worked. |
| 12:45:52 | 23 | Q.  You told her you worked at Olive Garden, right? |
| 12:45:55 | 24 | A.  Yes. |
| 12:45:57 | 25 | Q.  There was a point when the agents brought you into the |

May 29, 2014

Evans Darbouze - Direct

107

| | | |
|---|---|---|
| .2:46:04 | 1 | bedroom and interviewed you, right? |
| .2:46:05 | 2 | A.   Yes. |
| .2:46:07 | 3 | Q.   When you came inside of the bedroom, there was Agent |
| .2:46:20 | 4 | Trajkovic, correct? |
| .2:46:20 | 5 | A.   Yes. |
| .2:46:20 | 6 | Q.   There were two other agents in the room with you, |
| .2:46:23 | 7 | correct? |
| .2:46:24 | 8 | THE COURT:  Which bedroom are we talking about? |
| .2:46:27 | 9 | BY MR. JOHNSON: |
| .2:46:28 | 10 | Q.   I'm sorry, your brother's bedroom. |
| .2:46:30 | 11 | A.   Yes. |
| .2:46:31 | 12 | Q.   Inside that bedroom, along with Agent Trajkovic and |
| .2:46:35 | 13 | yourself, there was two other agents? |
| .2:46:37 | 14 | A.   No, just one more. |
| .2:46:38 | 15 | Q.   A female or man? |
| .2:46:40 | 16 | A.   A man. |
| .2:46:41 | 17 | Q.   He didn't have his guns pointing at you? |
| .2:46:44 | 18 | A.   No. |
| .2:46:44 | 19 | Q.   You weren't in handcuffs at that time, were you? |
| .2:46:47 | 20 | A.   Yes, I was. |
| .2:46:48 | 21 | Q.   It's your testimony today that the agent did not read |
| .2:46:52 | 22 | any of this to you; is that correct? |
| .2:46:53 | 23 | A.   No. |
| .2:46:54 | 24 | Q.   You just signed it? |
| .2:46:55 | 25 | A.   Yes. |

Evans Darbouze - Direct

108

| | | |
|---|---|---|
| 12:46:56 | 1 | Q. Do you read? |
| 12:46:57 | 2 | A. Of course. |
| 12:46:58 | 3 | Q. At the end of this waiver, it has your name, correct? |
| 12:47:04 | 4 | A. Yes. |
| 12:47:04 | 5 | Q. You didn't write that though? |
| | 6 | A. No. |
| 12:47:07 | 7 | Q. You did sign it? |
| 12:47:08 | 8 | A. Yes. |
| 12:47:09 | 9 | Q. So this is what was called your rights, right? |
| 12:47:13 | 10 | A. Right. |
| 12:47:13 | 11 | Q. To tell you know that you didn't have to say anything if |
| 12:47:18 | 12 | you didn't want to say anything, correct? |
| 12:47:20 | 13 | A. Correct. |
| 12:47:20 | 14 | Q. That if you wanted an attorney? |
| 12:47:22 | 15 | A. Correct. |
| 12:47:24 | 16 | Q. By signing this, you basically said you don't want an |
| 12:47:28 | 17 | attorney present, correct? |
| 12:47:29 | 18 | A. No, that is not correct. |
| 12:47:30 | 19 | Q. It does have your initials on there? |
| 12:47:33 | 20 | A. Of course I signed it, because I feel -- because I was |
| 12:47:39 | 21 | feeling like I was being threatened like my legal status. |
| 12:47:42 | 22 | That's the only reason that I signed it.  I didn't get a |
| 12:47:45 | 23 | chance to read it or nobody read it to me.  So I just signed |
| 12:47:49 | 24 | it. |
| 12:47:49 | 25 | Q. Agent Trajkovic didn't arrest you that day, did she? |

May 29, 2014

Evans Darbouze - Direct

109

| | | |
|---|---|---|
| 12:47:54 | 1 | A.  I was in handcuffs. |
| 12:47:55 | 2 | Q.  Were you arrested for being an illegal resident in the |
| 12:48:00 | 3 | United States?  Were you arrested that day? |
| 12:48:01 | 4 | A.  No. |
| 12:48:02 | 5 | Q.  Agent Trajkovic didn't tell you she is taking you to |
| 12:48:06 | 6 | jail, did she? |
| 12:48:07 | 7 | A.  She told me that she could have, but she is not going to |
| 12:48:10 | 8 | take me. |
| 12:48:11 | 9 | Q.  She told you she was not going to take you, but she was |
| 12:48:16 | 10 | aware of your illegal status? |
| 12:48:18 | 11 | A.  Yes. |
| 12:48:18 | 12 | Q.  No one was pointing guns at you, were they? |
| 12:48:22 | 13 | A.  No. |
| 12:48:23 | 14 | Q.  Their guns were in the holster, correct? |
| 12:48:26 | 15 | A.  Yes. |
| 12:48:27 | 16 | Q.  No one was in the bedroom screaming or yelling or |
| 12:48:31 | 17 | anything like that at you, right? |
| 12:48:33 | 18 | A.  Correct. |
| 12:48:33 | 19 | Q.  So when either of these lines were read to you, you just |
| 12:48:39 | 20 | signed it? |
| 12:48:40 | 21 | A.  They were never read to me.  I just signed it. |
| 12:48:44 | 22 | Q.  You didn't read the form at all? |
| 12:48:46 | 23 | A.  Right. |
| 12:48:47 | 24 | Q.  It could have been anything that you were signing? |
| 12:48:49 | 25 | A.  Right, I was under the pressure. |

May 29, 2014

Evans Darbouze - Direct

| | | |
|---|---|---|
| 12:48:52 | 1 | Q.  That's when they started asking you questions, correct? |
| 12:48:55 | 2 | A.  Some more questions after that, yes. |
| 12:48:58 | 3 | Q.  That's when they started asking you questions in terms |
| 12:49:08 | 4 | of what network your computer was on? |
| 12:49:10 | 5 | A.  No, that was before that.  Now they were asking me where |
| 12:49:14 | 6 | does my brother go?  Does he bring little girls in the |
| 12:49:18 | 7 | house?  What does he do when he goes out?  It was after that |
| 12:49:22 | 8 | they told me to sign. |
| 12:49:24 | 9 | Q.  When did that take place? |
| 12:49:27 | 10 | A.  After I signed the papers. |
| 12:49:29 | 11 | Q.  After they asked that you sign this paper, they asked |
| 12:49:32 | 12 | you questions about your brother? |
| 12:49:33 | 13 | A.  Yes. |
| 12:49:34 | 14 | Q.  You told them that your brother set up the network and |
| 12:49:39 | 15 | it's called "Blade", right? |
| 12:49:40 | 16 | A.  Yes, he set it up, yeah. |
| 12:49:43 | 17 | Q.  Isn't it true that the interview lasted for |
| 12:49:54 | 18 | approximately 20 minutes or so, 45 minutes? |
| 12:49:57 | 19 | A.  No, it was like ten to 15 minutes. |
| 12:50:02 | 20 | Q.  It's your testimony today that you were handcuffed |
| 12:50:05 | 21 | throughout the entire period? |
| 12:50:06 | 22 | A.  Yes. |
| 12:50:07 | 23 | Q.  By the way, when you were in the room, you weren't in |
| 12:50:10 | 24 | the room with anyone else other than the agents? |
| 12:50:13 | 25 | A.  Right. |

May 29, 2014

Evans Darbouze - Redirect

| 12:50:14 | 1 | Q.  Your family members were in another room, correct? |
| 12:50:17 | 2 | A.  Yes. |
| 12:50:18 | 3 | Q.  When you say that they had you sitting on the steps, |
| 12:50:31 | 4 | there are steps near your apartment door; isn't that |
| 12:50:35 | 5 | correct? |
| 12:50:35 | 6 | A.  Right. |
| 12:50:36 | 7 | Q.  So it wasn't like you were out on the street, right? |
| 12:50:39 | 8 | A.  Correct. |
| 12:50:39 | 9 | Q.  You were dressed at that time? |
| 12:50:42 | 10 | A.  I just had my shorts on, that's it. |
| 12:51:18 | 11 | MR. JOHNSON:  Nothing further. |
| 12:51:20 | 12 | THE COURT:  Any redirect? |
| 12:51:22 | 13 | MS. O'CONNOR:  Just briefly. |
|  | 14 | REDIRECT EXAMINATION |
| 12:51:25 | 15 | BY MS. O'CONNOR: |
| 12:51:25 | 16 | Q.  The prosecutor just asked you do you love your brother? |
| 12:51:28 | 17 | A.  Yes. |
| 12:51:29 | 18 | Q.  Do you love your brother? |
| 12:51:31 | 19 | A.  Yes. |
| 12:51:31 | 20 | Q.  He asked you if you would do anything for your brother, |
| 12:51:35 | 21 | right? |
| 12:51:35 | 22 | A.  Yes. |
| 12:51:35 | 23 | Q.  Would you come in here and lie under oath for your |
| 12:51:39 | 24 | brother? |
| 12:51:39 | 25 | A.  No. |

Evans Darbouze - Redirect

112

| | | |
|---|---|---|
| 12:51:40 | 1 | Q.  Why not? |
| 12:51:44 | 2 | A.  Because I don't feel like it's the right thing to do. |
| 12:51:48 | 3 | Q.  Do you still have that form up there that I showed you |
| 12:51:52 | 4 | earlier? |
| 12:52:02 | 5 | I am going to hand you Defendant's Exhibit 15. |
| 12:52:13 | 6 | Are you looking at what I just handed you? |
| 12:52:18 | 7 | A.  Yeah. |
| 12:52:18 | 8 | Q.  Did I come visit you last week at your home? |
| 12:52:21 | 9 | A.  Yes. |
| 12:52:22 | 10 | Q.  Who else was with me? |
| 12:52:26 | 11 | A.  This guy right here. |
| 12:52:28 | 12 | Q.  Was there anyone else? |
| 12:52:29 | 13 | A.  Yes. |
| 12:52:32 | 14 | Q.  Was that my investigator? |
| 12:52:34 | 15 | A.  Yeah, I'm probably sure. |
| 12:52:35 | 16 | Q.  When we were at your house, did I show you that piece of |
| 12:52:39 | 17 | paper? |
| 12:52:39 | 18 | A.  Yes. |
| 12:52:40 | 19 | Q.  Was that the first time you had seen that piece of paper |
| 12:52:45 | 20 | since you signed it? |
| 12:52:46 | 21 | A.  Yes, that was the first time, yes. |
| 12:52:48 | 22 | Q.  Did you read it when I showed it to you at your house? |
| 12:52:52 | 23 | A.  Yes. |
| 12:52:54 | 24 | Q.  Was that the first time you had read it? |
| 12:52:56 | 25 | A.  Yes. |

Evans Darbouze - Redirect

113

| | | |
|---|---|---|
| 12:52:57 | 1 | Q.  When I was at your house, I asked you to tell me the |
| 12:53:03 | 2 | story of how the questioning took place, right? |
| 12:53:05 | 3 | A.  Yes. |
| 12:53:07 | 4 | Q.  Did I tell you what kind of story would help your |
| 12:53:14 | 5 | brother in this hearing?  In other words, did I suggest to |
| 12:53:18 | 6 | you when you should testify that you signed that form? |
| 12:53:20 | 7 | A.  No. |
| 12:53:21 | 8 | Q.  Did you tell me the same story from the start, that you |
| 12:53:26 | 9 | signed that form after being questioned by agents? |
| 12:53:29 | 10 | A.  Yes. |
| 12:53:31 | 11 | MS. O'CONNOR:  Nothing further. |
| 12:53:32 | 12 | MR. JOHNSON:  A couple of questions? |
| 12:53:34 | 13 | THE COURT:  Regarding what? |
| 12:53:36 | 14 | MR. JOHNSON:  He said in terms of -- not the right |
| 12:53:40 | 15 | thing to do in terms of his testimony. |
| 12:53:43 | 16 | THE COURT:  Go ahead. |
| | 17 | RE-CROSS EXAMINATION: |
| 12:53:44 | 18 | BY MR. JOHNSON: |
| 12:53:46 | 19 | Q.  Mr. Darbouze, you did testify that you did commit a |
| 12:53:50 | 20 | robbery in the past; is that correct? |
| 12:53:51 | 21 | A.  Yes. |
| 12:53:52 | 22 | Q.  That wasn't the right thing to do, was it? |
| 12:53:55 | 23 | A.  No. |
| 12:53:56 | 24 | Q.  But you did it anyway? |
| 12:53:57 | 25 | A.  At that time I wasn't thinking.  I was a teenager. |

Delmonte - Direct

| | | |
|---|---|---|
| 12:54:03 | 1 | Q.  My question is, you did it even though you knew it |
| 12:54:07 | 2 | wasn't the right thing to do? |
| 12:54:08 | 3 | A.  Yes. |
| 12:54:09 | 4 | THE COURT:  Thank you, sir.  You can step down. |
| | 5 | [Witness excused]. |
| 12:54:12 | 6 | THE COURT:  Who is the defendant's next witness? |
| 12:54:15 | 7 | MS. O'CONNOR:  Special Agent Delmonte. |
| 12:54:17 | 8 | THE COURT:  Have him come in, please.  Have him |
| 12:54:21 | 9 | please stand. |
| 12:54:55 | 10 | COURTROOM DEPUTY:  Do you solemnly swear the |
| | 11 | testimony you shall give with be the truth, the whole truth |
| | 12 | and nothing but the truth so help you God? |
| | 13 | THE WITNESS:  Yes, I do. |
| | 14 | COURTROOM DEPUTY:  State and spell your name for |
| | 15 | the record. |
| 12:55:02 | 16 | THE WITNESS:  Rodd Delmonte, R-O-D-D, |
| 12:55:05 | 17 | D-E-L-M-O-N-T-E. |
| | 18 | DIRECT EXAMINATION |
| 12:55:13 | 19 | BY MS. O'CONNOR: |
| 12:55:13 | 20 | Q.  Where do you work? |
| 12:55:15 | 21 | A.  I work at the Homestead Air Reserves Base with Homeland |
| 12:55:20 | 22 | Security Investigations. |
| 12:55:21 | 23 | Q.  What is your title? |
| 12:55:22 | 24 | A.  I am a special agent. |
| 12:55:24 | 25 | Q.  Do you recognize the man in the gray suit right there? |

Delmonte - Direct

| | | |
|---|---|---|
| 12:55:29 | 1 | A.  Yes. |
| 12:55:30 | 2 | Q.  How do you recognize him? |
| 12:55:31 | 3 | A.  He was one of the men at the house the day we served the |
| 12:55:37 | 4 | search warrant. |
| 12:55:37 | 5 | Q.  The day you served the search warrant.  So you were |
| 12:55:43 | 6 | present at the search? |
| 12:55:43 | 7 | A.  Yes. |
| 12:55:45 | 8 | Q.  You were present the whole time? |
| 12:55:47 | 9 | A.  Yes. |
| 12:55:48 | 10 | Q.  What time did you arrive at the house that day? |
| 12:55:52 | 11 | A.  I don't know the exact time.  6:00 a.m. was the time for |
| 12:55:58 | 12 | the search warrant.  It was shortly after that. |
| 12:56:01 | 13 | Q.  Tell me about what happened when you arrived at the |
| 12:56:04 | 14 | apartment. |
| 12:56:05 | 15 | A.  When we arrived at the apartment, we lined up how we |
| 12:56:12 | 16 | normally do in sequence.  I was to the left of the door |
| 12:56:18 | 17 | facing the house.  There were people behind me.  We had two |
| 12:56:22 | 18 | agents, Agent Colman and Darwin (phonetic) to the right. |
| 12:56:27 | 19 | Agent Colman knocked on the door and announced, "Police, |
| 12:56:31 | 20 | open the door." |
| 12:56:32 | 21 |         Shortly after, the door was opened by a young male. |
| 12:56:37 | 22 | I proceeded to, you know, talk to him and say, "Police, |
| 12:56:44 | 23 | stop."  He was trying to go backwards into the house.  He |
| 12:56:49 | 24 | ended up falling down because of the loose carpeting.  I |
| 12:56:55 | 25 | ended up securing him.  I handcuffed him. |

Delmonte - Direct

| | | |
|---|---|---|
| 12:57:00 | 1 | At that point, other agents came into the house |
| 12:57:06 | 2 | just to secure the house. |
| 12:57:07 | 3 | Q.  What happened after the house was secured? |
| 12:57:10 | 4 | A.  After the house was secured, we brought everyone into |
| 12:57:15 | 5 | the family room.  The reason for that is just to keep |
| 12:57:19 | 6 | everyone together.  Usually, we take a pre video. |
| 12:57:24 | 7 | Q.  Did you take that video? |
| 12:57:26 | 8 | A.  Yes, I did. |
| 12:57:27 | 9 | Q.  I am going to show you what has been marked as Defense |
| 12:57:32 | 10 | Exhibit 20.  I am going to approach with this and ask you if |
| 12:57:38 | 11 | you recognize it. |
| 12:57:39 | 12 | A.  Okay.  The video disk that I gave, I gave to Agent |
| | 13 | Trajkovic.  It might be a copy of it.  So that probably |
| | 14 | wasn't the disc that I turned over. |
| 12:57:57 | 15 | Q.  But it might be a copy? |
| 12:57:59 | 16 | A.  Correct. |
| 12:58:00 | 17 | Q.  Would you recognize your video footage if I played it |
| 12:58:04 | 18 | for you? |
| 12:58:05 | 19 | A.  Yes. |
| 12:58:08 | 20 | MS. O'CONNOR:  May I play it? |
| 12:58:10 | 21 | THE COURT:  Are you introducing it? |
| 12:58:14 | 22 | MS. O'CONNOR:  Yes, Your Honor. |
| 12:58:15 | 23 | COURTROOM DEPUTY:  Video of what? |
| 12:58:18 | 24 | MS. O'CONNOR:  It is a preview video of the search |
| 12:58:27 | 25 | of the apartment. |

Delmonte - Direct

12:58:27   1          THE COURT:  It will be Defendant's Exhibit 20.

12:58:42   2          MR. JOHNSON:  Your Honor, do you mind if I stand by

12:58:58   3  counsel to be able to see the video?

12:59:00   4          THE COURT:  Sure, you can go wherever you want to

12:59:04   5  go.

12:59:06   6          MS. O'CONNOR:  I'm going to play the second track.

12:59:28   7          THE WITNESS:  After we made an entrance, we take a

12:59:31   8  pre search warrant video.

12:59:33   9          That was a bathroom.

          10  BY MS. O'CONNOR:

12:59:35  11  Q.  Does 6:20 sound about right?

13:00:04  12  A.  Yes.

13:00:05  13  Q.  Let me see if I can play the next track.  This is the

13:00:10  14  first track on the disk.

13:00:53  15          [Video was played].

13:00:54  16  Q.  Did you watch that?

13:01:28  17  A.  Yes.

13:01:28  18  Q.  Did you also listen as it was playing?

13:01:31  19  A.  I could barely make out, but I could hear multiple

13:01:36  20  voices, yes.

13:01:36  21  Q.  Could you hear the voice of the older gentleman who was

13:01:40  22  in the apartment?

13:01:41  23  A.  Specifically, no.

13:01:42  24          Could you hear the voice of Special Agent Divine

13:01:46  25  asking him questions?

13:01:47   1   A.   I can't identify who was asking questions.

13:01:52   2   Q.   Did you hear anyone who seemed to be an agent asking

13:01:57   3   questions?

13:01:57   4   A.   No.

13:01:59   5   Q.   I will play it again, and I will turn the volume up.

13:02:05   6         THE COURT:   Maybe you should have him come down by

13:02:09   7   the TV.

13:02:10   8         THE COURT:   You know the father, Edwidge Darbouze,

13:02:12   9   Senior, don't you?

13:02:14   10         THE WITNESS:   Yes.

13:02:16   11         [Witness steps down from witness stand].

13:03:31   12   BY MS. O'CONNOR:

13:03:31   13   Q.   Could you hear that better?

13:03:34   14   A.   I could hear a little bit better.  I can't identify if

13:03:39   15   that's the father, if it was.  I definitely wouldn't know

13:03:45   16   Tim Divine's voice.  I don't know if that was him.  The only

13:03:49   17   thing I can make out is the father said, "Let me tell you."

13:03:54   18   I don't know who that was.

13:03:56   19   Q.   Did you hear, before the father said, "Let me tell," you

13:03:59   20   did you hear somebody say, "You were in the country 13 years

13:04:05   21   before she came"?

13:04:06   22   A.   I heard something like that, but not that full sentence.

13:04:10   23   Q.   You heard another voice answer, "Let me tell you"?

13:04:16   24   A.   I heard the voice say, "Let me tell you"  If you say

13:04:21   25   it's the father, but I don't know for sure.

| 13:04:24 | 1 | Q.   Could you make out a Creole accent? |
| 13:04:30 | 2 | A.   Yes. |
| 13:04:30 | 3 | Q.   Were any of the agents on the scene that day, did they |
| 13:04:35 | 4 | have that accent? |
| 13:04:36 | 5 | A.   No. |
| 13:04:45 | 6 |         MS. O'CONNOR:   Nothing further. |
| 13:04:49 | 7 |         COURTROOM DEPUTY:   Judge, is that Exhibit 20 |
| 13:04:52 | 8 | admitted? |
| 13:04:53 | 9 |         THE COURT:   Yes. |
| 13:04:54 | 10 |         (Received in evidence Defense Exhibit 20.) |
| | 11 |                 CROSS EXAMINATION |
| 13:04:58 | 12 | BY MR. JOHNSON: |
| 13:04:59 | 13 | Q.   Good afternoon, Agent Delmonte. |
| 13:05:01 | 14 |         You were part of the team who executed the search |
| 13:05:03 | 15 | warrant? |
| 13:05:04 | 16 | A.   Yes, sir. |
| 13:05:05 | 17 | Q.   You went to the apartment and helped secure it at the |
| 13:05:09 | 18 | location, correct? |
| 13:05:09 | 19 | A.   Correct. |
| 13:05:10 | 20 | Q.   When you were cuffing one of the individuals in the |
| 13:05:13 | 21 | apartment? |
| 13:05:13 | 22 | A.   Yes. |
| 13:05:14 | 23 | Q.   Do you recall which person that was? |
| 13:05:15 | 24 | A.   Not at that time, no. |
| 13:05:17 | 25 | Q.   Was it the father? |

DELMONTE - Cross

| | | |
|---|---|---|
| 13:05:18 | 1 | A.   No. |
| 13:05:19 | 2 | Q.   Was it the mother? |
| 13:05:19 | 3 | A.   No. |
| 13:05:20 | 4 | Q.   So it was one of the younger males? |
| 13:05:23 | 5 | A.   Correct. |
| 13:05:24 | 6 | Q.   When you were in their apartment, and you made that |
| 13:05:28 | 7 | video, and the family was located in the living room and |
| 13:05:32 | 8 | kitchen area; is that correct? |
| 13:05:34 | 9 | A.   In the initial video, yes, the pre search warrant video. |
| 13:05:39 | 10 | Q.   Because the other video that you reviewed, that was the |
| 13:05:43 | 11 | end of the search? |
| 13:05:44 | 12 | A.   Correct. |
| 13:05:44 | 13 | Q.   There's no one in the apartment, or we can't see them |
| 13:05:48 | 14 | anyway? |
| 13:05:49 | 15 | A.   Correct. |
| 13:05:50 | 16 | Q.   Do you recall going into the apartment -- you said that |
| 13:05:54 | 17 | you didn't cuff the father.  Do you ever recall the father, |
| 13:05:58 | 18 | Mr. Edwidge Darbouze, being handcuffed? |
| 13:06:03 | 19 | MS. O'CONNOR:  Objection to beyond the scope. |
| 13:06:04 | 20 | THE COURT:  Overruled. |
| 13:06:06 | 21 | THE WITNESS:  No. |
| 13:06:07 | 22 | BY MR. JOHNSON: |
| 13:06:09 | 23 | Q.   Do you ever recall the father being dragged out of the |
| 13:06:12 | 24 | house? |
| 13:06:12 | 25 | A.   No. |

13:06:13   1   Q.  You were there the entire time?

13:06:16   2            THE COURT:  When you say you don't recall the

13:06:20   3   father being handcuffed, is that because you don't remember,

13:06:24   4   or are you testifying that he was not handcuffed?

13:06:27   5            THE WITNESS:  I am testifying that I did not see

13:06:30   6   him handcuffed.

13:06:31   7            THE COURT:  Okay.

13:06:33   8   BY MR. JOHNSON:

13:06:34   9   Q.  Do you remember Agent Trajkovic having a conversation

13:06:38  10   with the father, Edwidge Darbouze, in the apartment?

13:06:42  11   A.  Yes.

13:06:44  12   Q.  Do you know if the defendant was handcuffed when the

13:06:48  13   Agent Trajkovic was speaking with him?

13:06:50  14   A.  No, I did not see him handcuffed when they were talking.

13:06:56  15   He was not handcuffed.

13:06:57  16   Q.  At the point when Agent Trajkovic was having a

13:07:01  17   conversation with the father, Edwidge Darbouze, did you see

13:07:05  18   her drag him out of the apartment?

13:07:07  19   A.  No.

13:07:09  20   Q.  Do you recall seeing -- let me ask you this.

13:07:29  21   Approximately how long were you inside the apartment that

13:07:31  22   day?

13:07:32  23   A.  The whole time?

13:07:34  24   Q.  Yes.

13:07:35  25   A.  I could guess it was hours, three to four hours.

DELMONTE - Cross

13:07:42    1    Q.   During the time that you were there, did you ever see

13:07:45    2    the father, Edwidge Darbouze, being handcuffed?

13:07:49    3    A.   I do not recall him being handcuffed.

13:07:52    4    Q.   What about the mother?

13:07:53    5    A.   No.

13:07:54    6    Q.   Do you recall -- but you do recall the other individuals

13:07:59    7    being handcuffed, the younger males?

13:08:01    8    A.   I know for sure I handcuffed the person who answered the

13:08:05    9    door.  At the time, I didn't know who it was.  I just knew

13:08:10   10    it was one of the younger males.

13:08:12   11         When we brought the individuals into the kitchen,

13:08:16   12    after I videotaped the kitchen, the only two people I

13:08:20   13    remember being handcuffed were the two sons sitting on the

13:08:23   14    stools.

13:08:24   15    Q.   They were not handcuffed during the whole time you were

13:08:27   16    there?

13:08:27   17    A.   I do not know when their cuffs were taken off.

13:08:32   18    Q.   Do you know if they were taken off?

13:08:35   19    A.   I wouldn't be able to recall when the cuffs were taken

13:08:41   20    off, no.

13:08:41   21         THE COURT:  Any redirect?

13:08:45   22         MS. O'CONNOR:  No, Your Honor.

13:08:45   23         THE COURT:  You may step down.

           24         [Witness excused].

13:08:47   25         THE COURT:  Does the defendant have any further

| | | |
|---|---|---|
| 13:08:50 | 1 | witnesses? |
| 13:08:51 | 2 | MS. O'CONNOR:  No, Your Honor. |
| 13:08:52 | 3 | THE COURT:  Does the government have any further |
| 13:08:54 | 4 | witnesses? |
| 13:08:56 | 5 | MR. JOHNSON:  No, Your Honor. |
| 13:09:00 | 6 | THE COURT:  Does the defendant want to make an |
| 13:09:02 | 7 | argument? |
| 13:09:02 | 8 | MR. GOMEZ:  Yes. |
| 13:09:04 | 9 | THE COURT:  Go ahead. |
| 13:09:06 | 10 | MR. GOMEZ:  Your Honor, on the Miranda point, our |
| 13:09:25 | 11 | argument predominantly flows under Missouri v. Seibert. |
| 13:09:33 | 12 | This is a suppression issue that turns on the credibility of |
| 13:09:36 | 13 | Agent Trajkovic's testimony that she Mirandized Mr. Darbouze |
| 13:09:42 | 14 | before questioning. |
| 13:09:43 | 15 | THE COURT:  I think the other agent testified |
| 13:09:45 | 16 | consistently. |
| 13:09:46 | 17 | MR. GOMEZ:  That is correct, Your Honor.  That is |
| 13:09:49 | 18 | not credible because, up until the moment of that search, |
| 13:09:53 | 19 | none of these agents know who the violator is. |
| 13:09:58 | 20 | They have three potential targets in Evans, Edwidge |
| 13:10:03 | 21 | Senior, and Edwidge Junior.  None of them know who the |
| 13:10:08 | 22 | violator is.  That was obviously the focus of my examination |
| 13:10:12 | 23 | of Agent Trajkovic. |
| 13:10:13 | 24 | THE COURT:  By the time they get to your client, |
| 13:10:17 | 25 | they have already interviewed the father, and they are |

13:10:20  1   convinced that he is not sophisticated in computers to get

13:10:25  2   into this, and the brother has indicated to them that your

13:10:28  3   client is the one that set up the network.

13:10:31  4         MR. GOMEZ:  That is correct.  What is interesting

13:10:34  5   about the distinction between the three is only one of the

13:10:38  6   three, Edwidge Senior, does not make any incriminating

13:10:44  7   statements at all.

13:10:46  8         Edwidge Senior is also the one who everyone agrees

13:10:50  9   is never Mirandized during this interaction.  He is the very

13:10:55  10  first person that is questioned, and he is also the person

13:10:59  11  who is the subscriber on the account.  He is the first guy

13:11:05  12  they go for.

13:11:06  13        Clearly, he is in custody.  Clearly, he is

13:11:08  14  terrified.  They don't just ask him general questions.  They

13:11:13  15  ask him about his use of the computer.  His use of the

13:11:16  16  Internet, and his knowledge of peer-to-peer.

13:11:19  17        It's only when they realize -- they somehow reached

13:11:23  18  a judgment on their own that they don't feel like it's our

13:11:27  19  guy.  He somehow dispels their suspicious so they don't end

13:11:33  20  up doing a Miranda form because some decision has been

13:11:36  21  reached that he is not going to be the subject of any

13:11:40  22  investigation.

13:11:40  23        Then Evans comes along.  They question Evans,

13:11:45  24  clearly in custody.  Although Evans may not admit to

13:11:49  25  engaging in any child pornography, Evans does admit to

13:11:54   1   violating the law in terms of his Immigration violations.

13:11:57   2        So, as a precautionary measure, during the course

13:12:01   3   of the questioning, the agents think well, just as a

13:12:06   4   precautionary, let's make sure he fills out a Miranda form,

13:12:12   5   because if he is ever prosecuted for these Immigration

13:12:17   6   violations, we don't have a problem.

13:12:19   7        When we get to Edwidge Junior, obviously he admits

13:12:23   8   to the child pornography violations.  It's reasonable to

13:12:26   9   infer, from the fact that there's no Mirandizing of the

13:12:29   10  father, even though he is interrogated and in custody and

13:12:32   11  there's admissions of some criminal conduct by Evans, that

13:12:36   12  the same approach, the same strategy is taken with respect

13:12:41   13  to Edwidge Junior.

13:12:43   14       There's no reason to believe they would do a

13:12:46   15  different approach with respect to Edwidge Junior than they

13:12:49   16  did with the two other males that they did before.

13:12:53   17       THE COURT:  Did anybody ask the agents about Evans?

13:13:07   18  Did anyone inquire of the agents whether or not they read

13:13:10   19  him his Miranda immediately?

13:13:12   20       MR. JOHNSON:  Yes, they stated that they did.  The

13:13:21   21  agents contend that they treated them both the same.  Based

13:13:26   22  on Evans's testimony, he said that he made a bunch of

13:13:31   23  admissions before he was given the form to sign.

13:13:34   24       MR. GOMEZ:  That's correct.  The agents don't

13:13:38   25  dispute they never Mirandized Edwidge Senior Darbouze, even

| | | |
|---|---|---|
| 13:13:44 | 1 | though there is evidence that he is the subscriber.  They |
| 13:13:48 | 2 | are interrogating this man and don't Mirandize him. |
| 13:13:53 | 3 | They don't start the questioning of the other two |
| 13:13:55 | 4 | either, particularly our client, with an initial Miranda |
| 13:14:01 | 5 | waiver. |
| 13:14:02 | 6 | Finally, I make a point about the credibility of |
| 13:14:06 | 7 | Edwidge Senior and Evans when they testified.  In order to |
| 13:14:11 | 8 | think that they are fabricating this story, in order to |
| 13:14:16 | 9 | think that Evans Darbouze is fabricating -- really, it's not |
| 13:14:21 | 10 | an issue of Edwidge Senior because everybody agrees he |
| 13:14:25 | 11 | wasn't Mirandized.  Evans, "I'm MIRANDIZED sometime midway |
| 13:14:31 | 12 | through in this very brief very cursory manner."  In order |
| 13:14:36 | 13 | to believe that he's making that story up, it would mean two |
| 13:14:40 | 14 | possibilities. |
| 13:14:41 | 15 | Number one, that we coached him to do that, and he |
| 13:14:45 | 16 | testified that didn't happen. |
| 13:14:47 | 17 | Or number two, that Evans has an independent |
| 13:14:50 | 18 | understanding of the way Missouri versus Seibert works about |
| 13:14:55 | 19 | mid-questioning Mirandizing.  I don't think it's credible to |
| 13:14:59 | 20 | believe that Evans Darbouze has that sort of sophisticated |
| 13:15:03 | 21 | understanding of the way that Miranda works. |
| 13:15:06 | 22 | THE COURT:  Right. |
| 13:15:07 | 23 | MR. GOMEZ:  These agents have to understand the |
| 13:15:10 | 24 | consequence of starting questioning by advising a person of |
| 13:15:14 | 25 | all of the rights that they have, that they could clam up, |

13:15:18    1    and they don't take that risk.  They want to get their

13:15:21    2    confession, and then they can proceed with the prosecution.

13:15:26    3            I will also point out another inconsistency in the

13:15:33    4    evidence with respect to Agent Trajkovic.  She says Edwidge

13:15:39    5    Senior is not questioned at all before 7:25 a.m.  She said

13:15:47    6    that several times while I cross-examined her.

13:15:49    7            However, we hear from the last agent who testified

13:15:53    8    that there was videotaping of the apartment a few minutes

13:15:59    9    after the entering at 6:20, and you can hear in the video an

13:16:04   10    agent speaking to Edwidge Senior and asking questions about

13:16:09   11    the wife and coming to the United States and so on.

13:16:12   12            THE COURT:  Wouldn't it be fair to interpret

13:16:18   13    questioning meaning interrogating them?  Common sense tells

13:16:22   14    you that when they come in the house they ask your name.

13:16:27   15            MR. GOMEZ:  Sure, but questions like when did she

13:16:30   16    come to this country, clearly that is going more into the

13:16:35   17    direction of interrogating the person.

13:16:37   18            THE COURT:  Right.

13:16:38   19            MR. GOMEZ:  Agent Trajkovic, I thought, was pretty

13:16:42   20    clear.  I asked her, "Did Edwidge Senior make any statements

13:16:46   21    at all?  Was he questioned at all before 7:25 a.m."?  She

13:16:51   22    says, "No, no."  Clearly, that's not case.

13:16:54   23            I think that Your Honor should consider the

13:16:56   24    conflict between the two agents' testimony in looking at

13:16:59   25    agents' credibility in general about what took place.

| | | |
|---|---|---|
| 13:17:03 | 1 | On the last point.  Your Honor made the comment |
| 13:17:07 | 2 | already that it's essentially a legal interpretation of the |
| 13:17:11 | 3 | attachment to the warrant.  I don't have any argument.  We |
| 13:17:15 | 4 | would rest on our briefs on the second point, Your Honor. |
| 13:17:18 | 5 | THE COURT:  Thank you. |
| 13:17:20 | 6 | Government? |
| 13:17:22 | 7 | MR. JOHNSON:  Yes, Your Honor. |
| 13:17:23 | 8 | Your Honor, first and foremost, the government is |
| 13:17:26 | 9 | requesting that the defense motion be denied.  In regard to |
| 13:17:30 | 10 | the defendant's statement in this case, it is clear that, |
| 13:17:33 | 11 | through the testimony of Agent Trajkovic, that agents came |
| 13:17:40 | 12 | in and they separated the individuals only when they were |
| 13:17:43 | 13 | questioning them. |
| 13:17:44 | 14 | Before any questions were asked of this particular |
| 13:17:46 | 15 | defendant, they read him his statement of rights form, |
| 13:17:50 | 16 | basically acknowledging that he was going to waive his |
| 13:17:54 | 17 | rights.  That's essentially what he did. |
| 13:17:56 | 18 | The testimony was clear that no questions were |
| 13:17:58 | 19 | asked of the defendant prior to them reading him his Miranda |
| 13:18:02 | 20 | rights.  Even if he is in custody at that time, they still |
| 13:18:07 | 21 | read Miranda rights at the beginning of his questions. |
| 13:18:09 | 22 | THE COURT:  They said I shouldn't believe that |
| 13:18:11 | 23 | because of the way they treated the brother and the father. |
| 13:18:15 | 24 | MR. JOHNSON:  Absolutely.  The record is also clear |
| 13:18:19 | 25 | that the rights were read to Evans Darbouze.  The same |

| | | |
|---|---|---|
| 13:18:22 | 1 | procedure was done just like it was done for the defendant. |
| 13:18:26 | 2 | By that I mean Mr. Darbouze was brought into the |
| 13:18:31 | 3 | defendant's bedroom, they read him the form, and basically |
| 13:18:35 | 4 | read him questions after that. |
| 13:18:37 | 5 | What Your Honor has to do is have a credibility |
| 13:18:40 | 6 | determination.  In this case, Mr. Evans Darbouze definitely |
| 13:18:44 | 7 | has an interest in the case, just like the father honestly, |
| 13:18:47 | 8 | because this is their brother.  This is their father.  When |
| 13:18:50 | 9 | you talk about credibility, Agent Trajkovic doesn't have any |
| 13:18:54 | 10 | interest in the case. |
| 13:18:57 | 11 | THE COURT:  Why, doesn't she want to convict this |
| 13:19:00 | 12 | guy? |
| 13:19:01 | 13 | MR. JOHNSON:  She has a duty to make arrests, |
| 13:19:03 | 14 | investigate crimes, and to try to make an arrest for that |
| 13:19:06 | 15 | case.  After that, whatever happens after we put together |
| 13:19:10 | 16 | the evidence, I don't know if she has an interest in if they |
| 13:19:13 | 17 | are convicted or not. |
| 13:19:14 | 18 | THE COURT:  I think most agents want the person |
| 13:19:18 | 19 | convicted. |
| 13:19:18 | 20 | MR. JOHNSON:  I'm sure, but not to the degree of |
| 13:19:25 | 21 | fabricating testimony. |
| 13:19:26 | 22 | Evans Darbouze has committed crimes in the past. |
| 13:19:30 | 23 | He is living in the country illegally. |
| 13:19:32 | 24 | THE COURT:  Wouldn't that make him try to please |
| 13:19:36 | 25 | you rather than hurt you?  In other words, you have the |

13:19:39   1   ability, and the agents because they work for Customs or

13:19:42   2   whatever Customs is called now, they could probably have him

13:19:47   3   deported for being illegal.

13:19:48   4        He doesn't want to come in here and get you upset

13:19:52   5   with him, because when he walks out the door, one of these

13:19:55   6   agents might grab him and throw him in Krome or something.

13:20:01   7        MR. JOHNSON:  I think he was candid and said he was

13:20:04   8   illegally here.  He didn't really get around that.  I don't

13:20:14   9   think, after fabricating their testimony, the agents are now

13:20:19   10  going to say okay, we are going to now arrest you for being

13:20:26   11  in the country illegally.

13:20:30   12        THE COURT:  How does that --

13:20:32   13        MR. JOHNSON:  Still you remain in the country once

13:20:36   14  you know it is wrong to remain in the country.  You know the

13:20:41   15  right thing to do.  Just like you know that robbing someone

13:20:45   16  is not the correct thing to do.  When you go out and rob

13:20:49   17  someone, you do it because of your own self interest.

13:20:52   18        THE COURT:  What about the dad?  How come they

13:20:55   19  didn't read the rights to the dad?

13:20:57   20        MR. JOHNSON:  Your Honor, I think the record is

13:20:59   21  pretty clear that, when they entered the apartment, he

13:21:04   22  wasn't in custody at that time.

13:21:05   23        Did they secure the location?  Yes.  There was

13:21:08   24  testimony from Mr. Darbouze, Senior basically saying, "I was

13:21:13   25  handcuffed.  I was dragged."

13:21:14    1         Agent Trajkovic said, "Listen, when we entered the
13:21:18    2    apartment, we secured the location, took a video, and then I
13:21:21    3    spoke to Mr. Darbouze to let him know the reasons why I was
13:21:25    4    there."
13:21:26    5         He didn't have any handcuffs.  No one had their
13:21:29    6    guns out at that time.  Objectively looking at it, he wasn't
13:21:33    7    in custody at all.  From their testimony, it doesn't seem
13:21:37    8    like they considered him to be a subject anyway.
13:21:40    9         THE COURT:  Counsel makes a good point.  He's the
13:21:43   10    one whose name the IP address is in, right?
13:21:47   11         MR. JOHNSON:  Definitely true.  That's why they
13:21:50   12    went to the location.  They have a duty to see who the
13:21:53   13    apartment is registered to or who the Comcast is registered
13:21:59   14    to.  They wanted to let him know why they were there.
13:22:04   15         He was obviously the first person they spoke to.
13:22:07   16    He is the man of the house.  There's other testimony that
13:22:10   17    shows he was never dragged out of the home like Mr. Edwidge
13:22:14   18    Senior said.  He was never handcuffed the entire time.
13:22:19   19         Clearly, guns were pointed at me.  He obviously has
13:22:26   20    an interest too.  In order for Missouri versus Seibert to
13:22:31   21    apply, he has to be in custody.  I don't think those factors
13:22:35   22    show that he was in custody.
13:22:36   23         They didn't read him his Miranda rights because he
13:22:40   24    is not subject to custody.  At the time, Missouri versus
13:22:47   25    Seibert is really inapplicable because he wasn't in custody

13:22:51  1  at that time.

13:22:52  2         With regard to they established that they took them

13:22:56  3  into the room, there were agents inside of the room.  No

13:23:00  4  questions were asked prior to Miranda.

13:23:02  5         In fact, there wasn't even any questions like what

13:23:06  6  is your name?  Who set up the Wi-Fi?  The agents, they

13:23:11  7  didn't even do that in this case.  As soon as they came in

13:23:14  8  the room, they read the Miranda rights.

13:23:17  9         THE COURT:  Okay.

13:23:18  10        MR. JOHNSON:  Your Honor, I know that counsel

13:23:21  11  didn't make argument to suppress the physical evidence.

13:23:25  12  However, the search warrants were obviously particular in

13:23:28  13  this case.  It was not a general warrant.

13:23:30  14        The paragraphs listed in the Attachment B, some of

13:23:35  15  those did not refer to child pornography.  However, many of

13:23:38  16  those did refer to child pornography.  The reason that it's

13:23:43  17  not a general warrant is because, number one, you have to

13:23:46  18  read the affidavit in conjunction with the attachment.  It's

13:23:50  19  not an isolated event or paperwork.

13:23:53  20        Even more importantly, the evidence that was

13:23:56  21  recovered in the case was -- actually, the agent is supposed

13:24:01  22  to read B without reading the affidavit and know what items

13:24:05  23  can be lawfully seized.

13:24:07  24        MR. JOHNSON:  I think the attachment does refer to

13:24:10  25  the items.

13:24:11  1        THE COURT:  Now what the question is, is it really

13:24:14  2  general?  Absolutely not.  It is not general.  Number one,

13:24:18  3  it is referring to child pornography.  The real question, I

13:24:22  4  guess, if that's Your Honor's point, is whether or not it's

13:24:26  5  overbroad, if they are asking to seize items that they have

13:24:30  6  no probable cause to seize in the first case.

13:24:34  7        Judge McAliley addressed this in the Rubenstein

13:24:37  8  case, that their argument is that there's not probable cause

13:24:41  9  to everything that you're asking to seize.

13:24:43  10        MR. JOHNSON:  Exactly.  That was the extra

13:24:46  11  paragraphs that they submitted in their response.  It's

13:24:49  12  overbroad because they actually seized things that they

13:24:52  13  don't have probable cause for.

13:24:55  14        Obviously, they do in this particular case.  What

13:24:57  15  really happens is when you have to make that determination,

13:25:01  16  the question then becomes does the good faith exception

13:25:04  17  apply to the exclusionary rule in this case.

13:25:09  18        In this circuit, the Court has held that the good

13:25:13  19  faith exception applies to general and overbroad warrants if

13:25:17  20  Your Honor disagrees with the government saying this is an

13:25:19  21  overbroad warrant.

13:25:21  22        It does not apply to the paragraphs.  The good

13:25:23  23  faith exception does not apply when the warrant is so

13:25:26  24  overbroad on its face to the extent that the executing

13:25:30  25  officers cannot reasonably determine it would be valid.

13:25:34    1            I don't think you have that situation in this case.

13:25:37    2    I think, in their affidavit, they list out different

13:25:41    3    sections.  If you recall, I asked Agent Trajkovic what

13:25:44    4    sections they have there.  That's to educate the reader of

13:25:48    5    how people with electronic -- that's their particular

13:25:55    6    interest.

13:25:56    7            If you read this warrant, it's not invalid on its

13:25:59    8    face.  It doesn't appear to be that these agents were acting

13:26:04    9    in bad faith when they were seeking to get this

13:26:07   10    warrant, seeking authorization of this warrant.

13:26:12   11            One final note --

13:26:14   12            THE COURT:  Let me just interrupt you.  In

13:26:17   13    Attachment B, number one, you say --

13:26:20   14            MR. JOHNSON:  Which warrant, Your Honor?

13:26:22   15            THE COURT:  The house warrant.  It says, "List of

13:26:25   16    items to be seized."  Number one is computers and a bunch of

13:26:29   17    stuff relating to computers.

13:26:34   18            Then it says, "The search of the equipment is

13:26:37   19    limited to the items listed below."  Then it goes on to say

13:26:41   20    software.  I understand why you need the software, because

13:26:44   21    you need that in order to know how he is using the P2P.

13:26:52   22    Most of the stuff talks about items that relate to child

13:26:57   23    pornography, until you get to number 12.

13:27:00   24            Actually, until you get to number 10.  Number 10 is

13:27:07   25    all records relating to that or the concern the account with

13:27:11   1   the Internet service provider.  I can understand why that's

13:27:16   2   necessary to understand who is the owner of this account.

13:27:20   3        Then the next one is almost like a repeat of the

13:27:27   4   beginning, but it's basically software used to access and

13:27:32   5   log-ins and passwords.  I understand why that is not

13:27:37   6   general, because that's something that is necessary for your

13:27:40   7   tech guys to go into the computer and find it.

13:27:43   8        Next one, 12.  Any and all cameras, video cameras,

13:27:48   9   or other photographic equipment.  Why do you get to seize

13:27:52   10  film and video?  They actually have the same thing as the

13:27:56   11  first one.  It should say any and all cams, films, video

13:28:02   12  cameras, or other photographic equipment, and the searches

13:28:05   13  should be limited to child pornography.  But it doesn't say

13:28:09   14  that though.

13:28:10   15       MR. JOHNSON:  No, it doesn't say that.  I even

13:28:13   16  believe the agent pointed out some that paragraphs

13:28:16   17  specifically refer to child pornography and others do not.

13:28:19   18  Part of the reason for that is she testified there are

13:28:22   19  certain sections, obviously within the search warrant

13:28:25   20  affidavit, that actually refer to how child porn is stored.

13:28:31   21       Yes, they say that child porn -- it's actually a

13:28:36   22  quote in the portion of this affidavit that talks about my

13:28:41   23  expertise in child pornographers, what child pornographers

13:28:50   24  do.

13:29:03   25       45A, it says, "Persons who are involved in child

13:29:06  1  pornography, generally explicit material related to their

13:29:12  2  interest, which may consist of photographs or videos,

13:29:15  3  persons are known to take and maintain video recordings of

13:29:24  4  fully clothed children that could be relative to child

13:29:29  5  pornography."

13:29:29  6      B, "Individuals maintaining children pornography

13:29:33  7  maintain these images on cams, film, video cams, computers,

13:29:38  8  and other photographic equipment."  That is basically

13:29:43  9  transferred to item G-1 to seize.

13:29:46  10      Wouldn't you agree -- in other words, you can't

13:29:50  11  just take someone's film.  You can look at the film and then

13:29:53  12  you can say there's a picture of child pornography on that.

13:29:57  13  I'm taking that.  Maybe there's a picture of the defendant

13:30:01  14  on here that shows it's his film.

13:30:03  15      THE COURT:  If it shows his family at a park, do

13:30:07  16  you get to seize that?  Or his child's birth, do you get to

13:30:11  17  seize that?  If it's a video of his kids at Christmas, do

13:30:18  18  you seize that?

13:30:19  19      MR. JOHNSON:  I don't really think it's proper to

13:30:22  20  seize that.  You read the affidavit in conjunction with the

13:30:24  21  search warrant.

13:30:25  22      THE COURT:  No, you don't.  I would like to see a

13:30:28  23  (inaudible) in conjunction with the affidavit.  I think the

13:30:34  24  law is exactly the opposite.  You are supposed to be able to

13:30:37  25  read the attachment without reading the affidavit.

13:30:41  1          Why, for two reasons.  One is that you have ten

13:30:44  2    agents.  They are going to read that statement.  They're not

13:30:48  3    necessarily going to read the affidavit.

13:30:50  4          Second, the gentleman that owns this place is able

13:30:52  5    to read this and determine what it is that the agents are

13:30:55  6    allowed to seize, because he doesn't get a copy of the

13:30:58  7    affidavit.

13:30:59  8          So I disagree with you when you say he is supposed

13:31:03  9    to read it in conjunction.  I agree that there has to be

13:31:07  10   probable cause to allow for the stuff in the attachment, but

13:31:12  11   paragraph 12 should have been read with 13, any and all

13:31:20  12   cameras, film which depict visual depictions of minors,

13:31:25  13   which excludes family images, but includes images of

13:31:29  14   children in magazines, newspapers, or rather includes visual

13:31:35  15   depictions, but doesn't include family images.

13:31:38  16          MR. JOHNSON:  I understand your argument, Your

13:31:40  17   Honor.  Once again, that would probably make the warrant

13:31:44  18   overbroad in this case.  Instead of specifying all cams and

13:31:49  19   film regarding child pornography, it says everything.

13:31:52  20          Then the question then becomes if these officers

13:31:55  21   are acting in bad faith or not.

13:31:58  22          THE COURT:  I agree with you.  If I find that --

13:32:01  23   for instance, that's the paragraph that jumps out at me as

13:32:04  24   should have a qualifier on it.  That you can seize those

13:32:08  25   things and then you can search them for whatever.  You may

DELMONTE - Cross

13:32:12  1  have to take them out.  I know, in the affidavit, you say

13:32:17  2  sometimes we need to take some things out.

13:32:19  3          MR. JOHNSON:  Yes, that is essentially the same

13:32:23  4  thing Judge McAliley went through in her analysis.  She said

13:32:28  5  listen, it should have at least specified child porn.

13:32:33  6  Because it did not, she found that that was overbroad.

13:32:38  7          If it is, the question then becomes does the good

13:32:40  8  faith exception apply to the exclusionary rule?  Our

13:32:44  9  argument is it definitely applies to this case.

13:32:47  10          THE COURT:  When was Judge McAliley's opinion?

13:32:53  11          MR. JOHNSON:  I actually have the case here.

13:32:57  12          THE COURT:  Do you have a case number?

13:33:03  13          MR. JOHNSON:  I have the case.

13:33:04  14          THE COURT:  Is it a published case?

13:33:07  15          MR. JOHNSON:  No.  It was a 2010 case, F.Supp.2d

13:33:43  16  2010, WL2723186.

13:33:48  17          THE COURT:  That's a Westlaw cite?

13:33:52  18          MR. JOHNSON:  Yes, 2010, WL2723186.

13:33:59  19          THE COURT:  Can you actually have a good faith

13:34:25  20  reliance when another Judge has already told you that you

13:34:29  21  can't be attaching things like this that say you can't take

13:34:33  22  any video you want?

13:34:36  23          MR. JOHNSON:  The question was I don't think they

13:34:38  24  were informed.  If they were informed and then they

13:34:42  25  continued keeping overbroad paragraphs such as Attachment B,

DELMONTE - Cross

13:34:47   1   then they would be acting in bad faith because they were

13:34:51   2   clear.  I'm not sure if they had done that.

13:34:57   3           THE COURT:  You should go back to your office and

13:35:01   4   tell people this.  I know a lot of these warrants have

13:35:06   5   similar wording in it.

13:35:10   6           MR. JOHNSON:  I think, in this particular case, she

13:35:17   7   testified that she wanted to do a child pornography case.

13:35:22   8   She worked on many of them.  It would appear that that

13:35:27   9   wasn't told to her.

13:35:33   10          With regards to the argument -- in regards to the

13:35:41   11   CD3D case, the comprehensive drug testing case, which was a

13:35:47   12   case out in the Ninth Circuit regarding how there should

13:35:51   13   definitely be search protocols --

13:35:54   14          THE COURT:  I'm not worried about that.  That's the

13:35:57   15   Ninth Circuit.  Nine plus two does not equal 11, like Judge

13:36:05   16   Feldman said.

13:36:07   17          MR. JOHNSON:  The Ninth Circuit doesn't follow that

13:36:17   18   precedence anyway.

13:36:20   19          So Your Honor, the government would rely on those

13:36:23   20   arguments in terms of both the search warrants being off.

13:36:30   21   We would ask that the defendant's motion be denied.

13:36:34   22          THE COURT:  Okay.  Anything else from the

13:36:37   23   defendant?

13:36:37   24          MR. GOMEZ:  Yes, Your Honor, on the point about the

13:36:40   25   father and the distinction there about the father being in

May 29, 2014

13:36:44  1  custody --

13:36:45  2      THE COURT:  Contending that.

13:36:47  3      MR. GOMEZ:  I think that there's sufficient

13:36:52  4  evidence that he was in custody even if you accepted what

13:36:55  5  the agent said.  The fact that they come into his apartment

13:37:00  6  unannounced, they take him, separate him from his family.

13:37:04  7      He is the only one in the whole house that the two

13:37:08  8  armed agents, who he has never met before in his life, take

13:37:13  9  him out to a car, put him in a car.  What would be going

13:37:20  10  through any reasonable person's mind as to what is

13:37:23  11  happening?

13:37:24  12      He is in a car surrounded by two agents.  Where am

13:37:28  13  I going?  How long am I going to be in here?  Am I going

13:37:33  14  home?  There's sufficient that evidence Mr. Darbouze is in

13:37:37  15  custody when he is interrogated.

13:37:39  16      The more reasonable reason for why there's no more

13:37:43  17  Mirandizing is because he didn't say anything that could be

13:37:46  18  used against him in a criminal prosecution.

13:37:50  19      THE COURT:  Thank you.

13:37:51  20      Anything else for the Court?

13:37:53  21      MR. JOHNSON:  Nothing further.

13:37:57  22      MS. O'CONNOR:  Nothing.

13:37:57  23      THE COURT:  Thank you.  You are set for trial when?

13:38:03  24      MR. JOHNSON:  June 16th.

25      THE COURT:  Okay, thank you all.

1                         C E R T I F I C A T E

2

3          I hereby certify that the foregoing is an accurate

4    transcription of proceedings in the above-entitled matter.

5

6

7

8                              /S/ ROBIN MARIE DISPENZIERI, RPR
     _____     _____
9    DATE FILED
                              ROBIN MARIE DISPENZIERI, RPR-CP
10                            Official Federal Court Reporter
                              United States District Court
11                            400 No. Miami Avenue, Ste. 08S67
                              Miami, FL   33128   305/523-5659
12                            robin_dispenzieri@flsd.uscourts.gov

13

14

15

16

17

18

19

20

21

22

23

24

25