UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20159-CR-BLOOM

UNITED STATES OF AMERICA,
        Plaintiff,

v.

EDWIDGE JUNIOR DARBOUZE,
        Defendant.
_____/

## DEFENDANT DARBOUZE'S SENTENCING MEMORANDUM

The defendant, Edwidge Junior Darbouze, through the undersigned, respectfully files the following Sentencing Memorandum. For the reasons contained in this pleading, Mr. Darbouze respectfully requests a variance from the advisory guideline range of 135-168 months outlined in the Presentence Investigation Report (hereinafter, the "PSI").

### I.    Mr. Darbouze's Guideline Range is Greater Than Necessary to Serve the True Purposes of Punishment.

Despite Congress' instruction that each defendant's sentence should be "sufficient, but not greater than necessary" to meet the purposes of sentencing, Guideline § 2G2.2 ascribes ranges that are often unwarranted and excessive. Even the Sentencing Commission recently admitted that the guidelines in a typical child pornography case employ "outdated and disproportionate enhancements."[1] Mr. Darbouze's case is the "typical" child pornography case to which the Sentencing Commission referred, and his guideline range is "overly severe."

---

[1] *See* The U.S. Sentencing Commission's Report to Congress: Federal Child Pornography Offenses, (hereinafter, "the Report"), Chap. 12, p. 331, (Dec. 2012) *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm ("The Commission believes that the current non-production guideline warrants revision in view of its outdated and disproportionate enhancements related to

1

> **A.  Non-Production Pornography Offenses on Average Carry Higher Guideline Ranges than Sex Offenses Involving Actual or Attempted Sexual Contact with a Minor.**

A report conducted by the Sentencing Commission concluded that the mean guideline for offenses covered by 2G2.2 is *higher* than the mean guideline minimum for the following three other sex offense types involving minors:

- <u>Traveling to engage in sexual contact with a minor 12 years or older</u> (USSG §2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor));

- <u>Abusive sexual contact with a minor</u> (*e.g.,* sexual fondling) (USSG §2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact));

- <u>Statutory rape of a minor under 16 years of age</u> (USSG §2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of 16 Years (Statutory Rape) or Attempt to Commit Such Acts)).

(The Report, Chap. 6, p. 135-136). Mr. Darbouze's case does not involve the enticement of minors or attempted or actual contact with minors—a fact that should be considered in imposing a below-guideline sentence in this case.

---

offenders' collecting behavior as well as its failure to account fully for some offenders' involvement in child pornography communities and sexually dangerous behavior. *The current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application.*") (emphasis added).

2

### B.     Enhancements for Use of a Computer and Prepubescent Minors Apply in All 2G2.2 Cases and are No Longer Meaningful Ways to Punish More Egregious Conduct.

Mr. Darbouze receives an enhancement for possessing images depicting a prepubescent minor and an additional enhancement for use of a computer. PSI ππ 18, 20. These enhancements have been available since the late 1980's and mid-1990's, but as shown in the following figure taken from the Report, these two enhancements now apply to "virtually all non-production offenders":



(Report, Chap. 6, p. 138). Because these enhancements obtain in nearly every child pornography case, they are no longer meaningful ways to punish only offenders whose conduct is exceptionally egregious.

### C.     Enhancements for Sadomasochistic and for Image Quantity Apply in Almost Every Case.

Mr. Darbouze receives an enhancement for possessing "sadomasochistic" images, as well as a five-level enhancement for the number of images possessed. PSI ππ 19, 21. According to the Report, there has been a steady increase in the application of enhancements related to

sadomasochistic images: in 2005, the enhancement applied in approximately 60 percent of cases, and by 2010, it applied in nearly 75 percent of cases. (Report ,Chap. 6, p. 141). Further, "in fiscal year 2010, 1,602 of 1,654 offenders (96.9%) received an enhancement pursuant to §2G2.2(b)(7) based on the number of images that they possessed, and 1,1115 of the 1,60 (69.6%) received the maximum 5-level enhancement based on possession of 600 or more images. *Id.* Again, this empirical data demonstrates that the guidelines are generating arbitrarily high ranges that do not appropriately differentiate among conduct and offenders.

> **D.    Other Courts in this District Have Recognized that Child Pornography Guideline Ranges are Greater than Necessary and Have Varied Downward.**

In *United States v. Carlo Demarco,* Case No. 10-cr-20261-KMM, the defendant pled guilty to one count of distribution of child pornography. His PSI calculated his sentencing guidelines to be 151-188 months, and the defendant requested a downward variance. Over the Government's objection, the Court imposed a sentence of 60 months. Some of the facts set forth in that defendant's proffer are strikingly similar to Mr. Darbouze's case: a publicly available file sharing program was used; and a forensic examination of that computer revealed at least 600 images and at least 101 videos of prepubescent children engaging in sexually explicit conduct, including oral sex and penetration. Case No. 10-cr-20261-KMM (DE: 46). But Mr. Demarco's conduct was even more egregious: not only did he make his images available for distribution, but he had his software configured to allow him to monitor actively not just which files of his were being downloaded, but who was downloading his files. (*Id.*) Even taking into account that the *Demarco* defendant pled guilty and had demonstrated mental health issues, Mr. Darbouze's suggested sentence of 135 to 168 months is still more than double that imposed by the Court in *Demarco*.

In a case involving more than simple P2P distribution, *United States v. Diego Matrajt,*

4

Case No. 12-cr-20343-RNS, the defendant pled guilty to one count of distribution and two counts of possession of child pornography, despite all indications that he was *producing* child pornography. (DE: 40.) His PSI calculated his guidelines to be 210-262 months, the defendant requested a sentence of 60 months, and over the Government's objection, the Court imposed a sentence of 120 months as to each count to run concurrently. (*Id.*) That defendant not only had his computers password protected and encrypted, but he also had webcams secretly set up in his home, where he conducted photo shoots of children and captured videos of those children naked in his home. He possessed 50 homemade videos of this nature, in addition to at least another 40 sexually explicit videos of minors. (*Id.*) Matrajt, who had numerous real children in his home and videoed them for his own sexual gratification, in addition to possessing and sharing sexually explicit videos of minors, received a sentence of 120 months. The facts of Mr. Darbouze's case are nowhere near as egregious as those in the *Matrajt* case, yet his guideline range suggests a sentence higher than the one Mr. Matrajt received.

In *United States v. Bourelle,* Case No. 08-cr-20407-UU, the defendant chatted with an undercover agent in an attempt to arrange to meet the agent's minor daughter and have sex with her, and in furtherance of that goal, he sent the agent various files containing child pornography. (DE: 17.) The defendant pled guilty to distribution of child pornography and transferring obscene materials to a minor. His PSI calculated his guidelines at 108-135 months, the parties agreed to a guideline range of 57-71 months and jointly recommended a sentence of 60 months, which the Court accepted and imposed a 60-month sentence. (DE: 21, 23, 26.) In contrast to Mr. Bourelle, Mr. Darbouze has never contacted nor attempted to inappropriately touch any minor.

In *United States v. Shawn Beauvais,* Case No. 12-cr-60067-RNS, the defendant, who pled to distribution, was found to have possessed over 4,000 pictures and over 1,700 videos, many of

5

which involved infants and toddlers subjected to sadomasochism. (DE: 24.) The PSI calculated his guideline range to be 151-188, the defendant requested a 60-month sentence, and the Government, recognizing the defendant's serious medical needs, requested a sentence of 121 months. (DE: 31.) The Court imposed a sentence of 75 months. (DE: 36.)

In the case of *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009), Judge King rejected the recommended sentencing range and sentenced the defendant to the statutory minimum term of 60 months. That defendant was actually conversing through an online chat room with a person he believed to be a single mother with a ten-year-old daughter. During the conversations, the defendant expressed an interest in engaging in sexual behavior with the mother and daughter and requested pictures of the daughter. After making contact with the defendant, FBI agents discovered 900 additional pictures and 10 videos on his computer. In rejecting the advisory guideline range of 210-262 months, the Court noted that the guidelines are entitled to deference when the Sentencing Commission produces them in accordance with their institutional role and where the guidelines are the result of a study of empirical data; however, the Court concluded that little deference is owed to the guideline for child pornography cases since these guidelines did not exemplify the Sentencing Commission's exercise of its characteristic institutional role and empirical analysis:

> [T]he guideline has been steadily increased despite evidence and recommendations by the Commission to the contrary. Congress has repeatedly amended it directly, ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes...Between 1994 and 2007, the mean sentence in child pornography cases increased from 36 months to 110 months...[T]his increase was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing...These amendments [increasing sentence ranges] destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters.

*Id*. at 1301 (quoting *United States v. Hanson*, 561 F. Supp. 2d 1004, 1010-11 (E.D. Wis. 2008)). Also, the Court discussed at length that due to arbitrary upward increases in the base offense levels for child pornography and the near-automatic application of numerous specific offense enhancements (*i.e.*, distribution, use of a computer, prepubescent victims and number of images), rarely, if ever, will a defendant score at the low end of the statutory range.

Many other Courts in this district have varied downward in child pornography cases involving distribution—which this case does not. *See United States v. Matthew Clark*, Case No. 11-cr-14064-DLG (Court varied from the advisory guideline range of 151-188 months to impose a sentence of 66 months); *United States v. Nat Lane*, Case No. 10-cr-14061-JEM (Court varied from 151 months to a sentence of 108 months); *United States v. Jose Selem*, Case No. 11-cr-20643-CR-RNS (Court varied from 151-188 months to a sentence of 120 months); *United States v. Mehrdad Sarlak*, Case No. 11-cr-20078-JLK (Court varied from 151-188 months to a sentence of 60 months). Such local sentencing trends mirror a larger national sentencing trend in these cases:



(Report, Chap. 6, p. 135.) Granting Mr. Darbouze a variance, therefore, will reflect a well-recognized need to correct unwarranted sentencing disparity.

**II.     A Lengthy Sentence is not Necessary to Ensure that Mr. Darbouze is Punished for his Conviction.**

When Mr. Darbouze finishes serving his term of incarceration in this case, his true punishment will begin: he will be deported to Haiti, where he will likely be imprisoned indefinitely upon his arrival. *See* "Haiti Jails U.S. Deportees in Filthy Conditions, Without Cause" (describing the "freedom roulette" process whereby commission members determine, ad

8

hoc, which deportees are incarcerated upon their arrival in Haiti)[2]. And the United Nations has described the prison conditions in Haiti as "cruel, inhuman and degrading treatment within the meaning of the Convention against Torture."[3] In these prisons, according to the UN special report, prisoners are allotted, on average, just 60 square centimeters (or just under 24 square inches) of floor space each and are denied basic health care, hygiene and due process.

    If and when Mr. Darbouze is released from the Haitian prison, he will be left to fend for himself in a country he has not called home since he was a teenager. His only contact in the country is a tenuous one: his brother, who is illiterate, unemployed and without a place to live, and whom Mr. Darbouze supported financially until his conviction in this case. One can only imagine the treatment he will receive, both in prison and upon his release, because of his sex offender status. To Mr. Darbouze, the greatest punishment he will receive will be waiting for him upon his release from the Bureau of Prison's custody.

---

[2] Found at http://newamericamedia.org/2011/11/haiti-jails-us-deportees-in-filthy-conditions-without-cause.php.

[3] The United Nations dossier, entitled "Report of the Independent Expert on the Situation of Human Rights in Haiti," reports that the country's prisoners are allotted, on average, 60 square centimeters (just under 24 square inches) of floor space each, and that they are denied basic hygiene, health care and due process. *See* http://reliefweb.int/sites/reliefweb.int/files/resources/Report%20of%20the%20independent%20expert%20on%20the%20situation%20of%20human%20rights%20in%20Haiti%20Michel%20Forst%20A-HRC-22-65.pdf.

**III.     Conclusion.**

WHEREFORE, for the reasons set forth above, Mr. Darbouze respectfully requests that this Court consider granting him a variance from the advisory sentencing guideline range of 135-168 months.

          Respectfully submitted,
          MICHAEL CARUSO
          FEDERAL PUBLIC DEFENDER

By:     s/*Christy O'Connor*
       Christy O'Connor
       Assistant Federal Public Defender
       Florida Bar No. A5501358
       150 West Flagler Street
       Suite 1700
       Miami, Florida 33130-1556
       Tel:   305-530-7000/Fax:  305-536-4559
       E-Mail Address: christy_o'connor@fd.org

By:      *s/Alex Arteaga-Gomez*
       Assistant Federal Public Defender
       Florida Bar No. 18122
       150 W. Flagler Street, Suite 1700
       Miami, Florida 33130-1556
       Tel: 305-530-7000
       Fax: 305-536-4559
       E-mail: alex_arteaga-gomez@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on December 18, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Christy O'Connor*

## SERVICE LIST
## UNITED STATES OF AMERICA V. EDWIDGE JUNIOR DARBOUZE
## CASE NO. 14-20159-CR-MORENO

### United States District Court, Southern District of Florida

Christy O'Connor, AFPD
Federal Public Defender's Office
150 West Flagler Street
Suite 1700
Miami, Florida  33130
Telephone:  305/530-7000
Facsimile:  305/536-4559
Email:  christy_o'connor@fd.org
Attorney for Defendant
CM/ECF

Alex Arteaga-Gomez, AFPD
Federal Public Defender's Office
150 West Flagler Street
Suite 1700
Miami, Florida  33130
Telephone:  305/530-7000
Facsimile:  305/536-4559
E-mail: alex_arteaga-gomez@fd.org
Attorney for Defendant
CM/ECF

Maurice A. Johnson, AUSA
United States Attorney's Office
99 N.E. 4th Street
Miami, Florida  33132
Telephone:  305/961-9454
Email: Maurice.Johnson@usdoj.gov
Attorney for United States
CM/ECF