UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-cr-20159-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

EDWIDGE JUNIOR DARBOUZE,

    Defendant.
_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon *pro se* Defendant Edwidge Junior Darbouze's ("Defendant") Motion for Compassionate Release and/or Reduction of Sentence, ECF No. [148] ("Motion"), filed on March 16, 2021. The Government filed its Response, ECF No. [149], to which Defendant filed a Reply, ECF No. [155]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.     BACKGROUND**

On July 31, 2014, Defendant was charged in a five-count superseding indictment with attempted receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1), (Counts 1 and 2); and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (Counts 3, 4, and 5). ECF No. [64]. On September 24, 2014, a jury found Defendant guilty on all five counts. ECF No. [103]. On December 19, 2014, the Court sentenced Defendant to a term of imprisonment of 135 months, followed by 10 years of supervised release. *See* ECF Nos. [111], [113], [126]. Defendant is currently housed at McRae Correctional Facility ("McRae") in McRae-Helena, Georgia.

In the Motion, Defendant requests a reduction in sentence due to the ongoing COVID-19 pandemic, arguing that his underlying medical conditions make him more susceptible to suffering severe consequences of being infected with the virus. The Government opposes the Motion, arguing that compassionate release is not warranted in this case because there are no extraordinary and compelling reasons, the § 3553(a) factors do not weigh in favor of release, and Defendant remains a danger to the community.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 32,543,257 confirmed cases and 578,945 reported deaths as of May 10, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 10, 2021).

functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.   LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority

to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The *existing* policy statement provides that

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) extraordinary and compelling reasons warrant the reduction; or
> >
> > > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

4

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

**Commentary**

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) **Medical Condition of the Defendant.**—

   (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) **Family Circumstances.**—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018). Defendant argues that following the passage of the First Step Act, the Court is no longer bound by the existing Sentencing Guidelines policy statement and may exercise its discretion in determining the existence of extraordinary and compelling reasons. The Government argues that even though the policy statement has not been amended following the First Step Act, the Court is still bound by it.

Although the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons," the United States Court of Appeals for the Eleventh Circuit recently decided that § 1B1.13 is applicable for all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly, and that courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *United States of America v. Bryant*, --- F.3d ----, 2021 WL 1827158, at *2 (11th Cir. May 7, 2021). Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

>   *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the

> defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). Through this lens, the Court considers the instant Motion.

### III. DISCUSSION

Defendant requests a reduction in sentence to time-served and immediate release based upon his underlying medical conditions coupled with the coronavirus pandemic. Specifically, Defendant contends that he has atrial bowing, asthma, paresthesia in both hands, and low white blood cell count, which make him immunocompromised. The Government opposes, arguing that notwithstanding Defendant's medical condition, he fails to present extraordinary and compelling reasons to warrant compassionate release, the § 3553(a) factors do not support release, Defendant remains a danger to the community, and he is subject to an immigration detainer. Upon review and consideration, the Court concludes that Defendant does not present circumstances warranting compassionate release.

## A. Administrative exhaustion

As an initial matter, the Court recognizes that Defendant has satisfied the first inquiry in the § 3582 analysis, administrative exhaustion, and the Government concedes that the exhaustion requirement is satisfied. ECF No. [149] at 7. However, as explained below, Defendant fails to demonstrate that extraordinary and compelling circumstances exist.

## B. Extraordinary and compelling reasons

Recently updated CDC guidance indicates that the following health conditions can make adults of any age more likely to get severely ill due to COVID-19: cancer; chronic kidney disease; chronic lung diseases, including asthma (moderate-to-severe); dementia or other neurological conditions; diabetes (type 1 or type 2); Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, or hypertension; HIV infection, immunocompromised state (weakened immune system); liver disease; overweight and obesity; sickle cell disease or thalassemia; current or former smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; and substance use disorders.[2] The CDC states that people with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19.[3]

Defendant asserts that his underlying health problems, including asthma, low white blood cell count, atrial bowing, paresthesia, and depression, put him at a high risk of serious illness or death if exposed to COVID-19. The Government responds that none of the conditions Defendant cites, other than asthma, are classified by the CDC as increasing the risk for severe illness or death from COVID-19. Moreover, Defendant's asthma is being sufficiently managed and treated.

---

[2] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Apr. 29, 2021).

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

Indeed, in keeping with § 1B1.13, in order for Defendant's medical condition to provide justification for compassionate release, the Court must find that Defendant is either suffering from a terminal illness, or that his serious physical or medical condition, or serious functional or cognitive impairment, substantially diminishes his ability to provide self-care and from which he is not expected to recover. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A). The record simply does not support either finding in this case. While the Court is certainly sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, Defendant has failed to demonstrate that extraordinary and compelling reasons for compassionate release exist.

First, the Court notes that most of the medical records provided date from 2019 and document investigations of his cardiac issues. Moreover, Defendant's medical records provided in support of his Motion do not indicate that his conditions are terminal. *See* ECF No. [149-2] at 1 (noting that patient history of Brugada syndrome and cardiac abnormality are "resolved"). As the Government notes, the records indicate that Defendant's treatment for asthma is ongoing, and the records contain no indication that Defendant has suffered any asthma complications, nor has Defendant pointed to any.[4] In addition, Defendant points to the records of a recent medical visit on January 25, 2021, with respect to his paresthesia, in which the nurse noted that "[l]imited R[ange] O[f] M[otion] in extremities and/or unable to bear weight: unable to perform activities of daily living or self-care," ECF Nos. [155] at 12; [149-2] at 57. However, the notes from his follow-up appointment dated February 19, 2021 indicate that his left arm numbness continues, "but not

---

[4] Although Defendant specifically mentions April 20, 2020, when he was treated for breathing complications, the medical records indicate that he was seen on April 24, 2020, complaining of "trouble to breath[e] ever since they started to open the vents in the units." ECF No. [149-2] at 69. While the records of the visit note that he has a history of asthma, they also note that his lung sounds are clear, his throat is normal, and the objective findings state that "[n]o abnormalities noted." *Id*. at 69-70.

9

as intense as noted on previous visit." ECF No. 149-2 at [51]. Defendant's medical records otherwise do not support the conclusion that he is unable to perform activities of daily living or provide self-care. *See Id*. at 52 (noting all major body systems within normal limits, including lungs and cardiac). Further, Defendant is 33 years old, his medical records do not reflect that his treatments while incarcerated are inadequate to care for his medical needs, and he otherwise fails to provide any evidence or argument that his health is deteriorating. Specifically, the representations regarding the severity of his health conditions—that he suffers from a serious uncurable heart condition and asthma which combined with a low white blood cell count render him immunocompromised—are simply not supported by the medical records provided,[5] nor is bowing atrial septum one of the cardiac conditions listed by the CDC as heightening the risk for COVID-19.[6] Moreover, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1,

---

[5] The medical record provided by Defendant to support a low white blood cell count is from November 2017. *See* ECF No. [148] at 40. Defendant fails to provide any recent medical record indicating that he still has a low white blood cell count or is otherwise immunocompromised.

[6] According to Defendant, a bowing atrial septum is when a main blood vessel in the right ventricle only opens partially. *See* ECF No. [148] at 4. According to the Mayo Clinic,

> [a]n atrial septal defect (ASD) is a hole in the wall (septum) between the two upper chambers of your heart (atria). The condition is present at birth (congenital). Small defects might be found by chance and never cause a problem. Some small atrial septal defects close during infancy or early childhood. The hole increases the amount of blood that flows through the lungs. A large, long-standing atrial septal defect can damage your heart and lungs. Surgery or device closure might be necessary to repair atrial septal defects to prevent complications.

*Atrial septal defect (ASD)*. Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/atrial-septal-defect/symptoms-causes/syc-20369715 (accessed May 10, 2021). An echocardiogram conducted in October 2019 notes that Defendant has "bowing atrial septum w/ no apparent shunt." ECF No. [148] at 30. However, there is no indication from Defendant's more recent medical records of the effect of this condition on his overall health or any complications he suffers as a result.

2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")).

The Government notes that even if extraordinary and compelling circumstances existed in this case based on Defendant's medical conditions, Defendant has not established that he would be less vulnerable to COVID-19 if released because he is subject to an immigration detainer. Although Defendant acknowledges that he is subject to the detainer, he nevertheless contends that the likelihood that he will spend additional time in ICE custody supports compassionate release. The Court disagrees.

The offenses for which Defendant was convicted constitute aggravated felonies under applicable immigration laws. *See* 8 U.S.C. § 1101(43)(I). As a part of the judgment, the Court specifically imposed special conditions of supervision, which included mandating compliance with the following term:

> At the completion of the defendant's term of imprisonment, the defendant shall be surrendered to the custody of the U.S. Immigration and Customs Enforcement for removal proceedings consistent with the Immigration and Nationality Act. If removed, the defendant shall not reenter the United States without the prior written permission of the Undersecretary for Border and Transportation Security. The term of supervised release shall be non-reporting while the defendant is residing outside the United States. If the defendant reenters the United States within the term of supervised release, the defendant is to report to the nearest U.S. Probation Office within 72 hours of the defendant's arrival.

ECF No. [126] at 4. Thus, as the Government notes, even if the Court were to grant the instant Motion, Defendant could not be released to home confinement, but would be transported into ICE custody during the pendency of the removal proceedings. *See United States v. Camacho-Duque*, No. 18-80238-CR, 2020 WL 5951340, at *7 (S.D. Fla. Oct. 5, 2020) ("[R]elease from BOP custody, in Defendant's case, does not mean release from government custody. Because Defendant

is subject to an immigration 'hold' or detainer, upon execution of this Order, the BOP will surrender Defendant to ICE. From that point forward, Defendant, having been convicted of an 'aggravated felony' within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B), will be subject to mandatory, indefinite detention—that is, detention until she either prevails on her claim for relief or is deported from the United States.").

Additionally, and equally important, releasing Defendant into ICE custody would likely be harmful to Defendant's interests in securing proper medical care for his medical issues. "Were the Court to grant Defendant compassionate release, he may end up leaving [McRae] only to enter an immigration facility that is less equipped to address his medical needs, and where he is no less exposed to Covid-19." *United States v. Perez Solorio*, No. 3:11-CR-138-J-32JRK, 2020 WL 6292558, at *2 (M.D. Fla. Oct. 27, 2020). Considering the course of treatment Defendant has received to date at McRae for his medical issues, the Court would be reluctant to grant release into circumstances that would likely place Defendant at greater medical risk. *See United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020); *see also United States v. Joaseus*, No. 9:16-CR-80011, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020) (noting that, upon completion of the term of imprisonment, the defendant will be surrendered to ICE custody to await removal proceedings and will likely be held at an immigration detention facility, which, "like prisons, have had confirmed cases of COVID-19 and are implementing measures to respond to the spread of the disease in their populations," and concluding that a sentence reduction was unwarranted because the defendant presented no indication that was a lesser likelihood of exposure to COVID-19 at an immigration detention facility than at a BOP facility); *see also United States v. Chavez*, No. 1:95-CR-00361, 2020 WL 2322917, at *2 (S.D. Fla. May 11, 2020) (same).

Thus, Defendant has not met his burden to demonstrate that extraordinary and compelling reasons exist to support his request for compassionate release or sentence modification.

### C.  § 3553(a) factors and danger to the community

Even if the Court were to conclude that extraordinary and compelling reasons exist in this case notwithstanding Defendant's immigration detainer, the § 3553(a) factors do not support the relief Defendant seeks, and Defendant remains a danger to the community.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). The Court must also evaluate whether Defendant is a danger to the safety of others or the community under 18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).

At the time of sentencing, this Court concluded that a term of imprisonment of 135 months was appropriate in light of all of the relevant § 3553(a) considerations. Notably, Defendant has only served a little over half of his sentence. Defendant contends, however, that he has spent his time in prison improving himself by participating in educational and vocational training courses, self-improvement, and that he has no disciplinary history while incarcerated. While the Court recognizes Defendant's efforts, the Court finds that, on balance, the applicable § 3553(a) factors weigh against modifying Defendant's sentence, and that he remains a danger to the community.

First, Defendant's contention that his case involves no victims evinces a complete lack of appreciation and understanding for the seriousness of the offenses for which he was convicted. While Defendant's offenses did not involve actual contact with children, his consumption of child pornography cannot be characterized as victimless. The children in the images and videos are undoubtedly victims, and are repeatedly re-victimized each time an image or video of them is viewed. It is precisely the type of behavior that Defendant engaged in that helps to perpetuate and sustain a horrific industry. Moreover, Defendant was found to be accountable for 2,025 images of child pornography, and the Court applied a sadomasochism enhancement to Defendant's sentence based on the nature of some of the images. ECF No. [132] at 5, 7. In addition, Defendant has not presented a proposed release plan. Assuming Defendant for some reason were not remanded immediately into ICE custody, and he were released to his family, there remains a concern that he might reoffend given that Defendant was living with his parents and younger brother when he committed the offenses for which he was convicted.

The Court certainly commends Defendant for his positive and concerted efforts toward rehabilitation while in custody, and encourages him to continue his efforts during the remainder of his sentence. However, even assuming Defendant had demonstrated extraordinary and compelling circumstances, the § 3553(a) factors and the Court's consideration of the factors listed in 18 U.S.C. § 3142(g) nevertheless do not support the relief requested. *See United States v. Zamor*, No. 17-20353-CR, 2020 WL 2062346, at *2 (S.D. Fla. Apr. 29, 2020) ("Crucially, [the defendant] has completed less than 40% of this sentence, and the applicable 18 U.S.C. § 3553(a) factors . . . do not warrant [his] release after serving less than half of his sentence."); *United States v. Rodriguez-Orejuela*, No. 03-CR-20774, 2020 WL 2050434, at *7 (S.D. Fla. Apr. 28, 2020) (noting that, in weighing the sentencing factors, "the Court's analysis is virtually unchanged from thirteen

14

Case No. 14-cr-20159-BLOOM

years ago.").

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [148]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 11, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Edwidge Junior Darbouze, *pro se*
02228-104
McRae Correctional Institution
Inmate Mail/Parcels
Post Office Drawer 55030
McRae Helena, GA 31055